No. 23-1565
ORAL ARGUMENT REQUESTED

———————

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

———————

JAMES HARPER,

*Plaintiff-Appellant*,

v.

DANIEL WERFEL, in his official capacity as
Commissioner of the Internal Revenue Service; and
INTERNAL REVENUE SERVICE,

*Defendants-Appellees*.

———————

**On Appeal from the U.S. District Court
for the District of New Hampshire
No. 1:20-cv-00771-JL; Judge Joseph N. Laplante**

———————

**PLAINTIFF-APPELLANT'S OPENING BRIEF**

———————

Richard A. Samp
  First Circuit Bar No. 19778
Sheng Li
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
202-869-5210
rich.samp@ncla.legal
sheng.li@ncla.legal

October 13, 2023          Counsel for Appellant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD . . . . . . . . . . . . ix

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    Constitutional and Statutory Provisions Involved . . . . . . . . . . . . . . . . . . . . . 3
    Coinbase's Contract with Harper Guarantees Privacy of His Papers . . . . . . 3
    Restrictions on IRS Use of "John Doe" Summonses . . . . . . . . . . . . . . . . . . 5
    IRS Obtains Harper's Financial Records from Coinbase, Inc. . . . . . . . . . . 8
    District Court Proceedings — Round I . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    District Court Proceedings — Round II . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

I.    HARPER HAS STATED A CLAIM UNDER THE FOURTH AMENDMENT . . . . . . . 17

    A.    IRS's Confiscation of Harper's Records Was a Seizure and Search
        Under the Property-Based Approach to the Fourth Amendment . . . 18

        1.    IRS Seized and Searched Harper's Personal Papers . . . . . . . . 18

        2.    The Third-Party Doctrine Under *Miller* Does Not Displace
               Harper's Property Interest in His Financial Records . . . . . . . . 24

B.    IRS's Confiscation of Harper's Records Was a Seizure and Search Under the Privacy-Based Approach to the Fourth Amendment . . . . 27

C.    IRS's Seizure of Harper's Records Was Unreasonable. . . . . . . . . . 32

    1.    IRS Violated the Fourth Amendment's Warrant and Probable Cause Requirements. . . . . . . . . . . . . . . . . . . . . . . . 32

    2.    IRS Failed to Comply with *Powell* Requirements . . . . . . . . . 35

II.    HARPER HAS STATED A CLAIM FOR VIOLATION OF 26 U.S.C. § 7609(f) . . . 36

A.    The Administrative Procedure Act Creates an Express Right of Action to Enforce § 7609(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

B.    The Complaint Adequately Alleges IRS's Non-Compliance with § 7609(f)'s Three Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

    1.    Harper Has Adequately Alleged Failure to Identify an "Ascertainable" Group. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

    2.    Harper Has Adequately Alleged that IRS Did Not Show that the Group It Identified Has Failed to Pay Its Taxes . . . . . 43

    3.    Harper Has Adequately Alleged that the Information IRS Sought from Coinbase Was Readily Available from Other Sources. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

III.    HARPER HAS STATED A CLAIM UNDER THE FIFTH AMENDMENT FOR VIOLATION OF HIS PROCEDURAL DUE PROCESS RIGHTS . . . . . . . . . . . . . . . 50

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
   403 U.S. 388 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Borucki v. Ryan*,
   827 F.2d 836 (1st Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Boyd v. United States*,
   116 U.S. 616 (1886). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 19, 20, 25

*Brower v. County of Inyo*,
   489 U.S. 593 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Bumper v. North Carolina*,
   391 U.S. 53 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Carpenter v. United States*,
   484 U.S. 19 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Carpenter v. United States*,
   138 S. Ct. 2206 (2018). . . . . . . . . . . . . . . . . . . . . 14, 22, 23, 29, 30, 31, 32, 33

*Chapman v. United States*,
   365 U.S. 610 (1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Donaldson v. United States*,
   400 U.S. 571 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Entick v. Carrington*,
   19 How. St. Tr. 1029 (1765) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 19, 20

*Ex parte Jackson*,
   9 U.S. 727 (1878). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Flood v. U.S. Dep't of Transportation*,
   840 F.3d 49 (1st Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Florida v. Jardines*,
   569 U.S. 1 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*FTC v. American Tobacco Co.*,
   264 U.S. 298 (1924). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*G.M. Leasing Corp. v. United States*,
   429 U.S. 338 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**Page(s)**

*Griswold v. Connecticut,*
381 U.S. 479 (1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Hamberger v. Eastman,*
106 N.H. 107 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Harper v. Rettig,*
46 F.4th 1 (1st Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Harper v. Rettig,*
2021 WL 1109254 (D.N.H. Mar. 23, 2021),
*rev'd* 46 F.4th 1 (1st Cir. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Kallstrom v. City of Columbus,*
136 F.3d 1055 (6th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Katz v. United States,*
389 U.S. 347 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
572 U.S. 118 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Marbury v. Madison,*
5 U.S. (1 Cranch) 137 (1803) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Mathews v. Eldridge,*
424 U.S. 319 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Matter of Does,*
688 F.2d 144 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Matter of Search of Multiple Email Accounts Pursuant to 18 U.S.C. § 2703,*
585 F. Supp. 3d 1 (D.D.C. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Matter of Tax Liabilities of John Does ("Coinbase I"),*
No. 3:16-cv-06658 (N.D.Cal., Nov. 30, 2016), ECF-30-5 . . . . . . . . . . . . . . . 9

*Minnesota v. Olson,*
495 U.S. 91 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Nixon v. Administrator of General Services,*
433 U.S. 425 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Northern Ins. Co. of New York v. Point Judith Marina, LLC,*
579 F.3d 61 (1st Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Payne v. Taslimi,*
998 F.3d 648 (4th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Polselli v. IRS,*
598 U.S. 432 (2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 38, 49

*Ruckelshaus v. Monsanto,*
   467 U.S. 986 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Taylor v. City of Saginaw,*
   922 F.3d 328 (6th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Tax Liabilities of: John Does v. United States,*
   866 U.S. 1015 (8th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Terry v. Ohio,*
   392 U.S. 1 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Tiffany Fine Arts, Inc. v. United States,*
   469 U.S. 310 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 36, 38

*United States v. Ackerman,*
   831 F.3d 1292 (10th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 23

*United States v. Allee,*
   888 F.2d 208 (1st Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 39

*United States v. Bisceglia,*
   420 U.S. 141 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 47

*United States v. Brigham Young Univ.,*
   679 F.2d 1345 (10th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 48

*United States v. Coinbase, Inc.* ("*Coinbase II*"),
   No. 3:17-cv-01431, 2017 WL 3035164 (N.D. Cal., July 18, 2017) . . . . . 9, 41, 49

*United States v. Coinbase, Inc.* ("*Coinbase III*"),
   No. 3:17-cv-01431, 2017 WL 5890052 (N.D. Cal., Nov. 28, 2017) . . . . . . . 9, 26

*United States v. Dorais,*
   241 F.3d 1124 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Dauphin Deposit Tr. Co.,*
   385 F.2d 129 (3d Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 35

*United States v. Gertner,*
   65 F.3d 963 (1st Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 48, 54

*United States v. Gratkowski,*
   964 F.3d 307 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Jones,*
   565 U.S. 400 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 20, 22, 29

*United States v. Miller,*
   425 U.S. 435 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 29, 30, 31

*United States v. Powell,*
   379 U.S. 48 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15, 33, 34, 35, 49

*United States v. Ritchie*,
  15 F.3d 592 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*United States v. Samuels, Kramer and Co.*,
  712 F.2d 1342 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 48

*United States v. Seljan*,
  587 F.3d 993 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Theodore*,
  479 F.2d 749 (4th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Warshak*,
  631 F.3d 266 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 23, 28, 29

*Walls v. City of Petersburg*,
  895 F.2d 188 (4th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Whalen v. Roe*,
  429 U.S. 589 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

**Statutes and Constitutional Provisions:**

U.S. Const., amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S. Const., amend. V (Due Process Clause) . . . . . . . . . . . . . . . . . . . . . . . *passim*

New Hampshire Constitution, Part I, Article 2-b . . . . . . . . . . . . . . . . . . . . . 16, 53

Administrative Procedure Act (APA) . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15, 37, 38
  5 U.S.C. § 551(13) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
  5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
  5 U.S.C. § 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 37

An Act to Amend the Customs-Revenue Laws and to Repeal Moieties,
  Ch. 391, § 5, 18 Stat. 187 (1874) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Anti-Injunction Act, 26 U.S.C. § 7421 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Taxpayer First Act, P.L. 116-25 (2019), § 1204 . . . . . . . . . . . . . . . . . . . . . 8, 47

Tax Reform Act of 1976, P.L. 94-455 (1976), § 1205(a) . . . . . . . . . . 7, 38, 42, 47

26 U.S.C. § 7602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

26 U.S.C. § 7602(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 49

26 U.S.C. § 7605 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

26 U.S.C. § 7609(a) & (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

26 U.S.C. § 7609(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

26 U.S.C. § 7609(f)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 41, 50

26 U.S.C. § 7609(f)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 38, 43, 44, 50

26 U.S.C. § 7609(f)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 38, 46, 47, 49, 50

26 U.S.C. § 7609(h)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 38

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Right of Privacy Act, N.H. Rev. Stat § 359-C:8 . . . . . . . . . . . . . . . . . . . . . . 53

**Miscellaneous:**

Black's Law Dictionary (11th ed. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Donald A. Dripps, *"Dearest Property": Digital Evidence and the History
of Private "Papers" As Special Objects of Search and Seizure*,
103 J. Crim. L. & Criminology 49 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Philip Hamburger, *Is Administrative Law Unlawful* (2014) . . . . . . . . . . . . . . . 19

H.R.Rep. 94-658, 1975 WL 12389 (Leg. Hist.), (1975) . . . . . . . . . . . 7, 42, 43, 47

H.R.Rep. 116-39(I), 2019 WL 1649873 (2019). . . . . . . . . . . . . . . . . . . . . . . 7, 48

S.Rep. 94-938 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed.R.Civ.P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed.R.Civ.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 16, 45, 49

IRS Notice 2014-21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

**REASONS WHY ORAL ARGUMENT SHOULD BE HEARD**

Pursuant to Local Rule 34.0(a), Appellant respectfully requests that the Court schedule oral argument in this case. This case raises important constitutional and statutory questions regarding the circumstances under which the Internal Revenue Service (IRS) is authorized to issue summonses to obtain taxpayers' private records. In particular, it raises issues of first impression within this circuit regarding whether and when IRS may obtain records without (as here) notifying the taxpayer of its actions and providing him an opportunity to resist the summons. Oral argument is likely to assist the Court in addressing those issues.

# INTRODUCTION

At issue in this case is whether either the U.S. Constitution or federal statutes impose meaningful restrictions on Internal Revenue Service authority to gain surreptitious access to a taxpayer's confidential financial records without providing the taxpayer any opportunity to object and without showing a substantial need for the information.

IRS has never suggested in this case that Appellant James Harper has failed to satisfy his federal income tax obligations. IRS nonetheless obtained Harper's confidential records by means of a summons it issued to a company holding those records as Harper's bailee. Pursuant to its contract with Harper, the bailee agreed to hold his records in the strictest of confidence. IRS violated Harper's Fourth Amendment rights by obtaining his private papers without a subpoena and without any showing of probable cause.

IRS violated Harper's rights under 26 U.S.C. § 7609(f) and the Fifth Amendment's Due Process Clause by seizing his papers without legal justification and without notice or opportunity to contest the seizure.

The district court dismissed Harper's complaint, holding that the complaint fails to state a claim upon which relief can be granted. That ruling elided Harper's contractual rights and misinterpreted federal constitutional and statute law. Indeed,

Congress amended the tax code on two separate occasions to prevent IRS from engaging in precisely the sort of fishing expedition at issue here.

## JURISDICTIONAL STATEMENT

Appellant's Complaint, filed on July 15, 2020 in U.S. District Court for the District of New Hampshire, asserts claims for violations of his rights under the Fourth and Fifth Amendments and a provision of the Internal Revenue Code. The district court had subject-matter jurisdiction over the claim under 28 U.S.C. § 1331. The district court entered final judgment for Appellees on May 30, 2023, disposing of all parties' claims.

Appellant filed his timely notice of appeal on July 10, 2023. This Court has jurisdiction over the appeal under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Does the Amended Complaint allege facts sufficient to show that IRS's seizure of Harper's financial records constituted a Fourth Amendment "search?"

2. Does the Amended Complaint allege facts sufficient to show that IRS's seizure of Harper's financial records was not "reasonable" within the meaning of the Fourth Amendment?

3.    Has Congress authorized taxpayers who are the targets of John Doe summonses to seek federal-court relief for injuries incurred when IRS fails to adhere to the limitations on John Doe summonses imposed by 26 U.S.C. § 7609(f)?

4.  Does the Amended Complaint adequately allege that IRS failed to adhere to 26 U.S.C. 7609(f)'s limitations on John Doe summonses when it obtained a summons directing Coinbase, Inc. to turn over financial records in its possession that belong to Harper?

5.  Does the Amended Complaint adequately allege that IRS violated Harper's Fifth Amendment procedural due process rights when it seized his business records without notifying Harper of its intended actions and without providing Harper any opportunity to contest the seizure?

## STATEMENT OF THE CASE

### Constitutional and Statutory Provisions Involved

The text of the Fourth and Fifth Amendments to the United States Constitution, and of 26 U.S.C. § 7609(f), are included in the Addendum to this brief.

### Coinbase's Contract with Harper Guarantees Privacy of His Papers

In 2013, Appellant James Harper opened an account with Coinbase, Inc., a digital currency exchange that facilitates transactions in virtual currencies such as bitcoin.  JA10, First Amended Complaint ("Complaint") ¶ 18.   When opening the

account, Harper entered into a Contract with Coinbase pursuant to which Coinbase agreed to maintain the privacy of personal information—including financial information—contained in papers he entrusted to Coinbase.

Relevant portions of the Contract are attached to the Complaint as Exhibit 1, JA33-36.  The Contract states that "[p]rotecting your privacy is very important to Coinbase" (JA33) and incorporates by reference (JA11, Complaint ¶ 20) Coinbase's Privacy Policy, which is attached to the Complaint as Exhibit 2, JA37-43.  Pursuant to its Privacy Policy, Coinbase agreed to keep confidential the financial information Harper shared with Coinbase.  Coinbase promised that it would "protect" personal information "by maintaining physical, electronic and procedural safeguards in compliance with applicable US federal and state regulations," using "computer safeguards such as firewalls and data encryption," employing "physical access controls to our buildings and files," and "authoriz[ing] access to personal information only for those employees who require it to fulfill their job responsibilities."  JA39.

The Privacy Policy specified that Coinbase was not, without Harper's permission, to "use [Harper's] personal information for purposes other than those" explicitly set out in the Policy.  JA40.

Harper entered into the Contract in reliance on Coinbase's promise not to share his personal financial records with others.  During 2013 and 2014, Harper made a

series of deposits of bitcoin in his Coinbase account—primarily as income from consulting work. JA13, Complaint ¶ 29. Harper routinely converted such income into dollars, and in 2015 he transferred his remaining Coinbase holdings to a hardware wallet; by early 2016, he no longer held bitcoin on Coinbase's platform. JA13-14, Complaint ¶¶ 35-36. To execute transactions, Harper had to share his personal financial information—constitutional papers and effects—with Coinbase.

On his federal income tax returns for 2013-16, Harper reported all income and capital gains related to his Coinbase transactions and paid the requisite federal income tax. *Ibid.*, Complaint ¶¶ 30, 31, 33, 37.

Through a summons issued to Coinbase, IRS obtained (and continues to hold) Harper's financial records. Harper gave the documents to Coinbase as his bailee, on the understanding that their privacy would be maintained. At issue here is whether IRS seizure of those records and its refusal to return them to Harper violate his rights under the Constitution and applicable federal statutes.

## Restrictions on IRS Use of "John Doe" Summonses

A federal statute allows IRS to serve a summons on any person, without prior judicial approval, if the information sought is necessary to ascertain that person's tax liability. 26 U.S.C. § 7602(a). Whether that statutory authority extended to information regarding taxpayers unknown to IRS was long a matter of dispute. In

*United States v. Bisceglia*, 420 U.S. 141 (1975), the Supreme Court upheld IRS's authority under § 7602(a) to issue such "John Doe" summonses.[1]  The Court held that IRS could require a bank to disclose the identity of an individual who had deposited $20,000 in dilapidated $100 bills, on the theory that the depositor might have failed to report income on transactions relating to those $100 bills.  *Id.* at 149-50.  The Court acknowledged that such broad summons authority "may be abused" and "could be used to conduct 'fishing expeditions' into the private affairs of bank depositors."  *Id.* at 150-51.  But it noted that any such abuse could be checked by federal district courts, which were authorized to hear challenges to summonses raised by third-party record-keepers.  *Ibid.*

In direct response to the *Bisceglia* decision, Congress added 26 U.S.C. § 7609(f) to the Internal Revenue Code, to impose strict limits on IRS's use of John Doe summonses.  *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 315-17 (1985) ("§ 7609(f) was a response to concerns that our decision in *Bisceglia* did not provide sufficient restraints, in the John Doe context, on the IRS's exercise of its summons power.").  Congress determined that *Bisceglia* "might 'unreasonably infringe on the civil rights of taxpayers, including *the right to privacy*.'"  *Id.* at 316

---

[1] A John Doe summons is a direction to a third party to surrender information concerning taxpayers whose identity is unknown to IRS.

(quoting S.Rep. 94-938, at 368; H.R.Rep. 94-658, at 307) (emphasis added). As adopted in 1976, § 7609(f) provided that a John Doe summons is improper unless it meets three prerequisites:

> (i) the summons relates to the investigation of a particular person or ascertainable group or class of persons;

> (ii) there is a reasonable basis for believing that such persons or group or class of persons may fail or may have failed to comply with any provision of the internal revenue law, and

> (iii) the information sought to be obtained from the examination of the records (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

Congress realized that John Doe taxpayers, generally unaware that IRS is seeking their records from a third-party, will not be in a position to contest the summons. The Tax Reform Act of 1976 therefore also provided that IRS may not issue a John Doe summons without first satisfying a federal court, in an *ex parte* proceeding, that it has met the three statutory prerequisites listed above. 26 U.S.C. §§ 7609(f), 7609(h)(2).

After the events giving rise to this action, Congress concluded that IRS was continuing to employ John Doe summonses in a manner that "at times potentially exceeded its intended purpose." H.R.Rep. 116-39(I), 2019 WL 1649873 at *41 (2019). In order to "clarify" the limited scope of IRS's John Doe summons powers, Congress added the following language to § 7609(f) in 2019:

The Secretary shall not issue any [John Doe] summons ... unless the information sought to be obtained is *narrowly tailored* to information that pertains to the failure (or potential failure) of the person or group or class of persons referred to in paragraph (2) to comply with one or more provisions of the internal revenue law.

Taxpayer First Act, P.L. 116-25 (2019), § 1204 (emphasis added).

## IRS Obtains Appellant's Financial Records from Coinbase, Inc.

In November 2016, IRS filed an *ex parte* petition in the Northern District of California for an order permitting it to serve a John Doe summons on Coinbase. JA112-114. The proposed summons sought detailed financial records for 2013-2015 for the approximately one million Coinbase customers with ties to the U.S. "who conducted transactions in a convertible virtual currency." IRS claimed to be investigating under-reporting of taxable income and asserted that "United States persons who, at any time during the period January 1, 2013, through December 31, 2015, conducted transactions in a convertible virtual currency" constituted "an ascertainable group" of people within the meaning of § 7609(f). JA125.[2] After conducting an *ex parte* review of IRS's petition, a magistrate judge on November 30, 2016, signed an order (*prepared by IRS counsel*) stating that the government satisfied

---

[2] IRS does not contest that its "ascertainable" group contains many millions of U.S. citizens and that it has never attempted to ascertain precisely who is contained within the group.

the three § 7609(f) prerequisites and authorizing IRS to issue the subpoena. JA174-75

("*Coinbase I*").

Coinbase did not comply with the summons, prompting IRS to seek enforcement. Harper read news reports about the action. A privacy advocate and policy analyst, he joined an *amicus* brief arguing against IRS's position, but he did not attempt to intervene in light of IRS's position that John Doe intervention is never permissible and his belief that the summons did not encompass his records.[3] The magistrate declined to hear a challenge to her prior, *ex parte* decision that the IRS summons met the requirements of § 7609(f). *United States v. Coinbase, Inc.*, 2017 WL 3035164 at *5 (N.D. Cal. July 18, 2017) ("*Coinbase II*"). Concluding that the summons was broader than necessary to achieve its legitimate purposes, she ordered enforcement of a narrowed version. *United States v. Coinbase, Inc.*, 2017 WL 5890052 at *6-*8 (N.D. Cal., Nov. 28, 2017) ("*Coinbase III*"). As a result, Coinbase disclosed to IRS detailed financial information for more than 10,000 account holders. *Ibid.*

---

[3] Harper also relied on Coinbase's public statement that it would notify affected users before handing over information, a notice he never received. His involvement or non-involvement in the Coinbase summons enforcement action is irrelevant to this appeal. IRS has not asserted that this action should be dismissed on the ground that Harper could have, or in fact did, become involved in the enforcement action.

Harper learned that his financial records were likely among those disclosed by Coinbase when he received a threatening letter from IRS dated August 9, 2019. The letter stated, "We have information that you have or had one or more accounts containing virtual currency but may not have properly reported your transactions involving virtual currency." JA14-15, Complaint ¶¶ 67-69; JA66-68.[4] Based on the letter, Harper concluded that IRS must have received his personal financial records from at least one of the three cryptocurrency exchanges with which he has conducted business: Coinbase, Abra, and Uphold. JA20, Complaint ¶ 70. IRS's district court filings confirm that it received Harper's financial records from Coinbase alone.

## District Court Proceedings — Round I

Harper filed this suit in July 2020, alleging that Appellees gained access to his private financial records in violation of his rights under the Fourth and Fifth Amendments and 26 U.S.C. § 7609(f). The Complaint sought injunctive and declaratory relief, as well as damages from John Does 1 through 10.

In March 2021, the district court granted Appellees' motion to dismiss under Fed.R.Civ.P. 12(b)(1) and 12(b)(6). *Harper v. Rettig*, 2021 WL 1109254 (D.N.H.

---

[4] The threat was apparently an empty one: in the ensuing four years, Harper has received no follow-up correspondence from IRS. That silence is unsurprising, given that Harper's 2013-15 income tax returns properly reported his cryptocurrency transactions. JA13-14, Complaint ¶¶ 30-37.

Mar. 23, 2021). It held that the Anti-Injunction Act, 26 U.S.C. § 7421, deprived the court of subject matter jurisdiction over Harper's claims against IRS and its Commissioner for injunctive and declaratory relief. *Id*. at *3-*5. The court dismissed Harper's claims for monetary relief under Rule 12(b)(6), ruling that the cause of action recognized by *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), should not be extended to this case. *Id.* at *5-7.[5]

This Court reversed. *Harper v. Rettig*, 46 F.4th 1 (1st Cir. 2022). It held that the Anti-Injunction Act bars only suits that seek to restrain "the assessment or collection of any tax," not suits such as Harper's that challenge IRS information gathering. *Id.* at 7-8. It vacated the lack-of-subject-matter-jurisdiction dismissal and remanded the case to the district court "to consider, in the first instance, whether [Harper] has stated a claim on which relief can be granted." *Id.* at 9. The Court denied Appellees' petition for panel rehearing in November 2022.

**District Court Proceedings — Round Two**

In January 2023, Appellees filed a second Rule 12(b)(6) motion, seeking dismissal of all claims for failure to state a claim. The district court granted the motion on May 26, 2023, JA73-108, and entered judgment for Appellees. JA109.

---

[5] Harper did not appeal from the *Bivens* ruling. The district court did not address Appellees' additional argument that Harper failed to state a claim under the Fourth and Fifth Amendments.

The court held that Harper has "no protectable Fourth Amendment interest in the Coinbase records." JA81. It held that he lacked "a legitimate expectation of privacy in information he voluntarily turn[ed] over" to Coinbase. JA82-84. It held that the contractual confidentiality agreement entered into between Harper and Coinbase "d[id] not compel a different result," noting that the "terms of agreement" "warned" Harper that Coinbase would disclose the documents if ordered to do so by a court. JA85-86. The court also held that Harper lacked a protectable property interest in the papers he entrusted to Coinbase, asserting that the papers summoned by IRS belonged to Coinbase, not Harper. JA87. The court held that IRS's actions did not violate the Fourth Amendment for the additional reason that they were "reasonable" under standards established in a statutory interpretation case, *United States v. Powell*, 379 U.S. 8 (1964). JA89-92.

The court also dismissed Harper's § 7609(f) claim. JA97-107. The court "assume[d], without deciding" that the Administrative Procedure Act (APA), 5 U.S.C. § 704, provides Harper with standing to sue for violations of § 7609(f). JA101. It nonetheless held that neither Harper nor anyone else is entitled to challenge a magistrate's *ex parte* finding that IRS has satisfied the prerequisites of § 7609(f) and is entitled to issuance of a John Doe summons. JA101-02.

The court ruled, in the alternative, that the Complaint did not state a claim that IRS failed to satisfy § 7609(f)'s three prerequisites for a valid John Doe summons. The court held that the investigation described in the summons was directed to an "ascertainable" group—despite its enormous size and the impracticability of ever attempting to ascertain its members. JA104-05. The court held that Harper failed to state a claim for violation of the § 7609(f)(2) requirement because the IRS declaration accompanying its summons request adequately alleged that the group it identified may have failed to comply with the tax laws—notwithstanding Harper's allegations that the declaration was inadequate. JA105-06. The court also rejected Harper's claim that IRS violated § 7609(f)(3) by seeking information that was "readily available from other sources." JA106-07. Harper argued that the financial records IRS sought could have been obtained directly from taxpayers if it had first asked Coinbase to provide the identity and contact information of its customers. The court held that while proceeding in that manner was an option available to IRS, nothing in the language of § 7609(f)(3) requires it to do so. *Ibid.*

Finally, the court rejected Harper's claim that IRS violated his procedural due process rights by seizing his financial records without providing him notice and an opportunity to object to the seizure. JA92-97. The court ruled that Harper lacks both a protectable liberty interest in maintaining the privacy of his financial records and a

protectable property interest in the papers themselves.  JA93-94.  It held further that even if Harper could identify a protectable liberty or property interest, the *ex parte* proceeding established by § 7609(f) provided him with all the process he was due under the Fifth Amendment.  JA94-97.

## SUMMARY OF ARGUMENT

The Complaint states a claim for violation of Harper's Fourth Amendment rights against unreasonable search and seizure of his papers.  The district court's holding that IRS's conduct did not constitute a Fourth Amendment search or seizure misapplied the third-party doctrine, for two reasons.  *First*, because that privacy-based doctrine is derived solely from the "reasonable expectation of privacy" test, it is inapplicable to determining whether a property-based seizure or search occurred. Here, Harper's records were his "dearest property," and IRS's seizure of them was a trespassory search.  *Boyd v. United States*, 116 U.S. 616, 638 (1986) (quoting *Entick v. Carrington*, 19 How. St. Tr. 1029 (1765)).  The papers were no less dear simply because Coinbase was holding and protecting the papers on Harper's behalf.  Second, the third-party doctrine does not apply where the government seeks from a third-party confidential digital data that can be aggregated and compiled to "provide[] an intimate window into a person's life."  *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018).  Harper's personal financial records fall within that category because they

14

contain a history of his transactions over a three-year period and point to much more about his finances and associations through blockchain analysis.

The district court also erred when it held in the alternative that IRS's search was "reasonable" under the Fourth Amendment because it satisfied requirements listed in *Powell*, 379 U.S. 8. *Powell* was not a Fourth Amendment case, and it says nothing about the reasonableness of Fourth Amendment seizures or searches. IRS's scattershot approach was unreasonable because it was not supported by a probable cause warrant or otherwise reasonable.

Furthermore, IRS seized Harper's papers without providing him any notice or an opportunity to contest the seizure. In doing so, IRS violated Harper's rights under 26 U.S.C. § 7609(f), which Congress adopted for the purpose of protecting taxpayers such as Harper from precisely the sort of fishing expedition in which IRS engaged in this case. The district court ruled that the statute does not provide Harper or anyone else the right to enforce the restrictions it imposes on IRS's authority to issue John Doe summonses. But the court failed to address Harper's argument that the Administrative Procedure Act grants John Doe taxpayers an express right of action to enforce those restrictions. It cited no statutory language to show that Congress precluded private enforcement of the statute under the APA.

The district court also erred in dismissing Harper's claim that IRS's denial of notice and an opportunity to contest the seizure violated his procedural due process rights under the Fifth Amendment. The district court held that Harper failed to identify any liberty or property interests infringed by IRS's seizure, but it did so based solely on its previous conclusion that the seizure did not violate Harper's Fourth Amendment rights. Harper identified many other sources of privacy rights in his personal financial records, including other federal constitutional provisions, common law, federal and state statutes, and privacy protections explicitly guaranteed by the New Hampshire Constitution. Even if IRS were correct that its tax-investigation authority may trump those many sources of privacy protection, its failure to provide Harper with any opportunity to assert his privacy rights is inconsistent with the requirements of the Due Process Clause.

## STANDARD OF REVIEW

This matter comes before the Court on appeal from the district court's grant of a Rule 12(b)(6) motion to dismiss the case for failure to state a claim upon which relief can be granted. In reviewing such grants, the Court applies a *de novo* standard of review. *Flood v. U.S. Dep't of Transportation*, 840 F.3d 49, 54 (1st Cir. 2016). That standard requires the Court to "construe all factual allegations in the light most

favorable to the non-moving party to determine if there exists a plausible claim upon which relief may be granted." *Ibid.*

## ARGUMENT

### I. HARPER HAS STATED A CLAIM UNDER THE FOURTH AMENDMENT

The Fourth Amendment protects "the right of the people to be secure in their … papers … against unreasonable searches and seizures." U.S. Const. amend. IV. Justice Holmes observed nearly a century ago that "[a]nyone who respects the spirit as well as the letter of the Fourth Amendment would be loath to believe that Congress intended to authorize one of its subordinate agencies to sweep all our traditions into the fire and to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime." *FTC v. Am. Tobacco Co.*, 264 U.S. 298, 305 (1924). IRS engaged in precisely this sort of unlawful fishing expedition when it seized from Coinbase Harper's financial records.

The Supreme Court has articulated two approaches to determining whether a "search" has occurred under the Fourth Amendment: (1) the property-based approach asks whether the government has trespassed upon a person's property to gather information; and (2) the privacy-based approach asks whether the government has intruded against a person's reasonable expectation of privacy. *United States v. Jones*, 565 U.S. 400, 405-06 (2012). Either test suffices, and even if a person lacks a

reasonable expectation of privacy in a particular area, a trespass akin to one understood at the founding will still constitute a search.  *Id*. at 406.

IRS's seizure of Harper's financial records is a search under both approaches—it violated Harper's property interest in his papers held in bailment by Coinbase, and it invaded his reasonable expectation of privacy by doing so.  This seizure and search was unreasonable because neither a warrant nor probable cause supported it.  Contrary to the district court's holding (*see* JA89-90), IRS does not enjoy any special exemption from those Fourth Amendment requirements.  Its "'rambling exploration' of a third-party's files" was therefore unlawful. *United States v. Theodore*, 479 F.2d 749, 754 (4th Cir. 1973).

### A.    IRS's Confiscation of Harper's Records Was a Seizure and Search Under the Property-Based Approach to the Fourth Amendment

### 1.    IRS Seized and Searched Harper's Personal Papers

Personal financial records indisputably are "papers" and "effects" protected by the Fourth Amendment.  *Cf. Am. Tobacco*, 264 U.S. at 305.  The history of the Fourth Amendment shows a strong preference for warrants for protection of a person's papers.  "The Fourth Amendment refers to 'papers' because the Founders understood the seizure of papers to be an outrageous abuse distinct from general warrants." Donald A. Dripps, *"Dearest Property": Digital Evidence and the History of Private "Papers" As Special Objects of Search and Seizure*, 103 J. Crim. L. & Criminology

49, 52 (2013). "If one goes back to the early Republic [] it is difficult to find any federal executive body that could bind subjects to appear, testify, or produce records." Philip Hamburger, *Is Administrative Law Unlawful?* 221 (2014). "It also is apparent that privately owned papers were peculiarly protected: They were not subject even to general disclosure requirements, it being only government-owned records that were open to inspection." *Id*.

Shortly after the Civil War, Congress passed a statute that granted the Secretary of the Treasury authority in all revenue actions "other than criminal" to serve an investigative demand on a defendant. An Act to Amend the Customs-Revenue Laws and to Repeal Moieties, ch. 391 § 5, 18 Stat. 187 (1874). In *Boyd*, 116 U.S. at 638, the Supreme Court ruled that subpoenas issued under this statute were "unconstitutional and void" under the Fourth Amendment because they are akin to general warrants. The Court relied heavily on the case of *Entick*, 19 How. St. Tr. 1029. *Id*. at 626.

In *Entick*, Lord Camden wrote:

> Papers are the owner's goods and chattels; they are his dearest property, and are so far from enduring a seizure, that they will hardly bear an inspection; and though the eye cannot by the laws of England be guilty of a trespass, yet where private papers are removed and erred away the secret nature of those goods will be an aggravation of the trespass, and demand more considerable damages in that respect.

*Id*. at 627-28 (quoting *Entick*, 19 How. St. Tr. at 1029).

The "principles laid down" in *Entick* "affect the very essence of constitutional liberty and security." *Id*. at 630. The Court equated "a compulsory production of a man's private papers" with "[b]reaking into a house and opening boxes and drawers." *Id*. at 622, 630. Both constituted "the invasion of his indefeasible right of personal security, personal liberty, and private property[.]" *Id*. at 630.

In revitalizing the property-based approach to the Fourth Amendment, so called because it often turns on property rights in searched things, *Jones* relied heavily on *Entick v. Carrington*, "a 'monument of English freedom' 'undoubtedly familiar' to 'every American statesman' at the time the Constitution was adopted, and considered to be 'the true and ultimate expression of constitutional law' with regard to search and seizure." *Jones*, 565 U.S. at 405 (quoting *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) and *Boyd*, 116 U.S. at 626).

Harper's personal financial records are "papers" that fall under the Fourth Amendment's protection no less than the financial information at issue in *Boyd*. It is of no moment that they are stored in an electronic medium. *See, e.g., United States v. Ackerman*, 831 F. 3d 1292, 1304 (10th Cir. 2016) ("After all, if opening and reviewing 'physical' mail is generally a 'search'—and it is—why not 'virtual' mail too?") (internal citation omitted) (Gorsuch, J.).; *United States v. Warshak*, 631 F.3d 266, 287 (6th Cir. 2010) (accord). Harper's property interest in his digital financial

records is not limited to the physical servers on which they are stored, but rather extends to the underlying information. *See United States v. Seljan*, 547 F.3d 993, 1014-17 (9th Cir. 2008) (Kozinski, J., dissenting) ("What makes papers special — and the reason why they are listed alongside houses, persons and effects — is the ideas they embody, ideas that can only be seized by reading the words on the page.").

The Supreme Court has readily recognized the property status of information. For instance, in *Carpenter v. United States*, 484 U.S. 19, 26-27 (1987), the Court had no trouble finding that the *Wall Street Journal* had a property interest in its confidential business information that had been stolen. *See also Ruckelshaus v. Monsanto*, 467 U.S. 986 (1984) (recognizing business data as property protected by the Takings Clause).

Being stored at Coinbase does not change the fact that Harper's financial records are his "papers." The arrangement was a classic bailment. Harper transferred his papers to Coinbase only after they entered into a contractual relationship whereby Coinbase agreed to keep confidential the personal information—including financial information—contained in the papers Harper entrusted to Coinbase. JA11, 33-36, 37-43. When, as here, a property owner entrusts his property to another for purposes of safekeeping (*i.e*, to a bailee), he does not thereby surrender any portion of his property rights. Indeed, if the person to whom the owner entrusts his property—be it chattel

or information—fails in his duty to protect it, that person is *presumed* negligent and liable to the owner for damages. *Northern Ins. Co. of New York v. Point Judith Marina, LLC*, 579 F.3d 61, 69-70 (1st Cir. 2009). The search and seizure of the owner's property is no less subject to Fourth Amendment protection simply because he has temporarily transferred possession to another for safekeeping.

A bailee is "[s]omeone who receives personal property from another, and has possession of but not title to the property." Black's Law Dictionary (11th ed. 2019). The Supreme Court has inserted the bailment branch of property law seamlessly into Fourth Amendment cases. For example, in *United States v. Jones*, Jones was not the owner of the vehicle to which the government attached a GPS device. 565 U.S. at 404 n.2. His status as a bailee had no effect on the Court's reasoning, and it did not caveat its ruling in his favor.

In *Carpenter v. United States*, 138 S. Ct. 2206 (2018), federal investigators subpoenaed wireless carriers' cell-site location information records without a warrant. *Id*. at 2212. Though the Court ruled in favor of Carpenter on privacy grounds, Justice Gorsuch stated that the matter could be addressed more appropriately as a bailment case*. Id*. at 2267-68 (Gorsuch, J., dissenting). He stated, "[T]he fact that a third party has access to or possession of [a person's] papers and effects does not necessarily eliminate [that person's] interest in them." *Id*. at 2268.

Citing to *Ex parte Jackson*, 96 U.S. 727, 723 (1878), which "held that sealed letters placed in the mail are 'as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles,'" Justice Gorsuch said: "No one thinks the government can evade *Jackson*'s prohibition on opening sealed letters without a warrant simply by issuing a subpoena to a postmaster for 'all letters sent by John Smith' or, worse, 'all letters sent by John Smith concerning a particular transaction.'" *Id*. at 2269, 2271.

Harper's financial records reflect his instructions to Coinbase to engage in certain cryptocurrency transactions on his behalf. Such records are entitled to the same Fourth Amendment protection as physical letters instructing an agent to make certain confidential transactions. *Id.; see also Ackerman*, 831 F. 3d at 1304; *Warshak*, 631 F.3d at 287. Coinbase, in turn, promised to maintain those records and protect them from disclosure. *See* JA12-13. This is precisely the bailment relationship that Justice Gorsuch envisioned.[6] IRS seized and searched Harper's records held on his behalf by Coinbase, requiring compliance with Fourth Amendment standards.

---

[6] The Contract disclaims Coinbase's liability if it transfers information to the government based on *valid* legal processes; that provision cannot plausibly be interpreted as legitimizing or "warning" Harper of IRS's legally invalid search and seizure.

### 2. The Third-Party Doctrine Under *Miller* Does Not Displace Harper's Property Interest in His Financial Records

The district court mistakenly relied on the "third-party doctrine" arising from *United States v. Miller*, 425 U.S. 435 (1976)—a case grounded in the *privacy*-based approach to the Fourth Amendment—to conclude that Harper lacks any *property* interest in his Coinbase records. JA87. In *Miller*, treasury agents used facially invalid grand jury subpoenas for Miller's bank records to obtain bank account information from a separate financial institution. 425 U.S. at 439. The Supreme Court held that the subpoenaed documents did not "fall within a protected zone of privacy" because they were not Miller's "private papers" but were "business records of the banks." *Id.* 440. This conclusion was not based on any analysis of Miller's property interest in the papers.

Miller did not make a property-based claim and instead argued that the documents at issue were "merely copies of personal records that were made available to the banks for a limited purpose and in which he has a reasonable expectation of privacy." *Miller*, 425 U.S. at 442. The *Miller* Court considered only "whether there is a legitimate 'expectation of privacy' concerning [the records'] contents." *Id.* at 442. *Miller* and the third-party doctrine it spawned are confined entirely within the "expectation of privacy" approach to the Fourth Amendment.

The Supreme Court has made clear that expectations of privacy are irrelevant in determining whether a property-based search occurs. *Florida v. Jardines*, 569 U.S. 1, 11 (2013) ("[It] is unnecessary to consider [expectations of privacy] when the government gains evidence by physically intruding on constitutionally protected areas."). *Miller*'s reasoning based on a customer's expectation of privacy in records held by a third party is not relevant to determining whether a trespassory seizure or search occurred. *See ibid.* "One virtue of the Fourth Amendment's property-rights baseline is that it keeps easy cases easy." *Ibid.*

This too is an easy case: private financial records are a person's "dearest property," which has been jealously protected since well before the Fourth Amendment was written. *Boyd*, 116 U.S. at 638. The fact that such papers are in digital form and bailed to another under contract does not somehow negate Harper's property interest in them. The bailment preserved Harper's property interests.

The district court's reliance on *Donaldson v. United States*, 400 U.S. 517, 531 (1971), cited at JA87, is likewise misplaced for the simple reason that *Donaldson* was not a Fourth Amendment case. A taxpayer challenged IRS's summons for his former employer's compensation records and conceded at oral argument "there is now no constitutional issue in the case." *Id.* at 522. The taxpayer further failed to produce evidence indicating that the employer had agreed to protect the records at issue from

disclosure, as is the case here. Rather, the Court's conclusion was based entirely on the underlying statute, which Congress immediately amended by requiring IRS "to provide notice and [to] authorize[] anyone entitled to notice to move to quash a summons." *Polselli v. IRS*, 598 U.S. 432, 444 (2023).

Finally, the district court emphasized that IRS was forced by the magistrate judge to narrow the scope of the summons to identification information, invoices, and "records of account activity including transaction logs or other records identifying the date, amount, and type of transaction (purchase/sale/exchange), the post transaction balance, and the names of counterparties to the transaction." JA88 (quoting *Coinbase III*, 2017 WL 5890052, at *8-9). But there is no *de minimis* exception to trespassory searches. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 16 (1968) (though more modest, "stops" and "frisks" are still "searches" and "seizures"); *Jardines*, 569 U.S. at 11 (police need not intrude into a home to commit a search—a dog sniff at the front porch is enough); *Taylor v. City of Saginaw*, 922 F.3d 328, 333-34 (6th Cir. 2019) (chalking a tire to obtain information is a Fourth Amendment search). Thus, IRS's search and seizure of only a portion of Harper's personal financial records stored with Coinbase is still a Fourth Amendment trespassory search.

If Harper somehow does not enjoy a full measure of property rights in his information through contract, he should still enjoy Fourth Amendment protection

based on common understandings around third-party storage of data, which are analogous to the relations that exist among property owners and tenants. *See Chapman v. United States*, 365 U.S. 610 (1961) (Fourth Amendment protects apartment tenant against an unreasonable search of his dwelling, even though he is only a leaseholder); *Bumper v. North Carolina*, 391 U.S. 543, 548 n. 11 (1968) (unreasonable search of grandmother's house violated her resident grandson's Fourth Amendment rights because the area searched "was *his* home" ((emphasis added)); *see also Minnesota v. Olson*, 495 U.S. 91 (1990) (overnight guest secure against unreasonable search of his hosts' apartment). The routine use of the possessive pronoun "your" when service providers, including Coinbase, refer to customers' information illustrates the common understanding that the information is the customers' and protectable by them under the Fourth Amendment.

## B. IRS's Confiscation of Harper's Records Was a Seizure and Search Under the Privacy-Based Approach to the Fourth Amendment

IRS also conducted a privacy-based Fourth Amendment search because Harper had a reasonable expectation of privacy in his personal financial records. Under the "reasonable expectation" test, a search occurs when the government intrudes into an area where "a person ha[s] exhibited an actual (subjective) expectation of privacy … that society is prepared to recognize as 'reasonable.'" *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring).

Privacy is one reason why individuals engage in cryptocurrency transactions in the first place. Harper's Contract with Coinbase to protect his personal financial information further evinces his subjective expectation of privacy. Courts look to contractual agreements or related policies to inform whether a person's expectation of privacy in an area controlled by a third party is reasonable. *See, e.g.*, *United States v. Dorais*, 241 F.3d 1124, 1130 (9th Cir. 2001) (hotel's checkout procedures granted a person a reasonable expectation of privacy in a room until checkout). The same logic applies in digital space: in a case finding a reasonable expectation of privacy in email, the Sixth Circuit concluded that an email service provider's limited right of access to information through a privacy policy would not defeat the expectation of privacy. A more protective privacy policy like that contained in Harper's Contract makes his expectations all the more reasonable. *See Warshak*, 631 F.3d at 287.

Coinbase promised Harper privacy in the strongest terms to "protect [his] personal information from loss, misuse, unauthorized access, disclosure, alteration, and destruction." JA12-13, Complaint ¶ 28. What the district court called Coinbase's "warning" that it may be "compelled to do so by a subpoena, court order, or similar procedure" to share his information is simply a contract term providing that Coinbase may release Harper's information when the government, through lawful procedures,

seizes it.  That possibility does not diminish the person's reasonable expectation of privacy against *unlawful* searches and seizures, which is what Harper alleges occurred.

Nor does *Miller* and the third-party doctrine displace Harper's legitimate expectation of privacy.  "In the years since its adoption, countless scholars [and several Justices] have come to conclude that the third-party doctrine is not only wrong, but horribly wrong."  *Carpenter*, 138 S. Ct. at 2262 (Gorsuch J., dissenting) (citation and internal quotation marks omitted).  Justice Sotomayor called the third-party doctrine "ill suited to the digital age, in which people reveal a great deal of information about themselves to third parties in the course of carrying out mundane tasks."  *Jones*, 132 S. Ct. at 957 (Sotomayor, J., concurring).  While this Court lacks authority to ignore Supreme Court precedent, no matter how wrong or antiquated, it may distinguish *Miller* and limit its application in cases involving digital data that individuals in modern society routinely share with third-party intermediaries.  *See Carpenter*, 138 S. Ct. at 2216-19; *Warshak*, 631 F.3d at 288.

The contents of every email or text message, for instance, is disclosed to a third-party service provider.  *Warshak* nonetheless recognized that individuals have a legitimate expectation to the privacy of their emails.  "*Miller* is not controlling" because emails are "confidential communications" and the third-party service provider merely "was an *intermediary*, not the intended recipient of the emails."  *Ibid.*

*Carpenter* likewise held that individuals have a legitimate privacy interest in cell-site location information ("CSLI") that cellphones constantly share with third-party service providers. 138 S. Ct. at 2216-19. The Court explained that Fourth Amendment analysis is not based "solely on the act of sharing" the information with a third party, but also on "the nature of the particular documents sought." *Id.* at 2219. The "nature" of CSLI was "qualitatively different" from business records in *Miller* due to technology that enabled the government to rapidly aggregate and compile CSLI to generate "a detailed and comprehensive history of the person's movement" and "associations" that would be "otherwise unknowable." *Id.* at 2018-19. Harper's financial information is similarly sensitive and revealing—heightening the need that it be kept utterly secure.

Harper's digital financial records are also qualitatively different from the bank records in *Miller*. Cryptocurrency transactions are confidential by nature. The copies of checks and other documents at issue in *Miller* disclose personal information on their face. A bitcoin transaction lodges a change in ownership on a global public ledger called the blockchain. It does so by reassigning a quantity of bitcoin from an address known as a "public key" to another public key. These "keys" consist of strings of randomly generated characters that reveal no personal information. Bitcoin transactions thus do not tell observers who transacted with whom or for what. Unlike

in *Miller*, there is no public exposure of personal information. And, but for obtaining records from Coinbase, the details of each transaction are "otherwise unknowable." *Carpenter*, 138 S. Ct. at 2219. Because the content of Harper's bitcoin transactions through Coinbase is otherwise confidential, records of such transactions reflect Harper's "confidential communication" to Coinbase to make those transactions as an intermediary, thus placing them within the ambit of Fourth Amendment protection. *Warshak*, 631 F.3d at 288.

Finally, like the cell-site records in *Carpenter*, digital transaction records have a "retrospective quality" and "provide an intimate window into a person's life." 138 S. Ct. at 2218. The district court relied on *United States v. Gratkowski*, 964 F.3d 307, 312 (5th Cir. 2020), to hold otherwise, declaring that "Coinbase records are more akin to the bank records in *Miller* than the CSLI in *Carpenter*." JA84. But the records in *Gratkowski* and *Miller* are easily distinguishable from the summons here. The *Miller* subpoena sought information from a single fraud suspect, 425 U.S. at 437-438, and the subpoena in *Gratkowski* focused on a single suspect's transactions with an illegal website, 964 F.3d at 309. By contrast, IRS engaged in a fishing expedition targeting countless Coinbase customers. IRS agents in *Miller* could not have sought records for all bank customers based on their belief that some may have committed fraud. *See*

*United States v. Dauphin Deposit Tr. Co*., 385 F.2d 129, 131 (3d Cir. 1967) (halting IRS's "fishing expedition" into bank records).

Additionally, a complete record of an individual's transaction history in a modern digital marketplace reveals far more than the comparatively sparse records kept by a bank in the 1970s. With identity tied to any transaction, both the government and private actors can easily aggregate and analyze such data to reveal intimate details of a person's life. *See Matter of Search of Multiple Email Accounts Pursuant to 18 U.S.C. § 2703*, 585 F. Supp. 3d 1, 8 (D.D.C. 2022) (describing how free software and paid consultancies "rapidly scan the blockchain, which is an enormous data set, to conduct various forms of pattern recognition"). Multiple years of historical transaction data open the same sort of "intimate window" into the lives of Coinbase customers like Harper. *Carpenter*, 138 S. Ct. at 2217. Entrusting his sensitive data to a service provider for safekeeping under strict contractual arrangements in no way diminished his reasonable privacy expectation that the government would not have unfettered access. *Id.* at 2018.

C.    **IRS's Seizure of Harper's Records Was Unreasonable**

1.    **IRS Violated the Fourth Amendment's Warrant and Probable Cause Requirements**

IRS's seizure and search of Harper's financial records were unreasonable under the Fourth Amendment because IRS failed to obtain a warrant supported by probable

cause.  The Supreme Court has repeatedly held that "in the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement."  *Carpenter*, 138 S. Ct. at 2221.  There is no Fourth Amendment exception for IRS investigations, and the district court's invention of one based on a misreading of *Powell*, 379 U.S. 8, should be reversed.

Even as the district court conceded that "*Powell* [is] not an 'exception' to the warrant requirement," it claimed that case "exempt[s] the IRS from making any probable cause showing that would otherwise be required to support a warrant." JA89-90 (citing *Powell*, 379 U.S. at 57).  *Powell* did not grant IRS any Fourth Amendment dispensation—whether styled as an "exception" or "exemption"— for the simple reason that case did not mention, let alone address, the Fourth Amendment.

In *Powell*, the taxpayer argued that Section 7602 of the Internal Revenue Code required IRS to have probable cause of fraud in order to subpoena corporate tax returns for re-examination, because tax-deficiency assessments against the taxpayer were time-barred except in cases of fraud.  *Id.* at 49.  The court of appeals relied on Section 7605's prohibition against "unnecessary examination" to hold probable cause was needed.  *Id.* at 50.  The Supreme Court reversed explicitly and exclusively on statutory grounds: "*Reading the statutes as we do*, the Commissioner need not meet any standard of probable cause to obtain enforcement of his summons."  *Id.* at 57

(emphasis added).  Rather, the statutes required IRS to "show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed."  Ibid.

This Court has stated in *dicta* in a footnote that "the Fourth Amendment is not violated as long as the IRS has complied with the requirements of *United States v. Powell*[.]"  *United States v. Allee*, 888 F.2d 208, 213 n. 3 (1st Cir. 1989).  That *dicta* is clearly wrong because *Powell*'s requirements are based solely on the Supreme Court's "[r]eading of the statutes," not the Constitution.[7]  Moreover, the requirements articulated in *Powell* could not be constitutional. Otherwise, Congress—which establishes "administrative steps required by the [Internal Revenue] Code"—would determine the scope of Fourth Amendment protection instead of our anti-majoritarian courts.  This Court should not interpret *Powell* as abandoning "the duty of the judicial department to say what the law is."  *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).

---

[7] The taxpayer in *Powell* did not raise a Fourth Amendment claim.  It appears that he was unable to do so because the tax returns at issue had previously been shared with IRS.

IRS does not enjoy any special dispensation from the Fourth Amendment's warrant and probable cause requirements, even when its interest in tax collection is acute. *See G. M. Leasing Corp. v. United States*, 429 U.S. 338, 352 (1977) (IRS agents' warrantless entry to seize books and records violated the Fourth Amendment). Its warrantless search and seizure of Harper's financial records held in bailment by Coinbase, without probable cause or even suspicion of wrongdoing, was unconstitutional.

### 2.    IRS Failed to Comply with *Powell* Requirements

Even if compliance with *Powell*'s statutory standards render a government search constitutionally "reasonable," IRS's search and seizure of Harper's papers would still be unconstitutional. *Powell* requires IRS to demonstrate that "the administrative steps required by the Code have been followed." 379 U.S. at 57. As explained more fully in Section II.B below, IRS did not comply with Code requirements in obtaining the Coinbase summons. In particular, IRS failed to comply with the three principal requirements imposed by 26 U.S.C. § 7609(f). Thus, even under the district court's understanding of what constitutes a "reasonable" search, IRS's seizure of Harper's financial records cannot pass constitutional muster.

An overly broad government search that amounts to "a fishing expedition" is not reasonable and violates the Fourth Amendment. *Dauphin Deposit*, 385 F.2d at

131.  Section 7609(f) codifies that prohibition against fishing expeditions.  As discussed below in Section II.B, the Coinbase summons was precisely the sort of fishing expedition that § 7609(f) was adopted to prevent.  Because the summons did not comply with § 7609(f), it did not satisfy the *Powell* standards.

## II.   HARPER HAS STATED A CLAIM FOR VIOLATION OF 26 U.S.C. § 7609(f)

Congress adopted 26 U.S.C. § 7609(f) in 1976 to protect John Doe taxpayers such as Harper from IRS overreach.  *Tiffany Fine Arts*, 469 U.S. at 317; *United States v. Gertner*, 65 F.3d 963, 971 (1st Cir. 1995) ("Congress passed section 7609(f) specifically to protect the civil rights, *including the privacy rights*, of taxpayers subjected to the IRS's aggressive use of third-party summonses") (emphasis added).  The Complaint alleges that IRS engaged in precisely the sorts of overreach that Congress sought to guard against.  Yet as interpreted by the district court, § 7609(f) is a toothless, unenforceable provision that grants John Doe taxpayers no right to object to IRS seizure of their financial records—a right granted to virtually all other taxpayers.

### A.   The Administrative Procedure Act Creates an Express Right of Action to Enforce § 7609(f)

Appellees' principal response in the district court to Harper's statutory claim was that Harper lacked *statutory* standing to raise it.  *See Lexmark Int'l, Inc. v. Static*

*Control Components*, 572 U.S. 118, 129 (2014).[8] The district court did not decide that issue; rather, it assumed without deciding that Harper possessed the requisite standing. It nonetheless dismissed Harper's § 7609(f) claim on the ground that Congress has not authorized Harper or anyone else to seek to enforce that statute's requirements. JA101 (stating that *ex parte* § 7609(f) determinations "are not subject to later challenge as a matter of procedure").

The district court cited no statutory language to support its not-subject-to-later-challenge holding, and there is none. On the contrary, the APA grants an *express* private right of action to anyone harmed by final IRS action alleged to violate federal law. 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."); 5 U.S.C. § 704 ("[F]inal agency action for which there is no other adequate remedy in a court [is] subject to judicial review.").[9] Section 7609(f) imposes strict limitations on IRS's issuance of John Doe

---

[8] Appellees have not challenged Harper's Article III standing, nor could they reasonably do so. Appellees' seizure of Harper's financial records unquestionably constitutes the injury-in-fact necessary to establish Article III standing.

[9] IRS does not contest that its issuance of the Coinbase summons is "final agency action" within the meaning of 5 U.S.C. § 704. Under the APA, an "agency action" includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

summonses; the APA grants taxpayers aggrieved by IRS violation of those limitations the right to seek redress in a federal court.

Sections 7609(f) and (h)(2) state that IRS is prohibited from issuing a John Doe summons unless a federal district court, following an *ex parte* proceeding and "based solely on [IRS's] petition and supporting affidavits," agrees with IRS that the requirements of § 7609(f)(1), (2), and (3) have been satisfied. But nothing in the statutory text says or suggests that IRS compliance with those requirements is subject to no further judicial review. Congress adopted § 7609(f) to *increase* privacy protections for John Doe taxpayers such as Harper. *Tiffany Fine Arts*, 469 U.S. at 316-17. It is illogical to suggest (as IRS does) that the same statute *sub silentio* stripped John Doe taxpayers of the right the APA granted to them to enforce statutory rights.[10]

---

[10] The thrust of the Taxpayer Reform Act of 1976 was to overturn IRS standards that Congress feared might "unreasonably infringe on the civil rights of taxpayers, including the right to privacy." *Id*. at 316. In addition to adding § 7609(f) to the tax code, the Act addressed third-party summonses issued when IRS knows the identity of the taxpayer. Those provisions, 26 U.S.C. § 7609(a) & (b), require IRS to give the taxpayer notice of the summons and grant the taxpayer the right to challenge the summons in federal court. *Ibid.* Indeed, Justice Ketanji Brown Jackson recently stated that Congress has deemed it highly important that taxpayers be granted notice, and an opportunity to object in federal court, whenever IRS seeks access to their private records. *Polselli*, 598 U.S. at 446 (Jackson, J., concurring).

The district court cited two decisions from other circuits in support of its holding that the *ex parte* district court proceeding is the sole forum in which IRS compliance with the three § 7609(f) requirements may be examined. JA102 (citing *Tax Liabilities of: John Does v. United States*, 866 U.S. 1015, 1018 (8th Cir. 1989); *United States v. Samuels, Kramer and Co.*, 712 F.2d 1342, 1346 (9th Cir. 1983)).[11] Each of those decisions is inapposite. Each addressed whether a *third-party record-keeper* (*e.g.*, a party similarly situated to Coinbase) is entitled to challenge the *ex parte* determination that a John Doe summons complied with § 7609(f). The Tenth Circuit disagrees with the Eighth and Ninth Circuits; it holds that third-party record-keepers challenging enforcement of a John Doe summons may do so based on a claim that IRS failed to comply with § 7609(f)'s requirements. *United States v. Brigham Young Univ.*, 679 F.2d 1345, 1347-48 (10th Cir. 1982). Even if Congress did not intend to permit such challenges by third-party record-keepers (an issue on which Harper takes no position), that says nothing about whether Congress intended to permit statutory

---

[11] The district court also cited a First Circuit decision in support of its ruling that all parties are estopped from challenging a magistrate's authorization of a John Doe summons: *Allee*, 888 F.2d at 211. *Allee* has nothing to say about that issue. It addressed whether, in conjunction with a contempt proceeding, a defendant is permitted to challenge a prior enforcement order from which he had not appealed. Unlike the defendant in *Allee*, Harper was not a party to and could not participate in the relevant proceeding—in Harper's case, the *ex parte* proceeding in which compliance with § 7609(f) was at issue.

challenges by John Doe taxpayers themselves, the very parties for whose benefit Congress adopted § 7609(f).

Following the magistrate's *ex parte* decision authorizing IRS to issue its summons, Coinbase refused to comply, and IRS initiated an enforcement proceeding. Harper did not attempt to intervene in those proceedings; indeed, he was unaware that his financial records were among those subject to IRS's Coinbase summons. IRS did not argue in the district court that Harper's failure to intervene should preclude him from pursuing claims in these proceedings. IRS, which has consistently taken the position that John Doe taxpayers are not permitted to intervene in summons-enforcement proceedings, has made no claim in this case that Harper should have moved to intervene or that he is bound by the magistrate's decision to enforce the Coinbase summons.

### B. The Complaint Adequately Alleges IRS's Non-Compliance with § 7609(f)'s Three Requirements

The district court held in the alternative that Harper's § 7609(f) claim fails because, contrary to the Complaint's allegations (JA30, Complaint ¶ 143), IRS complied with each of the three requirements set out in § 7609(f). That holding misinterprets § 7609(f)'s requirements. Moreover, rather than accepting Harper's factual allegations, the district court based its ruling in part on IRS's disputed factual allegations.

### 1. Harper Has Adequately Alleged Failure to Identify an "Ascertainable" Group

Section 7609(f)(1) prohibits IRS from issuing a John Doe summons unless IRS can establish that the summons relates to an investigation of "a particular person or ascertainable group or class of persons." The district court's holding that IRS satisfied that requirement, JA104-05, misinterprets what constitutes an "ascertainable group or class of persons."

IRS's *ex parte* petition stated that its "ascertainable group" consists of all "United States taxpayers who, at any time during the years ended December 31, 2013, through December 31, 2015, conducted transactions in a convertible virtual currency as defined in IRS Notice 2014-21." JA113, 125. That group consists of many millions of individuals and businesses, although no one has ever attempted to find them or undertake an exact count. Coinbase alone had more than one million users in 2014, one of the three years covered by the petition. *Coinbase II*, 2017 WL 3035164 at *1. Such a large and amorphous group does not qualify as "ascertainable" under any reasonable interpretation of that word as used in the statute.

The district court accepted IRS's proposed definition of ascertainable. JA104 (citing a definition of "ascertain" from Merriam Webster Dictionary: "to find out or learn with certainty"). Harper does not quarrel with that definition. But the group identified by IRS is so amorphous and numerous that it reads the "ascertainable"

41

limitation out of the statute. "Everyone" or "all users of cash" would be "ascertainable" under the court's treatment of the term. Admittedly, a government with unlimited time and resources could eventually closely approximate the number of grains of sand on Maine's Ogunquit Beach; but no English speaker would conclude that the ability to do so renders the precise number "ascertainable." IRS would face similar obstacles attempting to "learn with certainty" the identity of all the millions of members of the group it identified. When Congress required the group or class identified by IRS to be "ascertainable," it meant a unit of measurement larger but still contiguous with "person," not a group or class that is, for practical investigatory and tax-collection purposes, unlimited. The precise individuals who are partners in a limited-partnership tax shelter are "ascertainable"; the millions of taxpayers who share the characteristics identified by IRS are not.

The legislative history of § 7609(f) supports Harper's construction of the phrase "ascertainable group or class of persons." The House Report on what became the Tax Reform Act of 1976 gave precisely one example of what Congress meant by that phrase: use of a "John Doe summons to obtain the names of corporate shareholders involved in a taxable reorganization which had been characterized by the corporation (in a letter to its shareholders) as a nontaxable transaction." H.R. Rep. 94-658, 1975 WL 12389 (Leg. Hist.), at *311 (1975). The Report said that in this "and *similar*

*situations*, where there are unusual (or possibly suspicious) circumstances, ... use of the John Doe summons may be appropriate." *Ibid.* (emphasis added). The allegedly "ascertainable group" identified by IRS in the Coinbase summons bears no resemblance to the groups Congress had in mind when it imposed strict limits on the use of John Doe summonses.[12]

### 2. Harper Has Adequately Alleged that IRS Did Not Show that the Group It Identified Has Failed to Pay Its Taxes

Section 7609(f)(2) prohibits IRS from issuing a John Doe summons unless IRS can show that "there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law." The district court refused to credit Harper's allegations that IRS failed to make that showing. It estopped Harper, a non-party in the Coinbase

---

[12] The House Report includes many other statements indicating that Congress did not authorize use of John Doe summonses for "groups" as broad-ranging as the one at issue here. It endorsed IRS's "sparing use" of John Doe summonses (in "[r]ecogni[tion]" that their use raises "issues of privacy") and indicated that they are appropriate only when IRS can demonstrate that there is "reasonable cause to believe that *this transaction* has not been correctly reported." *Ibid*. (emphasis added). Congress was limiting John Doe summonses to investigations of a single "transaction" or closely related transactions, not millions of taxpayers involved in unrelated transactions. The Report added, "[T]he committee does not intend that the John Doe summons is to be available for purposes of enabling the Service to engage in a possible 'fishing expedition.' For this reason, the committee intends that when the Service does seek court authorization to serve John Doe summons, it will have specific facts concerning a *specific situation* to present in the court." *Ibid*. (emphasis added).

matter, from challenging findings there and credited government factual allegations made there.  The district court accepted the declaration of IRS agent David Utzke as proven against Harper, stating that "§ 7609(f)(2) is satisfied" because IRS's *ex parte* petition "alleged that not only did it have suspicion that the John Doe class included taxpayers who were not complying with the law, but it knew that members of the class violated the tax laws in the past, all of which was sufficient to satisfy § 7609(f)(2)." JA106.  By deferring to the factual allegations in the Utzke declaration, the district court did not comply with standards governing Rule 12(b)(6) motions to dismiss.

Moreover, IRS did not meet its statutory burden simply by showing that *some* members of the group it identified may have failed to pay their taxes—or have contemplated not doing so, as Utzke alleged by stating that some bitcoin users post materials online about avoiding taxes.  If that were the standard, § 7609(f)(2) would impose no restrictions whatsoever; within *any* group consisting of millions of taxpayers, there will always be a substantial number of tax cheats.  To have meaning, the subsection must require IRS to show that *all* in a group or class "may have failed to comply" with the tax laws, such as participants in a tax shelter designed to create fictitious losses.  The characteristics that placed them in the class must be the indicia of tax non-compliance.

The district court mistook the group of taxpayers that IRS sought to prove were failing to comply with the tax laws. The court stated that IRS showed that "taxpayers utilizing Coinbase" may have failed to report all income. JA106. In point of fact, IRS's allegations did not address Coinbase customers as such at all; rather, the IRS declaration alleged noncompliance by all U.S. taxpayers who "conducted transactions in a convertible virtual currency" at any time between 2013 and 2015.

The Utzke declaration relied on his anecdotal experience investigating three taxpayers. Utzke's "Taxpayer 1" repatriated foreign assets using an ATM (dispensing U.S. cash) and later bitcoin. There was no indication at all that he was a Coinbase user. The other two, "Taxpayer 2" and "Taxpayer 3," were corporations with millions in revenues who treated bitcoin purchases on their tax returns as "deductions for technology expenses." JA139-140. Bitcoin was not at the center of, or even particularly useful to, their tax evasion. They could have engaged in an identical tax fraud by declaring other non-deductible expenses—vacation expenses, auto repair, or home improvements—as "technology expenses" on their tax returns. Taxpayers 2 and 3 had Coinbase accounts; Utzke makes no allegation that those accounts were used in tax avoidance.

Allegations like these, accepted uncritically in the *ex parte* Coinbase proceeding because interested parties were excluded, received unchallenged acceptance again in

the court below.  The court erred by failing to accept Harper's contrary allegations in connection with a Rule 12(b)(6) motion to dismiss.

> ### 3. Harper Has Adequately Alleged that the Information IRS Sought from Coinbase Was Readily Available from Other Sources

Section 7609(f)(3) effectively prohibits IRS from issuing a John Doe summons that simultaneously seeks both identity information and taxpayer records, if the taxpayers themselves are a ready source of the records.  IRS failed to satisfy that requirement because the financial records it sought from Coinbase could have been requested directly from Harper and other Coinbase customers.  Indeed, when § 7609(f)(3) was adopted, IRS generally used John Doe summonses to identify taxpayers, not to obtain their documents from a third party.

Through use of the conjunctive "and," the statute imposes on IRS the burden of demonstrating that *both* the records it seeks to examine *and* the identity of the person(s) whose tax liability is at issue "are not readily available from other sources." In circumstances where IRS does not know the identities of targets and has good reason to believe that their records could not be obtained from them even if their identities were known, it may gather records using the John Doe summons.  That was not the case here.

The legislative history of the Tax Reform Act of 1976 confirms that Congress, by adopting § 7609(f)(3), sought to limit IRS use of John Doe summonses largely to efforts to uncover the *identity* of taxpayers, not to obtain their financial records. The Supreme Court decision in *Bisceglia*, 420 U.S. 141, raised congressional concerns over IRS abuse of John Doe summonses and led Congress to adopt § 7609(f). Yet the John Doe summons at issue in *Bisceglia* was far more limited in scope than the *Coinbase* summons. It was limited to a request for the identity of a single taxpayer: IRS demanded that a bank disclose the identity of the person who had deposited $20,000 in cash with the bank. *Id.* at 149-50. Every example cited by the Act's House Report as a proper use of a John Doe summons involved a summons that sought nothing more than the *identity* of one or more specified taxpayers. H.R. Rep. 94-658, at *311. The Report expressed Congress's extreme wariness of John Doe summonses that seek more than identification information:

> [T]he committee does not intend that the John Doe summons is to be available for purposes of enabling [IRS] to engage in a possible 'fishing expedition.' ... [IRS] must convince the court that it has made a good faith, reasonable effort to explore other methods of investigation, and that use of the John Doe summons is the only practical means of obtaining the information needed by [IRS].

*Id.* at 311-12.

As part of the Taxpayer First Act, Pub. L. 116-25, § 1204 (2019), Congress amended § 7609(f) to "clarify" the limited scope of IRS's summons authority, after

determining that IRS was continuing to misuse that authority. *See* H.R. 116-39(I), 2019 WL 1649873 at *41-42 (2019). It added to § 7609(f) a provision stating that any John Doe summons must be "narrowly tailored." Importantly, in describing the limitations on IRS's John Doe summons authority imposed by § 7609(f) as initially enacted, the House Report stated, "IRS is able to issue a summons (referred to as a 'John Doe' summons) *to learn the identity* of the taxpayer." *Id.* at *41 (emphasis added). In other words, the 2019 Congress construed § 7609(f) as all along mandating use of John Doe summonses for taxpayer-identification purposes only.

In the years following adoption of § 7609(f), IRS apparently shared Congress's understanding of its limited John Doe summons authority. Many of its John Doe summonses sought only taxpayer-identification information. *See, e.g., Brigham Young Univ.*, 679 F.2d 1345 (John Doe summons to obtain names of individuals who donated property other than securities to a university); *Matter of Does*, 688 F.2d 144 (2d Cir. 1982) (names of tax-shelter investors); *Samuels, Kramer*, 712 F.2d 1342 (same); *United States v. Ritchie*, 15 F.3d 592 (6th Cir. 1994) (names of clients who made cash payments exceeding $10,000 to law firm); *Gertner*, 65 F.3d 693 (same). Indeed, after a Coinbase customer identified himself and sought to intervene in IRS's suit to enforce the Coinbase summons, IRS withdrew its summons for that customer's

financial records. "The IRS explained that because it now knew [the customer's] name, it no longer needed his records." *Coinbase II*, 2017 WL 3035164 at *2.[13]

Once IRS obtained Harper's name and contact information, his financial information was "readily available" from Harper himself—thereby precluding use of a John Doe summons to obtain that financial information from Coinbase. If IRS for some reason could not obtain that information from Harper, it could issue a summons to Coinbase expressly seeking Harper's records. 26 U.S.C. § 7602(a). By seeking Harper's records via a John Doe summons rather than discovering his identity and proceeding with a summons that identified him by name, IRS deprived Harper of any ability to contest the summons or to raise defenses available to taxpayers whose identity is known to IRS. *See Powell*, 379 U.S. at 57-58; *Polselli*, 598 U.S. at 435.

The district court dismissed Harper's § 7609(f)(3) claim under Rule 12(b)(6), stating that Harper's claim "ignores the text of the statute." JA106. That holding misreads the statute. Section 7609(f)(3)'s text speaks to the evidentiary burden imposed on IRS when it seeks to permission to issue a John Doe summons, not to the permissible scope of such summonses.

---

[13] Because IRS withdrew its request for financial records, it succeeded in preventing intervention—the motion to intervene became moot. In light of that ploy, IRS cannot plausibly explain why it did not limit its Coinbase summons to a request for customer identification information.

In opposition to IRS's motion to dismiss, Harper spelled out in detail the basis for his reading of § 7609(f) and then explicitly requested leave to amend if the district court determined that the Complaint's factual allegations lacked sufficient heft to render plausible his claims under § 7609(f)(1), (2) or (3). The district court ultimately dismissed those claims as a matter of law without addressing whether the claims were supported by sufficient factual allegations. Should this Court conclude that the Complaint's claims under § 7609(f)(1), (2) or (3) require more detailed factual allegations of the sort set out in this brief, Harper requests that the Court remand the case with directions that Harper be granted leave to file an amended complaint to include those allegations.

## III. HARPER HAS STATED A CLAIM UNDER THE FIFTH AMENDMENT FOR VIOLATION OF HIS PROCEDURAL DUE PROCESS RIGHTS

Among the peculiarities in this case is the district court's acceptance of factual allegations adverse to Harper, even though they were made in separate proceedings. Such peculiarities exist because IRS's use of the John Doe summons attempts to dispose of Harper's important interests through a case in which he was not a party. When an individual's liberty or property interests are at stake, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The Complaint alleges that IRS deprived Harper of liberty and property interests in his

financial records without notice and without providing him an opportunity to challenge the deprivation.  JA21, 25, 28, 30; Complaint ¶¶ 81, 105, 129, 142.  The district court did  not dispute the lack of notice and did not point to any opportunity available to Harper to contest IRS's summons to Coinbase for his financial records.

The court nonetheless dismissed Harper's procedural due process claim, ruling that Harper failed to identify any liberty or property interests infringed by IRS's seizure of his financial records.  JA93-94.  The court asserted that its ruling flowed logically from its earlier ruling that Harper lacked property rights and an expectation of privacy in his financial records sufficient to implicate his Fourth Amendment protections against unreasonable searches and seizures. *Ibid.*  The court was incorrect. Harper had a substantial property interest in his personal financial records, which he placed in the hands of Coinbase as a bailment, as discussed above.

The district court also failed to acknowledge that the liberty interest in one's privacy derives from sources wholly distinct from the Fourth Amendment—*e.g.*, other provisions of the U.S. Constitution, federal statutes, common law, and (in Harper's case) New Hampshire statutes and the State's Constitution. While government interference with those liberty interests may in some instances be warranted, Harper possesses a procedural due process right to be heard at a meaningful time and in a meaningful manner before the government is permitted to do so.

The U.S. Supreme Court has repeatedly recognized that the "right to privacy" is a "legitimate one" that derives from multiple provisions of the U.S. Constitution. *Griswold v. Connecticut*, 381 U.S. 479, 485 (1965). The constitutional right to privacy includes "an individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977). In *Nixon v. Administrator of General Services*, 433 U.S. 425, 457-58 (1977), the Court applied that interest in avoiding disclosure of personal matters to President Nixon's efforts to prevent examination of his personal correspondence. Citing both *Whalen* and *Nixon*, this Court considered constitutional protections against disclosure of personal matters in the context of an individual's objections to release of personal medical information from his psychiatric report. *Borucki v. Ryan*, 827 F.2d 836, 839-49 (1st Cir. 1987).

The district court sought to distinguish *Whalen* and similar cases by noting that the IRS obtained Harper's private financial records from a third party, not from Harper himself. JA94 n.6 ("stating that "[o]ne's interest in avoiding disclosure of account records maintained by third party financial institutions does not fit within these categories of 'personal matters'"). But *Whalen* cannot be distinguished on that ground; the Court held that the challenged statute implicated a patient's right to privacy even though the records whose disclosure the statute required (prescription records prepared by the patient's doctor) were not in the patient's possession.

Nor can Harper's constitutional right-to-privacy concerns be diminished on the ground that the personal information being disclosed (financial records) is somehow less important than other types of personal information. Multiple federal courts have held that the liberty interest in privacy encompasses personal financial information. *Payne v. Taslimi*, 998 F.3d 648, 657 (4th Cir. 2021); *Walls v. City of Petersburg*, 895 F.2d 188, 194 (4th Cir. 1990) (holding that financial information required by employment questionnaire implicated plaintiff's liberty interest in her right to privacy).

Harper's privacy rights also derive from the common law,[14] New Hampshire statutory law,[15] and the New Hampshire Constitution.[16] They also derive from 26 U.S.C. § 7609(f), which imposes strict limits on IRS's authority to issue John Doe summonses. As this Court recognizes, "Congress passed § 7609(f) specifically to

---

[14] *Hamberger v. Eastman*, 106 N.H. 107, 112 (1965) (the common-law "right of privacy" includes protection against invasion of one's "solitude or seclusion").

[15] *See* Right of Privacy Act, New Hampshire RSA 359-C:8. The statute prohibits state officials from obtaining an individual's "financial or credit records" from "a financial institution or creditor" except by virtue of a valid subpoena or summons issued *after* the individual has been provided both notice of the subpoena or summons and an opportunity to object.

[16] N.H. Const., Part I, Article 2-b (stating that "An individual's right to live free from government intrusion in private or personal information is natural, essential, and inherent").

protect civil rights, *including the privacy rights*, of taxpayers subjected to the IRS's aggressive use of third-party summonses." *Gertner*, 65 F.3d at 971 (emphasis added).

IRS contends that its seizure of Harper's financial records without a subpoena and without probable cause did not violate the Fourth Amendment and was consistent with its statutory authority. It nonetheless acted in a manner that denied Harper all opportunity to raise his right-to-privacy claims before it seized his records. The denial of that opportunity before impinging on Harper's privacy violated the Fifth Amendment, which prohibits deprivation of liberty interests without "due process of law." As the Sixth Circuit explained, in a case involving police officers who objected to release of personal information from their personnel files, "[T]he central meaning of procedural due process is that parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified ... at a meaningful time and in a meaningful manner." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1068 (6th Cir. 1998) (citations omitted). The court enjoined the city government from releasing personal information about the officers without first providing them with notice of the intended release and an opportunity to object. *Id.* at 1069.

The district court ruled that the "process" Harper was afforded in this case complied with the Fifth Amendment because it "adequately protected" Harper's

privacy interests. JA94. As evidence of adequate protection, the court cited the *ex parte* proceeding at which a federal magistrate examined material submitted by IRS to determine whether IRS satisfied the requirements of § 7609(f). JA95. But the district court could point to no case law suggesting that such proceedings can serve as an adequate due-process substitute for providing the affected citizens notice and an opportunity to object. Moreover, as explained above, providing notice to Harper was eminently feasible. If IRS could show that Coinbase use is indicative of tax noncompliance, it could have obtained Harper's name and contact information from Coinbase and used that information to provide Harper with constitutionally required notice.

## CONCLUSION

The Court should reverse the district court's grant of Appellees' motion to dismiss for failure to state a claim, and remand the case the district court.

Respectfully submitted,

/s/ Richard A. Samp
Richard A. Samp
   First Circuit Bar No. 19778
Sheng Li
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
202-869-5210
rich.samp@ncla.legal
sheng.li@ncla.legal

October 13, 2023

# CERTIFICATE OF COMPLIANCE

I am an attorney for Appellant James Harper.  Pursuant to Fed.R.App.P. 32(a)(7), I hereby certify that the foregoing brief of Appellant is in 14-point, proportionately spaced Times New Roman type.  According to the word processing system used to prepare this brief (WordPerfect 2021), the word count of the brief is 12,806, not including the table of contents, table of authorities, certificate of service, and this certificate of compliance.


/s/ Richard A. Samp
Richard A. Samp

October 13, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2023, I electronically filed the foregoing document with the U.S. Court of Appeals for the First Circuit, using the CM/ECF system. Counsel for all parties are registered users of the CM/ECF system and service will be accomplished via the appellate CM/ECF system.

 /s/Richard A. Samp
 Richard A. Samp

# ADDENDUM

### TABLE OF CONTENTS

Order Dismissing Complaint, ECF 39, May 26, 2023 (JA73-108) . . . . . . . . . . . . . 1

District Court Judgment, ECF 40, May 30, 2023 (JA109). . . . . . . . . . . . . . . . . 37

Relevant Constitutional and Statutory Provisions . . . . . . . . . . . . . . . . . . . . . . . . . 38

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

James Harper

   v.          Civil No. 1:20-cv-00771-JL
               Opinion No. 2023 DNH 066P
Charles P. Rettig, in his official
capacity as Commissioner, Internal
Revenue Service, et al.

**<u>MEMORANDUM ORDER</u>**

  This case concerns the constitutionality of the Internal Revenue Service's

utilization of its "John Doe" summons procedure to obtain a taxpayer's account

information from Coinbase, a virtual currency exchange.  Following the issuance and

enforcement of such a summons, the IRS collected account information and records from

Coinbase.  Some of the records it collected belonged to Plaintiff James Harper, who

bought and sold bitcoin through Coinbase.  Through this lawsuit, Harper seeks an

injunction requiring the IRS to expunge, destroy, or return his Coinbase records and an

order declaring the statute that authorized the issuance of the John Doe summons, 26

U.S.C. § 7609(f), unconstitutional.

  Harper alleges that the IRS's actions constituted a seizure and search that violated

the Fourth Amendment of the United States Constitution as well as his procedural due

process rights under the Fifth Amendment.  He further claims that the IRS violated

§ 7609(f) in obtaining his records.  The IRS moves to dismiss for failure to state a claim

upon which relief can be granted.

This court has jurisdiction over Harper's claims under 28 U.S.C. § 1331 because the claims present federal questions.  After considering the parties' submissions and hearing oral argument, the court grants the motion.  Harper does not have protectable Fourth or Fifth Amendment interests in the records produced by Coinbase in response to the John Doe summons.  Even assuming that he did, the IRS's actions satisfied the Fourth Amendment's reasonableness requirement and provided him constitutionally adequate process under the Due Process Clause.  As for Harper's statutory claim, the statute at issue does not expressly or impliedly provide taxpayers with a private right to sue the IRS for purported statutory violations.  Also, a different court has already determined that the IRS satisfied the statutory requirements for a John Doe summons, and that determination is not subject to a later collateral attack.  Finally, even if the court's decision was subject to collateral attack, Harper's complaint fails to state a claim that the IRS did not satisfy the elements of § 7609(f).

## I.    <u>Applicable legal standard</u>

To defeat a Rule 12(b)(6) motion, Harper must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir. 2015).  This standard "demands that a party do more than suggest in conclusory terms the existence of questions of fact about the elements of a claim."  A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 81 (1st Cir. 2013).  In ruling on such a motion, the court accepts as true all well-pleaded facts set forth in the complaint and draws all reasonable inferences in

Harper's favor.  See Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010).  The

court may also consider judicially noticed documents, information attached to or

incorporated into the complaint, matters of public record, and documents introduced by

Harper in his objection to the motion to dismiss or concessions in that objection, without

converting the Rule 12(b)(6) motion into a motion for summary judgment.  See Lyman v.

Baker, 954 F.3d 351, 360 (1st Cir. 2020).

## II.   **Background**

**Factual background**.  The court draws the relevant factual background from

Harper's First Amended Complaint,[1] documents attached to that complaint, and other

matters of public record.  In 2013, Harper opened an account with "Coinbase," an entity

that "facilitates transactions in virtual currencies such as bitcoin."[2]  Coinbase provided

terms of agreement alongside its account, stating, in relevant part, that "Coinbase takes

reasonable precautions, as described herein, to protect your personal information from

loss, misuse, unauthorized access, disclosure, alteration, and destruction."[3]  Coinbase

warned its users, however, that it "may share [their] personal information with . . . [l]aw

enforcement, government officials, or other third parties when: [w]e are compelled to do

so by a subpoena, court order or similar legal procedure[.]"[4]

---

[1] Doc. no. 3.

[2] Id. at ¶ 18.

[3] Id. at ¶ 25.

[4] Id. at ¶ 28.

In 2013 and 2014, Harper deposited bitcoin into his Coinbase account.  Harper
primarily received the bitcoin as income from consulting work.  Harper alleges that he
declared the transactions on his 2013 and 2014 tax returns and that he declared all
"appropriate income from bitcoin payments," including capital gains tax.[5]  Harper further
alleges that he paid "appropriate capital gains on any bitcoin income for tax years 2015
and 2016."[6]  Harper began liquidating his holdings in the Coinbase account in 2015.  By
2016, Harper no longer held any bitcoin in the Coinbase account.[7]

In 2016, the IRS petitioned ex parte under 26 U.S.C. §§ 7609(f) and 7609(h)(2) in
the United States District Court for the Northern District of California for leave to serve a
"John Doe" summons on Coinbase.[8]  "A 'John Doe' summons is, in essence, a direction
to a third party to surrender information concerning taxpayers whose identity is currently
unknown to the IRS."  Tiffany Fine Arts, Inc. v. United States, 469 U.S. 310, 313, n.4

---

[5] Id. ¶¶ 30-33; see also id. ¶¶ 75, 99, 123, 140 (alleging that he "has accurately reported his
virtual currency transactions for all applicable tax years").

[6] Id. at ¶ 37.

[7] Id. at ¶ 36.  From 2016 to the date of his complaint (August 2020), Harper and his wife also
"liquidated bitcoin through" the virtual currency exchanges "Abra" and "Uphold."  Id. at ¶ 56.

[8] 2016 Petition (doc. on. 30-3).  The court can consider the Coinbase summons petition and other
court documents relating to the enforcement of that summons when deciding this motion,
without converting it to motion for summary judgment.  See Fritz v. Brown, No. 06-cv-469-PB,
2007 WL 2585083, at *1 (D.N.H. Aug. 29, 2007) (Barbadoro, J.) (Items "susceptible to judicial
notice" include "matters of public record such as documents from prior court proceedings.");
Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008) ("A court may consider matters of public
record in resolving a Rule 12(b)(6) motion to dismiss.").  Through the petition, the IRS was
trying "to determine the correct federal income tax liabilities for taxable years 2013-2015 of
United States taxpayers who have conducted transactions in a 'convertible virtual currency'" on
Coinbase.  Id.

(1985) (quoting In re Tax Liabilities of John Does, 671 F.2d 977, 978 (6th Cir. 1982)). As further detailed below, under § 7609(f), the IRS may only serve a John Doe summons after a court proceeding in which the IRS establishes that: (1) the summons relates to the investigation of a particular person or ascertainable group of persons; (2) there is a reasonable basis for believing that such persons may fail or may have failed to comply with any provision of any internal revenue law; and (3) the information sought to be obtained, and the identity of the subject persons, is not readily available from other sources. See § 7609(f)(1)-(3).

Based on a review of the petition and supporting documents, the court granted the petition, determining that the John Doe summons to Coinbase:

> relat[ed] to the investigation of an ascertainable group or class of persons, that there [wa]s a reasonable basis for believing that such group or class of persons has failed or may have failed to comply with any provision of any internal revenue laws, and that the information sought to be obtained from the examination of the records or testimony (and the identities of the persons with respect to whose liability the summons is issued) [wer]e not readily available from other sources.[9]

The IRS served the summons on Coinbase, which did not comply.

The IRS then filed a separate summons-enforcement petition against Coinbase in March 2017.[10]  Coinbase opposed the petition, and at least one John Doe successfully intervened as well.[11]  Other third parties filed amicus briefs opposing the summons,

---

[9] Order Granting Petition (doc. no. 30-5) at 1-2.

[10] 2017 Petition (doc. no. 30-6).  The same judge who oversaw the 2016 summons petition – Judge Jacqueline Scott Corley – presided over the 2017 summons-enforcement action.

[11] Motions to Intervene (doc. no. 30-8); see also doc. no. 3 at ¶¶ 41, 48.

including Harper, who signed an amicus brief filed by the Competitive Enterprise

Institute.[12]  During the enforcement proceeding, the IRS agreed to narrow the scope of its

summons.[13]  Ultimately, after oral argument, the court granted the petition in part and

denied it in part and ordered Coinbase to comply with a narrowed version of the

summons.  See United States v. Coinbase, Inc., No. 3:17-cv-01431, 2017 WL 5890052,

at *1 (N.D. Cal. Nov. 28, 2017) (finding that the narrowed IRS summons "serves the

IRS's legitimate purpose of investigating Coinbase account holders who may not have

paid federal taxes on their virtual currency profits").  The narrowed summons sought

documents and various categories of information from Coinbase "accounts with at least

the equivalent of $20,000 in any one transaction type (buy, sell, send, or receive) in any

one year during the 2013 to 2015 period."  Id. at *8-*9.[14]

Coinbase produced account holder documents and information to the IRS in

response to the narrowed summons, including information about Harper's Coinbase

account from 2013 to 2015.  Following its receipt of Harper's Coinbase account

information, the IRS sent Harper a letter in 2019 entitled "Reporting Virtual Currency

Transactions."[15]  As relevant here, the IRS told Harper the following:

---

[12] Competitive Enterprise Institute Amicus Brief (doc. no. 30-10); see also doc. no. 3 at ¶ 51.

[13] Notice of Narrowed Summons (doc. no. 30-7); see also doc. no. 3 at ¶ 41.

[14] See also doc. no. 3 at ¶ 54.  No party appealed the summons issuance or summons enforcement orders.  Id. at ¶ 55.

[15] Doc. no. 3 at ¶ 67; see also doc. 3-6 at 1.  Harper also alleges, upon information and belief, that IRS agents "issued an informal demand" to Abra and Coinbase for his financial records with those entities.  He believes that Abra or Coinbase complied with that informal demand, further prompting the 2019 letter.  See id. at ¶ 76.  The IRS has subsequently stated in sworn

> We have information that you have or had one or more accounts containing
> virtual currency but may not have properly reported your transactions
> involving virtual currency, which include cryptocurrency and non-crypto
> virtual currencies.[16]

The IRS stated that if Harper had failed to properly report his "virtual currency

transactions" then he "may be subject to future civil and criminal enforcement activity."[17]

**Procedural history**.  Harper filed suit in August 2020 against the IRS, its then

Commissioner in his official capacity, and ten "John Doe" IRS agents.  Harper's

complaint contains three counts: (1) violation of the Fourth Amendment; (2) violation of

the Fifth Amendment; and (3) declaratory judgment/violation of 26 U.S.C. § 7609(f).  As

relief for the alleged Constitutional violations in Counts 1 and 2, Harper seeks money

damages from the defendants, as well as injunctive and declaratory relief.  Specifically,

Harper requests an order: (i) declaring § 7602, et seq., unconstitutional as applied to him

under the Fourth and Fifth Amendments; (ii) requiring the IRS to expunge Harper's

financial records; and (iii) prohibiting the IRS and John Does 1 through 10 from seizing

financial records from "virtual currency exchanges" under § 7602, et seq., in the future.

In Count 3, Harper requests a declaratory judgment that the IRS is violating § 7609(f)

---

interrogatory answers that it sent the 2019 letter to Harper based only on its review of documents
and information produced by Coinbase in response to the narrowed John Doe summons, and not
based on receipt of documents or information from Abra, Coinbase, or Uphold in response to an
informal IRS demand.  See IRS Interrogatory Answers (doc. no. 30-11) at 5.  The court does not
rely on these interrogatory answers for purposes of resolving the pending motion to dismiss.  It
simply notes – and the parties agree – that Harper's claims now only relate to the judicially
issued and enforced Coinbase summons.

[16] Doc. no 3 at ¶ 68; see also doc. 3-6 at 1.

[17] Doc. no. 3 at ¶ 69; see also doc. 3-6 at 1.

and, like Counts 1 and 2, requiring the IRS to expunge[18] his financial records and prohibiting the IRS and John Does 1 through 10 from seizing similar financial records through § 7609(f) in the future.

The IRS initially moved to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief could be granted.  The court (DiClerico, J.) granted the motion and dismissed (for varying reasons) all of Harper's claims for damages and declaratory and injunctive relief.[19]  Harper appealed the dismissal of his injunctive and declaratory relief claims, but not his damages claim.  A First Circuit Court of Appeals panel reversed, finding that the Anti-Injunction Act "does not bar [Harper's] suit and the district court's judgment of dismissal under Federal Rule of Civil Procedure 12(b)(1) must be vacated."  Harper v. Rettig, 46 F.4th 1, 9 (1st Cir. 2022).  On remand, the case was assigned to the undersigned judge after Judge DiClerico passed away in April 2022.  The parties agree that only Harper's claims for declaratory and injunctive relief remain.

### III.   **Analysis**

Harper first contends that the IRS's acquisition of his Coinbase records through a John Doe summons was an unreasonable seizure and search of his private papers (in which he held both property and privacy interests) that violated the Fourth Amendment.

---

[18] At its core, Harper's request for declaratory or injunctive relief seeks to compel the IRS to return or destroy the records it received from Coinbase relating to his account.

[19] See Order (doc. no. 17) (DiClerico, J.).

He next contends that because he possesses both property and liberty interests in his Coinbase records, the Due Process Clause of the Fifth Amendment afforded him notice and an opportunity to be heard before the IRS attempted to deprive him of those interests. Finally, Harper argues that § 7609(f) is unconstitutional as applied to him, and even if not unconstitutional, the IRS violated the statute by failing to satisfy several prerequisites for issuance of a John Doe summons. The court addresses the IRS's challenges to each claim in turn, beginning with the Fourth Amendment claim.

### A.  Fourth Amendment claim

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. The IRS raises two primary challenges to Harper's Fourth Amendment claim. It first argues that Harper had no protectable Fourth Amendment interest in the Coinbase records. It also argues that even if the IRS's acquisition of the Coinbase records constituted a Fourth Amendment search or seizure, its actions were reasonable and probable cause is not required to issue a John Doe summons. The court agrees with the IRS on both points.

### 1.  Protectable Fourth Amendment interest

Courts have utilized a property-based or "common-law trespass" approach as well as a privacy-based approach to determining whether Fourth Amendment interests are

implicated.  Carpenter v. United States, 138 S. Ct. 2206, 2213 (2018) (citations omitted).

For example, "[w]hen 'the Government obtains information by physically intruding' on

persons, houses, papers, or effects, 'a 'search' within the original meaning of the Fourth

Amendment' has 'undoubtedly occurred.'"  Florida v. Jardines, 569 U.S. 1, 5 (2013)

(quoting United States v. Jones, 565 U.S. 400, 406, n.3 (2012)).  In addition, a "Fourth

Amendment search [also] occurs when the government violates a subjective expectation

of privacy that society recognizes as reasonable."  Kyllo v. United States, 533 U.S. 27, 33

(2001).  Whether Harper's complaint states a claim for violating the Fourth Amendment

therefore first turns on whether he has a protectable privacy or property interest in the

Coinbase records.

    **Privacy interest**.  The Supreme Court of the United States has long held that "a

person has no legitimate expectation of privacy in information he voluntarily turns over

to third parties."  Smith v. Maryland, 442 U.S. 735, 743-44 (1979).  Smith involved

information conveyed to a telephone company, but courts have applied the third-party

doctrine in other contexts, most notably to bank records and customer information held

by financial institutions.  See United States v. Miller, 425 U.S. 435, 440, 444 (1976)

(finding a depositor had "no Fourth Amendment interests" in a bank's records of his

accounts or transactions).  In Miller – a case involving subpoenas to banks for

investigating tax evasion by bank customers – the Court found that the customer's

canceled checks, deposit slips, and monthly statements were "not confidential

communications but negotiable instruments to be used in commercial transactions" and

contained information "exposed to [bank] employees in the ordinary course of business."

Id. at 442.  Thus, the customer had "take[n] the risk, in revealing his affairs to another, that the information [would] be conveyed by that person to the Government."  Id. at 443.

In Carpenter, the Court declined to apply the third-party doctrine to "cell-site location information" maintained by wireless telephone carriers.  Prosecutors obtained court orders under the Stored Communications Act to collect the CSLI relating to several robbery suspects from wireless providers.  The question before the Court was whether the CSLI was entitled to Fourth Amendment protection and if so, whether the government unlawfully searched the data without a warrant supported by probable cause.  The Supreme Court answered both questions in the affirmative.

The Court reasoned that, like GPS information, but unlike "telephone numbers and bank records," the "time-stamped [CSLI] data provides an intimate window into a person's life, revealing not only his particular movements, but also his 'familial, political, professional, religious, and sexual associations.'"  Id. (quoting Jones, 565 U.S. at 415 (Sotomayor, J., concurring)).  Thus, the Court held that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI."  Id. at 2217.

Harper asks this court to find, as in Carpenter, that account information held by a virtual currency exchange provides an intimate window into a person's life and is thus protected under the Fourth Amendment.  The court declines to do so.  Harper's "Coinbase records are more akin to the bank records in Miller than the CSLI in Carpenter."  United States v. Gratkowski, 964 F.3d 307, 312 (5th Cir. 2020).  As the Fifth Circuit Court of Appeals aptly put it,

11

> Coinbase is a financial institution, a virtual currency exchange, that provides Bitcoin users with a method for transferring Bitcoin. The main difference between Coinbase and traditional banks, which were at issue in Miller, is that Coinbase deals with virtual currency while traditional banks deal with physical currency. But both are subject to the Bank Secrecy Act as regulated financial institutions. Both keep records of customer identities and currency transactions.

Id. (citations omitted).  The Carpenter Court was concerned about the surveillance aspect of CSLI; the data provided "a detailed chronicle of a person's physical presence compiled every day, every moment, over several years," which "implicate[d] privacy concerns far beyond those considered in Smith and Miller."  138 S. Ct. at 2220.  Coinbase and other virtual currency exchange records do not reveal similarly intimate details about a user's life.  The records instead provide information that a person uses a particular exchange and "information about a person's virtual currency transactions."  Gratkowski, 964 F.3d at 312.  Thus, both qualitatively and quantitatively, Harper's virtual currency exchange account information is closely analogous to the bank records in Miller.[20]

The CSLI in Carpenter also lacked the voluntary disclosure quality of bank records and other information normally subject to the third-party doctrine.  "[T]ransacting [b]itcoin through Coinbase or other virtual currency exchange institutions requires an 'affirmative act on the part of the user.'"  Gratkowski, 964 F.3d at 312 (quoting Carpenter, 138 S. Ct. at 2220).  Indeed, to open a bank account – or a Coinbase account –

---

[20] Harper does not explain what intimate life details his Coinbase records reveal.  Even if the records incidentally showed his occasional location information (and Harper does not argue that they did), Carpenter would not require this court to recognize a privacy interest in the records.  See Carpenter, 138 S. Ct. at 2220 ("Nor do we address other business records that might incidentally reveal location information.").

a user must provide his personal information to the third party.  And to use the bank's or

Coinbase's services, a user must provide additional information to the third party.  In the

case of CSLI, however, the location information was "not truly 'shared' as one normally

understands the term."  Carpenter, 138 S. Ct. at 2220.  Instead, the wireless carrier

collected it (perhaps without the user even realizing it) as soon as the user turned his

phone on.  Id.  By electing to buy, sell, and store virtual currency through Coinbase, and

providing personal information to Coinbase to utilize its "technical expertise," users like

Harper "sacrifice some privacy" and thus lack a protectable "privacy interest in the

records of [their] [b]itcoin transactions on Coinbase" or other virtual currency exchanges.

Id. at 312-13.[21]

Harper's "contract" with Coinbase does not compel a different result.  The

Supreme Court "has held repeatedly that the Fourth Amendment does not prohibit" the

government from obtaining information revealed to third parties, "even if the information

is revealed on the assumption that it will be used only for a limited purpose and the

confidence placed in the third party will not be betrayed."  Miller, 425 U.S. at 443 (citing

cases).  And Coinbase warned Harper in its privacy policy that it may share his personal

information with "[l]aw enforcement, government officials, or other third parties" when

---

[21] The nature of bitcoin and other virtual currencies allows individuals to buy, sell, or transfer the
bitcoin directly to others without third party intervention.  Harper chose to use a government-
regulated, third party to execute these types of transactions.

"compelled to do so by subpoena, court order or similar legal procedure," further

reducing any privacy interest he may have held in the records.[22]

Moreover, no court has adopted Harper's broad reading of Carpenter in the

context of virtual currency exchange records.  Several courts have rejected it.  See, e.g.,

Gratkowski, 964 F.3d at 311-12 (holding that Coinbase user had no reasonable

expectation of privacy in Coinbase records of his bitcoin transactions and in information

held in the bitcoin blockchain); Zietzke v. United States, 426 F. Supp. 3d 758, 768-69

(W.D. Wash. 2019) ("Because Bitstamp's records do not implicate the privacy concerns

at issue in Carpenter, Petitioner lacks a legitimate expectation of privacy in those records.

Consequently, the IRS's request for those records does not infringe upon Petitioner's

Fourth Amendment rights."); Zietzke v. United States, No. 19-cv-03761, 2020 WL

264394, at *13 (N.D. Cal. Jan. 17, 2020), report and recommendation adopted, 2020 WL

6585882 (N.D. Cal. Nov. 10, 2020) ("Carpenter is not applicable here because

Carpenter's holding is narrowly limited to facts different from this case, because location

data is not at issue here, and because it is undisputed that Petitioner voluntarily exposed

the requested data to Coinbase.").

Of course, the court cannot grant Harper's request that it overrule Miller.  See Obj.

at 23.  Miller and the third-party doctrine remain good law even after Carpenter, and this

court is bound to apply them.  Carpenter, 138 S. Ct. at 2220 (finding that the Court's

---

[22] Doc. no. 3 at ¶ 28.

holding did "not disturb the application of Smith and Miller" and noting that "the third-party doctrine [still] applies to telephone numbers and bank records").

**Property interest**.  Citing Boyd v. United States, 116 U.S. 616 (1886), Harper also argues that he has a property interest in the Coinbase records because those records constitute his personal or "private papers."  The court is not persuaded.  In Miller, the Court distinguished Boyd and found that a bank customer could "assert neither ownership nor possession" of his account records.  425 U.S. at 440.  The "documents subpoenaed" were not the customer's "private papers," but instead were "the business records of the banks."  Id.  Similarly, in Donaldson v. United States, the Court found that a taxpayer had "no proprietary interest of any kind" in his former employer's "routine business records."  400 U.S. 517, 531 (1971).[23]  As discussed above, the records the IRS obtained from Coinbase are analogous to a customer's account records with a bank.  Thus, Miller's holding that a bank customer has neither a property interest nor a reasonable expectation of privacy in the bank's records for his account applies with equal force to Harper's Coinbase account records.

While the initial summons to Coinbase sought copies of third-party agreements, passports and drivers' licenses, bitcoin (or other virtual currency) wallet addresses, public keys for all accounts/wallets/vaults, and correspondence between Coinbase and users and third parties with access to the accounts, the court-enforced summons was far narrower.

---

[23] Donaldson, which addressed a taxpayer's right to intervene in a third-party IRS summons proceeding, led to Congress' passage of § 7609(b).

The court ultimately ordered Coinbase to produce, for a limited group of account holders, the following information to the IRS: (1) the taxpayer ID number; (2) name; (3) birth date; (4) address; (5) "records of account activity including transaction logs or other records identifying the date, amount, and type of transaction (purchase/sale/exchange), the post transaction balance, and the names of counterparties to the transaction"; and (6) all periodic statements of account or invoices or equivalent documents. Coinbase, 2017 WL 5890052, at *8-9.

From a property rights perspective, this information is "no different from the many other kinds of business records the Government has a lawful right to obtain by compulsory process," because the account holder does "not own, possess, control, or use the records." Carpenter, 138 S. Ct. at 2224 (Kennedy, J., dissenting); see also id. at 2235 ("By obtaining the [CSLI], the Government did not search Carpenter's property. He did not create the records, he does not maintain them, he cannot control them, and he cannot destroy them.") (Thomas, J., dissenting). While Harper may have had a proprietary interest in the bitcoin itself, the IRS did not seek to dispossess him of that property. Thus, the IRS did not seize or search anything over which Harper could assert ownership or control.[24] The court concludes that Harper did not have a protectable Fourth

---

[24] Harper quotes from Justice Gorsuch's solo dissent in Carpenter to bolster his criticism of Miller and the third-party doctrine. Doc. no. 32 at 19. He also relies on that dissent to advance a "bailment" theory of property rights to support his argument that he holds a property interest in the Coinbase records. Under this theory, if one entrusts his papers and effects to a third party, that third party "owes a legal duty to keep the item safe." Carpenter, 138 S. Ct. at 2268 (Gorsuch, J., dissenting). If the third party "uses the item in a different way than it's supposed to, or against the bailor's instructions," the third party is "liable for conversion." Id. at 2269. One of the problems with this theory as applied to Harper's Coinbase records (beyond the fact that it comes from a non-controlling dissenting opinion), is that it starts with the premise that a

16

Amendment interest in the account records and information produced by Coinbase in response to the IRS summons.

### 2.     Reasonableness

The IRS also argues that, even if the Coinbase summons implicated Harper's Fourth Amendment rights, its seizure and search of the records were reasonable and thus did not violate the Fourth Amendment.  "The fundamental inquiry under the Fourth Amendment is whether a particular search or search procedure is 'reasonable' in the circumstances."  McCabe v. Life-Line Ambulance Serv., Inc., 77 F.3d 540, 544 (1st Cir. 1996) (quoting Cady v. Dombrowski, 413 U.S. 433, 439-40 (1973)).  "Reasonableness," in turn, depends on "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  Id. at 546-47 (quoting O'Connor v. Ortega, 480 U.S. 709, 719 (1987)).  A warrantless search is normally "reasonable only if it falls within a specific exception to the warrant requirement."  Carpenter, 138 S. Ct. at 2221.

The IRS does not claim that its third-party summons procedure is an exception to the warrant requirement per se.  Instead, it argues that so long as it complies with the requirements of United States v. Powell in obtaining and enforcing the summons, the Fourth Amendment reasonableness standard is met.  In other words, the Powell

_____

person has given his "papers and effects" to a third party.  Here, however, as the court has already found, Harper's Coinbase account information is not considered his papers and effects for purposes of the Fourth Amendment.  The bailment theory might work if the IRS attempted to seize Harper's bitcoin, which he entrusted to Coinbase to secure, without a warrant.  But that did not occur.

requirements, while not an "exception" to the warrant requirement, exempt the IRS from making any probable cause showing that would otherwise be required to support a warrant.  See United States v. Powell, 379 U.S. 48, 57 (1964) (holding that "the Commissioner need not meet any standard of probable cause to obtain enforcement of his summons"); see also Presley v. United States, 895 F.3d 1284, 1293 (11th Cir. 2018) (recognizing that a "basic distinction between administrative summonses of business records and actual searches of things in which citizens hold a reasonable expectation of privacy means a separate Fourth Amendment standard applies to each circumstance") (quoting Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 204 (1946)).

The case law supports the IRS's argument.  For example, in United States v. Allee, the First Circuit Court of Appeals found – albeit in dicta – that the "Fourth Amendment is not violated as long as the IRS has complied with the requirements of United States v. Powell[.]"  888 F.2d 208, 213 n.3 (1st Cir. 1989); see also Standing Akimbo, LLC v. United States, 955 F.3d 1146, 1166 (10th Cir. 2020) ("The IRS has met the Powell factors establishing the Fourth Amendment reasonableness of the Standing Akimbo summons. The Taxpayers have failed to rebut this showing, so the IRS does not need probable cause."); Presley, 895 F.3d at 1293 ("In other words, when it comes to the IRS's issuance of a summons, compliance with the Powell factors satisfies the Fourth Amendment's reasonableness requirement."); United States v. Silkman, 543 F.2d 1218, 1220 (8th Cir. 1976) ("The summons in question is not a general warrant prohibited by the Fourth Amendment, but instead only seeks those records needed to establish his tax liabilities for 1973 and 1974.  It has long been settled that the enforcement of a validly

**18**

drawn Internal Revenue summons does not violate the Fourth Amendment.") (citations omitted); Harris v. U.S.I.R.S., 758 F.2d 456, 457 (9th Cir. 1985) ("Such summonses issued to a third party recordkeeper do not violate the Fourth Amendment.").

Powell resolved a circuit split "on the standards the [IRS] must meet to obtain judicial enforcement of its" summonses under § 7602 and § 7604.  379 U.S. at 50-51. Thus, the Powell requirements and the statute itself provide, to the extent required, the necessary Fourth Amendment protections to taxpayers subject to IRS summons proceedings.  As the Supreme Court recognized, § 7601 gives the IRS "a broad mandate to investigate and audit persons who may be liable for taxes" and § 7602 "provides the power to examine any books, papers, records, or other data which may be relevant . . . (and to summon) any person having possession . . . of books of account . . . relevant or material to such inquiry."  United States v. Bisceglia, 420 U.S. 141, 145-46 (1975) (quotations omitted).  The IRS's statutory investigative authority is, "[o]f necessity," "not limited to situations in which there is probable cause, in the traditional sense, to believe that a violation of the tax laws exists."  Id. at 146.  To ensure that the IRS does not abuse this power, however, "[s]ubstantial protection is afforded by the provision that an Internal Revenue Service summons can be enforced only by the courts."  Id. (citing 26 U.S.C. § 7604(b)).  In the context of John Doe summonses, the § 7609(f) similarly protects taxpayer rights through the "requirement of judicial preapproval," which "permits the district court to act as a surrogate for the unnamed taxpayer and to 'exert[] a restraining influence on the IRS.'"  United States v. Gertner, 65 F.3d 963, 971 (1st Cir. 1995) (quoting Tiffany, 469 U.S. at 321).  "What § 7609(f) does is to provide some guarantee

19

that the information that the IRS seeks through a summons is relevant to a legitimate

investigation, albeit that of an unknown taxpayer." Tiffany, 469 U.S. at 321.

Judge Corley has already found that the IRS satisfied both § 7609(f) and the

Powell requirements in obtaining and enforcing the John Doe Coinbase summons. See

doc. no. 30-5; Coinbase, 2017 WL 5890052, at *7. This court will not disturb those

findings. Accordingly, even if the court found that Harper had a protectable Fourth

Amendment interest in his account records (a finding which the court does not make), the

IRS's compliance with § 7609(f) and Powell satisfies the Fourth Amendment's

reasonableness requirement. The IRS's motion to dismiss Harper's Fourth Amendment

claim is granted.

### B.    Fifth Amendment Procedural Due Process claim

 "Procedural due process guarantees that 'before a significant deprivation of

liberty or property takes place at the state's hands, the affected individual must be

forewarned and afforded an opportunity to be heard 'at a meaningful time and in a

meaningful manner.'" Perrier-Bilbo v. United States, 954 F.3d 413, 433 (1st Cir. 2020)

(quoting González-Droz v. González-Colón, 660 F.3d 1, 13 (1st Cir. 2011)); see also

Mathews v. Eldridge, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due

process is the opportunity to be heard at a meaningful time and in a meaningful

manner."). "To state a valid procedural due process claim, [Harper] must (1) identify a

protected liberty or property interest[;] and (2) allege that the defendants . . . deprived

[him] of that interest without constitutionally adequate process." Air Sunshine, Inc. v. Carl, 663 F.3d 27, 34 (1st Cir. 2011) (cleaned up).

The IRS argues that Harper has failed to identify a protected liberty or property interest. It further argues that even if he had a protected liberty or property interest in the Coinbase records, the IRS used constitutionally adequate process to deprive him of those interests. The court agrees with the IRS.

### 1.   Identifiable property or liberty interest

For the reasons discussed above, Harper does not have a property interest in the records and information produced by Coinbase in response to the IRS's summons. See supra, § III, A., 1; see also Miller, 425 U.S. at 440; Donaldson, 400 U.S. at 531; United States v. Schutterle, 586 F.2d 1201, 1204-05 (8th Cir. 1978) ("Absent a protectible liberty or property interest, the protections of procedural due process do not attach. The Schutterles clearly have no property interest in the business records of the bank.").

Harper nevertheless argues that he has a "liberty interest in maintaining the privacy of his financial records"[25] that is protectable under the Fifth Amendment. This argument falters for several reasons. First, it mischaracterizes the interest at stake. The financial records belong to Coinbase, not Harper. Second, it finds no support in precedent. No court has recognized a protectable liberty interest in maintaining the privacy of financial records held and created by a third-party financial institution. Third, "privacy" in the context of liberty interests relates to the "most personal and deep-rooted

---

[25] Doc. no. 32 at 14.

expectations of privacy," and not necessarily account records maintained by regulated

financial institutions.  Payne v. Taslimi, 998 F.3d 648, 658 (4th Cir. 2021).

"The constitutional right to privacy does extend to . . . 'the individual interest in

avoiding disclosure of personal matters.'"  Walls v. City of Petersburg, 895 F.2d 188, 192

(4th Cir. 1990) (citing Whalen v. Roe, 429 U.S. 589, 599-600 (1977)). [26]  But that "right

to privacy" protects "only information with respect to which the individual has a

reasonable expectation of privacy."  Id. at 193.  As discussed above, Harper did not have

a reasonable expectation of privacy in Coinbase's records of his account and accordingly

does not have a protectable liberty interest for purposes of the Due Process Clause of the

Fifth Amendment.

> **2.    Deprivation of interest without constitutionally adequate process**

Even if Harper held a liberty or property interest in the Coinbase records, the

summons procedure utilized here adequately protected those interests.  "No rigid

taxonomy exists for evaluating the adequacy of state procedures in a given case; rather,

'due process is flexible and calls for such procedural protections as the particular

---

[26] Courts, including the First Circuit Court of Appeals, "look to the Supreme Court's
interpretation of 'liberty' in the Fourteenth Amendment for guidance" in determining whether a
protectable liberty interest exists for procedural due process purposes.  Perrier-Bilbo, 954 F.3d at
434.  Liberty in the Fourteenth Amendment context refers to two types of interests: "one is the
individual interest in avoiding disclosure of personal matters, and another is the interest in
independence in making certain kinds of important decisions."  Whalen, 429 U.S. at 599–600.
Personal matters include matters relating to marriage, Loving v. Virginia, 388 U.S. 1 (1967);
procreation, Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535 (1942); contraception,
Eisenstadt v. Baird, 405 U.S. 438 (1972); family relationships, Prince v. Massachusetts, 321 U.S.
158 (1944); and child rearing and education, Pierce v. Society of Sisters, 268 U.S. 510 (1925).
One's interest in avoiding disclosure of account records maintained by third party financial
institutions does not fit within these categories of "personal matters."

situation demands.'" Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 13 (1st Cir. 2011)

(quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).  "In order to determine both

when a pre-deprivation hearing is compulsory and what process is due, an inquiring court

must balance a myriad of factors, including the private and public interests involved, the

risk of an erroneous deprivation inherent in the procedures employed by the state, and the

likely benefit that might accrue from additional procedural protections." Id. (citing

Mathews, 424 U.S. at 335).

 Harper contends that he received neither notice nor an opportunity to be heard at a

meaningful time and manner before being deprived of his alleged interests in the

Coinbase records.  The court disagrees.  "[D]ue process does not invariably require a

hearing before the state can interfere with a protected property interest." Gonzalez-Droz,

660 F.3d at 14.  Instead, "some form of hearing" must be provided "before an individual

is finally deprived of [the] interest." Mathews, 424 U.S. at 333 (emphasis supplied).  But

while the opportunity to be heard before the seizure is usually expected, "this is not

always feasible." Herwins v. City of Revere, 163 F.3d 15, 18 (1st Cir. 1998).  Here,

because the IRS does not know the identity of John Doe summons recipients prior to

obtaining a court order issuing the summons and the process for obtaining the summons

is necessarily ex parte, providing notice to Harper would not have been feasible.

 Moreover, the reviewing court provides the necessary protection to the unnamed

taxpayer by requiring the IRS to satisfy the requirements of § 7609(f) and obtain a court

order before serving the summons.  See Gertner, 65 F.3d at 971 (the district court "act[s]

as a surrogate for the unnamed taxpayer . . . to 'exert[] a restraining influence on the

IRS"); United States v. Samuels, Kramer and Co., 712 F.2d 1342, 1346 (9th Cir. 1983) ("Section 7609's criteria thus constitute a procedural safeguard which Congress created to provide extra protection to unknown target taxpayers to whom the IRS cannot give notice.").

Further, meaningful opportunities to contest the summons arise after its issuance. For example, once the summons issued here, Coinbase refused to comply and made the IRS satisfy additional procedural hurdles in an enforcement proceeding.  See Bisceglia, 420 U.S. at 146 ("[s]ubstantial protection is afforded" to taxpayers when "a summons can be enforced only by the courts").  Harper participated in the enforcement proceeding through the amicus brief he filed.  And he could have moved to intervene in the enforcement proceeding to obtain party status, and thus attain an even more meaningful opportunity to be heard.  He did not do so.

Lastly, the IRS's interests in swift receipt and enforcement of investigative summonses, as well as its interest in rooting out citizens who do not pay their obligated share of taxes, outweigh any benefit that might accrue from additional procedural protections.

Harper acknowledges that the IRS John Doe summons procedure is necessarily ex parte and it would have been impossible to provide him notice prior to issuing the original summons.  He argues instead that the IRS should have followed a different procedure.  Specifically, Harper asserts that the IRS should have first sought a John Doe summons to Coinbase for account holder names only.  Presuming it obtained his name from this summons, Harper then expected the IRS to send summonses to the individual

24

account holders with notice, providing them an opportunity to contest the summons. Harper believes that the IRS could have utilized this optional procedure to get the information it wanted but simultaneously preserve his due process rights. Whether to utilize Harper's proposed procedure is discretionary for the IRS, and "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005). Due process therefore does not compel the IRS to undertake the purely optional procedure of Harper's choice.

### C.    Statutory claim

In Count 3, Harper seeks a declaratory judgment that the IRS violated 26 U.S.C. § 7609(f) in obtaining his account information from Coinbase and an injunction requiring the IRS to expunge his records. The IRS lodges several grounds for dismissal. First, it argues that Harper lacks standing to bring a claim for violation of § 7609(f) because the statute contains no private right to sue. Second, it contends that even if Harper had standing, a different court has already determined that the IRS satisfied the statute in obtaining the Coinbase records and that determination is not subject to collateral attack. Third, it asserts that even if the prior orders were subject to a later collateral challenge, the IRS fully met its obligations under the statute. Harper contests each argument and further asserts that he has standing to challenge the IRS's actions under the Administrative Procedure Act.[27] The court agrees with the IRS.

---

[27] Harper's counsel argued in passing at oral argument that because the IRS did not initially move to dismiss his statutory claim under Rule 12(b)(6), that portion of its current motion is foreclosed by Rule 12(g). Harper's counsel later seemed to concede that the First Circuit Court of Appeals' opinion and remand order allows this court to consider any Rule 12(b)(6) arguments

### 1.     Standing

Harper concedes that the text of § 7609(f) confers no private right on a taxpayer to sue the IRS for damages and injunctive relief arising out of an alleged violation of the statute.  He instead contends that because he is within the "zone of interests" that the statute is intended to protect, he has an implicit right to sue under § 7609(f).  He also argues that the APA allows him to challenge the IRS's alleged compliance with § 7609(f).  Neither argument persuades the court.

**Implied right of action**.  Harper cites Vander Luitgaren v. Sun Life Assur. Co. of Canada, 765 F.3d 59 (1st Cir. 2014) and Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014) as supporting his "zone of interests" theory of statutory standing.  The statutes at issue in those cases, however, contained express authorization for some person or group of persons to sue.  See, e.g., Vander Luitgaren, 765 F.3d at 62 (The statutory standing inquiry "turns on whether the appellant "falls within the class of plaintiffs whom Congress has authorized to sue under.") (emphasis added); Lexmark Int'l, 572 U.S. at 127 ("Whether a plaintiff comes within [a statute's] 'zone of interests' is an issue that requires [courts] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim.") (emphasis added).  The question in those cases was whether

---

on remand, regardless of whether the IRS raised them initially.  To be clear, the Court of Appeals' mandate to this court is to "consider, in the first instance, whether [Harper] has stated a claim on which relief can be granted."  Harper, 46 F.4th at 9.  That includes consideration of the IRS's arguments for dismissal of Harper's statutory claim.

those groups included the plaintiffs.  Section 7609(f) contains no express private right of action, so those cases are therefore inapposite to Harper's theory of statutory standing.

Harper nonetheless seeks to expand the concept of statutory standing to confer a private right of action on anyone the statute is arguably designed to protect, even when (as here) the statute is devoid of a legislatively conferred cause of action.  Neither Lexmark nor Vander Luitgaren compel this result.  Harper has not cited, and the court's research has not uncovered, any decision where a court allowed a taxpayer to bring a separate, later claim (in a different court) for violation of § 7609(f) after the reviewing court had already allowed, issued, and enforced the summons.

Harper also does not cite cases or develop arguments under the more conventional implied right of action rubric.  Under that doctrine, courts have "held that '[t]he question whether Congress . . . intended to create a private right of action [is] definitively answered in the negative' where [as here] a 'statute by its terms grants no private rights to any identifiable class.'"  Gonzaga Univ. v. Doe, 536 U.S. 273, 283-84 (2002) (quoting Touche Ross & Co. v. Redington, 442 U.S. 560, 576 (1979)).  "[F]or a statute to create such private rights, its text must be 'phrased in terms of the persons benefitted.'"  Id. at 284 (quoting Cannon v. University of Chicago, 441 U.S. 677, 692, n.13 (1979)).

Congress phrased § 7609(f) not in terms of the persons benefitted, but with an eye towards proper enforcement by the IRS.  Section 7609(f) is thus "regulatory in nature — and private rights of action should rarely be implied where a statute's core function is to furnish directives to a federal agency."  Bonano v. E. Caribbean Airline Corp., 365 F.3d 81, 85 (1st Cir. 2004).  And "even where a statute is phrased in such explicit rights-

creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent 'to create not just a private <u>right</u> but also a private <u>remedy</u>.'" Id. (quoting Alexander v. Sandoval, 532 U.S. 275, 286 (2001)) (emphases in original). Section 7609(f) creates neither a right nor a remedy for a taxpayer.

Harper is correct that courts have recognized that "Congress passed section 7609(f) specifically to protect the civil rights, including the privacy rights, of taxpayers subjected to the IRS's aggressive use of third-party summonses." Gertner, 65 F.3d at 971. But the mechanism for protecting those taxpayer rights is not a right to sue or a separate remedy, but the "requirement of judicial preapproval." Id. at 972. Not only is judicial preapproval an "important component of the statutory scheme," it "permits the district court to act as a surrogate for the unnamed taxpayer and to 'exert[] a restraining influence on the IRS.'" Id. (quoting Tiffany, 469 U.S. at 321). "What § 7609(f) does is to provide some guarantee that the information that the IRS seeks through a summons is relevant to a legitimate investigation, albeit that of an unknown taxpayer." Tiffany, 469 U.S. at 321. What it does not do is impliedly afford taxpayers the right to sue the IRS for allegedly violating the statute after a different court has already found otherwise. Harper's complaint thus fails to state a claim for violation of § 7609(f) because the statute provides him no private right to sue.

**APA**. Harper also argues that he can challenge the IRS's compliance with the statute under the APA because the IRS's act of pursuing the summons is a "final agency action." 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial

review" under the APA).  The IRS responds that Harper is not challenging agency action, but rather the district court's decisions in the Coinbase summons matters.  It further argues that the Coinbase summons proceedings were an "adequate remedy in court," precluding review under the APA.  5 U.S.C. § 704.  And it contends that review is prohibited under the APA because § 7609(f) "impliedly forbids the relief which is sought."  5 U.S.C. § 702(2).  The IRS's arguments have superficial appeal, but because the court assumes, without deciding, that Harper has standing to challenge the IRS's compliance with § 7609(f) in this lawsuit (and, as discussed below, finds for the IRS on the merits), it need not decide the APA question.[28]

### 2.    Collateral challenge to prior orders

Assuming arguendo that Harper has an implied right of action under § 7609(f) or a right to assert a claim for alleged violations of § 7609(f) under the APA, he has failed to show that prior district court orders issuing and enforcing John Doe summonses are subject to subsequent collateral challenges in a different district court.  Harper asserts that Judge Corley's rulings in the Coinbase summons cases have no preclusive effect on this suit.  He further asserts that he was not required to challenge those rulings in the same court that issued and enforced the summons.

The IRS counters that it is not raising a collateral estoppel argument.  It simply contends, correctly, that unappealed § 7609(f) determinations are not subject to later challenges as a matter of procedure.  See, e.g., United States v. Allee, 888 F.2d 208, 211

---

[28] Harper's complaint does not cite or otherwise rely on the APA.

(1st Cir. 1989) ("When, as in this case, an enforcement order is unappealed from, a contempt proceeding (as well as any subsequent appeal from a finding of contempt), begins with acceptance of the validity of the prior enforcement order.  The earlier order may not be impeached, avoided or attacked in the later proceedings and no relief can be sought against its command.") (emphasis added); Tax Liabilities of: John Does, All Unknown Emps. of Boundary Waters Rest. v. United States, 866 F.2d 1015, 1018 (8th Cir. 1989) ("Applying that holding to the present case, the district court's determination that the summons relates to the investigation of a particular ascertainable group of persons, 26 U.S.C. § 7609(f)(1), was not open to collateral attack[.]"); accord Samuels, Kramer & Co., 712 F.2d at 1346 ("But the three factual determinations that a district court must make under section 7609(f) before issuing its ex parte authorization of a John Doe summons may not be challenged. There is, therefore, no reason why these factual determinations should be subject to de novo review at an enforcement hearing.").[29]

Judgment entered in the Coinbase summons matters, and neither Harper nor any party, intervenor, or amici appealed the court's orders, moved for relief from judgment, or moved to re-open those matters.  As a result, Harper has no additional procedural

---

[29] The one decision cited by Harper in support of his argument that ex parte § 7609(f) determinations are subject to later collateral challenges – United States v. Brigham Young University – is readily distinguishable because there, the Tenth Circuit Court of Appeals merely held that a summons recipient could challenge a § 7609(f) determination in a later enforcement proceeding relating to the same summons.  679 F.2d 1345, 1348 (10th Cir. 1982).  Here, however, Harper seeks to challenge Judge Corley's § 7609(f) determination in an entirely separate proceeding, well after resolution of an enforcement proceeding.  Moreover, the Supreme Court vacated the Tenth Circuit Court of Appeals' decision.  See Brigham Young Univ. v. United States, 459 U.S. 1095 (1983).

avenue to argue that Judge Corley's findings under § 7609(f) and Powell were incorrect. Allee, 888 F.2d at 212 ("Challenges to the issuance of the IRS summons and to the validity of the order enforcing that summons can, and must, be raised by timely appeal from the date of issuance of the enforcement order.").  The IRS's motion to dismiss Count 3 of Harper's complaint is accordingly granted for this reason as well.

### 3.    Merits

Even if Harper had a private right of action to assert a violation of § 7609(f) and this court could review – notwithstanding Judge Corley's prior orders – whether the IRS satisfied the requirements of § 7609(f), the court finds that Harper has failed to state a claim that the IRS violated the statute.  In an action seeking the issuance of a John Doe summons, the IRS must establish that:

> (1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,
> (2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and
> (3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

§ 7609(f).  Harper contends that the IRS failed to establish that its summons to Coinbase related to the investigation of an "ascertainable group or class or persons" and that the information sought was "not readily available from other sources[.]" §§ 7609(f)(1), (f)(3).[30]  He also argues that because he has "accurately reported his virtual currency

---

[30] Doc. no. 32 at 8-9.

transactions for all applicable tax years,"[31], the IRS failed to establish that it had a

reasonable basis for believing the group of persons "may fail or may have failed to

comply with any provision of any internal revenue law."  § 7609(f)(2).  None of Harper's

arguments has merit.[32]

      **Ascertainable group of persons**.  Harper asserts that the Coinbase summons fails

to identify an "ascertainable group or class of persons" because "ascertainable group"

means a small, similarly situated group, not a group of the size covered by the subject

summons.  He cites no case law supporting that reading of the statute.  Instead, he relies

only on the statute's legislative history, which purportedly cites smaller groups of persons

such as "corporate shareholders" as examples of an ascertainable group.  The court agrees

with the IRS that the plain and ordinary meaning of "ascertainable" is well understood

from the text of the statute as referring to something that can be determined with

certainty.[33]  Nothing in the language of the statute imposes a size limitation on the class

or group, and reference to the legislative history is therefore unnecessary.  See Stauffer v.

IRS, 939 F.3d 1, 8 (1st Cir. 2019) ("Because the term 'authorized' is unambiguous within

its statutory context, our examination of its meaning stops here, and we need not proceed

to examine § 6511(h)(2)(B)'s legislative history."); see also Greebel v. FTP Software,

---

[31] Doc. no. 3 at ¶ 140

[32] See doc. no. 30-5.  The IRS supported its ex parte petition for leave to serve a John Doe
summons on Coinbase with a detailed memorandum of law and a declaration from an IRS Senior
Revenue Agent.  Id.

[33] See IRS Reply (doc. no. 34) (quoting Merriam Webster Dictionary, "Ascertain", available at
https://www.merriam-webster.com/dictionary/ascertainable).

Inc., 194 F.3d 185, 192 (1st Cir. 1999) ("The words of the statute are the first guide to any interpretation of the meaning of the statute . . . if the meaning is plain.").

In addition, courts have approved summonses to broad groups of John Does and found such groups "ascertainable."  See, e.g., In re Tax Liabilities of Does, Case No. 20-mc-32, 2021 WL 4556392, at *2 (D. Minn. Sept. 3, 2021) (group of taxpayers who used a company's services over a seven year period); In re Tax Liabilities of Does, No. 1:00-CV-3919, 2000 WL 34538137, at *1 (S.D. Fla. Oct. 30, 2000) ("American Express and MasterCard signatories whose charge, debit, or credit cards were issued by or through, or paid for from funds drawn on, banks in Antigua and Barbuda, the Bahamas, or the Cayman Islands during 1998 and 1999").[34]  By contrast, no court has limited the meaning of "ascertainable" to a small, similarly situated group of people, as Harper requests.  The Coinbase summons, as both originally requested and in its narrowed form, relates to the investigation of an ascertainable group or class of persons and therefore satisfies § 7609(f)(1).

**Reasonable basis**.  Harper argues that the IRS could not satisfy § 7609(f)(2) when it sought issuance of the Coinbase summons because he allegedly "reported [all of] his virtual currency transactions for all applicable tax years."[35]  This ignores the fact that the IRS sought a summons for records of a group of unidentified people that it believed had violated or would violate the internal revenue laws.  The statute does not require the IRS

---

[34] See also doc. 30-4 at 11-13 (citing cases).

[35] Doc. no. 3 at ¶ 140.

to show that each person in the ascertainable group violated the law.  If it suspects that members of the group "may" have violated the law and the information sought may reasonably suggest that the correct tax liability may not have been reported, § 7609(f)(2) is satisfied.  The IRS's petition and supporting documentation established that taxpayers utilizing Coinbase may have failed to report – or under-reported – income and other information required under the internal revenue laws.  In fact, the IRS alleged that not only did it have suspicion that the John Doe class included taxpayers who were not complying with the law, but it knew that members of the class violated the tax laws in the past, all of which was sufficient to satisfy § 7609(f)(2).[36]

**Availability from other sources**.  Harper lastly argues that the summons fails to satisfy the third statutory requirement regarding the unavailability of the records from other sources.  Under his reading of the statute, John Doe summonses must be limited to taxpayer identities only, so the IRS should have limited the initial John Doe summons to Coinbase to customer identities.  No court has adopted Harper's reading of § 7609(f)(3). In making this argument, he ignores the text of the statute and again purportedly relies on its legislative history and purpose.  The statutory language – "(3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources" – flatly contradicts Harper's interpretation as requiring summonses only for identifying taxpayers.  By its plain terms, the statute provides that

---

[36] See doc. no. 30-4 at 13-14.

both the information sought and the subject's identity must not be readily available from other sources. The court cannot ignore this text and adopt Harper's policy-based construction.

Moreover, the statute does not require the IRS to adopt Harper's two-step approach of first seeking a John Doe summons for taxpayer identifying information only and then later summonsing the taxpayer directly, with notice, for their account information. That such an entirely optional procedure may be available to the IRS does not suggest that the information obtained from the Coinbase summons was available from other sources. Harper has failed to state a claim that the IRS did not satisfy the requirements of § 7609(f)(3).

The IRS made the required showing under § 7609(f) and followed the required procedures. As the First Circuit Court of Appeals has recognized, "under section 7609(f) form is substance." Gertner, 65 F.3d at 972 (emphasis in original). The IRS's motion to dismiss Count 3 of Harper's complaint is granted for this additional reason.

## IV.   **Conclusion**

As the Supreme Court recently reaffirmed, "[t]o pursue unpaid taxes and the people who owe them, 'Congress has granted the Service broad latitude to issue summonses.'" Polselli v. Internal Revenue Serv., No. 21-1599, 2023 WL 3511532, at *2 (U.S. May 18, 2023). The IRS's actions at issue in this case fall squarely within that broad latitude, and Harper is not entitled to protection or relief beyond the existing Congressionally and judicially imposed "safeguards" and checks on the IRS's powers.

35

<u>Id.</u>  For the reasons set forth above, the defendants' motion to dismiss[37] is GRANTED.

The clerk shall enter judgment accordingly and close the case.

**SO ORDERED**.

_____
Joseph N. Laplante
United States District Judge

Dated:  May 26, 2023

cc:     Richard Samp, Esq.
        Jared Joseph Bedrick, Esq.
        Edward J. Murphy, Esq.
        Thomas P. Cole, Esq.
        Ryand D. Galisewski, Esq.

---

[37] Doc. no. 30.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

James Harper

    v.

Internal Revenue Service,
Commissioner, et al.

Case No. 20-cv-771-JL

JUDGMENT

    In accordance with the Order by District Judge Joseph N. Laplante dated May 26, 2023, judgment is hereby entered.

By the Court:

/s/ Daniel J. Lynch
Daniel J. Lynch
Clerk of Court

Date: May 30, 2023

cc:  Counsel of Record

**37**

## U.S. Const. amend. IV

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

## U.S. Const. amend V

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject to the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

## 26 U.S.C. § 7609(f)

(f) Additional Requirement in the Case of a John Doe Summons

Any summons described in subsection (c)(1) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that—

(1)     the summons relates to the investigation of a particular person or ascertainable group or class of persons,

(2)     there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

(3)     the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

The Secretary shall not issue any summons described in the preceding sentence unless the information sought to be obtained is narrowly tailored to information that pertains to the failure (or potential failure) of the person or group or class of persons referred to in paragraph (2) to comply with one or more provisions of the internal revenue law which have been identified for purposes of such paragraph.