# No. 23-1565

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

JAMES HARPER,

Plaintiff-Appellant

v.

DANIEL I. WERFEL, in his official capacity as Commissioner
of the Internal Revenue Service; INTERNAL REVENUE
SERVICE; JOHN DOE IRS AGENTS 1-10,

Defendants-Appellees

ON APPEAL FROM THE ORDER OF
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

## BRIEF FOR THE APPELLEES

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

FRANCESCA M. UGOLINI          (202) 514-3361
  *Court of Appeals Bar No.*        *1134848*
JENNIFER M. RUBIN             (202) 307-0524
  *Court of Appeals Bar No.*          *77022*
KATHLEEN E. LYON             (202) 307-6370
  *Court of Appeals Bar No.*        *1133434*
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
*Of Counsel:*     *Washington, D.C. 20044*
JANE E. YOUNG
  *United States Attorney*

# TABLE OF CONTENTS

**Page**

Table of contents.....................................................................i

Table of authorities ........................................................... iii

Glossary ...............................................................................x

Reasons why oral argument should be heard ........................xi

Jurisdictional statement .....................................................1

Statement of the issue..........................................................2

Statement of the case ..........................................................2

    A.    The IRS administrative summons process ...................3

    B.    Taxpayer's virtual currency activities ..........................7

    C.    The Coinbase John Doe summons .................................9

    D.    *Harper I*: District Court proceedings and initial appeal .........................................................................12

    E.    *Harper II*: District Court proceedings on remand.......13

Summary of argument ........................................................15

Argument ...........................................................................18

    The District Court correctly dismissed taxpayer's suit.................18

    Standard of review ..............................................................18

    A.    Taxpayer failed to state a claim for violation of the Fourth Amendment .....................................................18

        1.    The third-party doctrine applies to preclude any privacy right..................................................19

        2.    Taxpayer's contract with Coinbase did not create a reasonable expectation of privacy.........31

        3.    Taxpayer's property rights theory fails .............33

4.  Alternatively, because the Government
    satisfied *Powell* in the *Coinbase* summons
    enforcement proceeding, there was no Fourth
    Amendment violation ........................................... 37

B.  Taxpayer failed to state a claim of violation of the
    Fifth Amendment's Due Process Clause ..................... 43

C.  Taxpayer failed to state a claim for violation of
    Section 7609(f) ................................................. 51

    1.  Taxpayer lacked statutory standing and
        could not use the APA to challenge an
        alleged violation of Section 7609(f) ..................... 51

    2.  Taxpayer's claim that the IRS violated
        Section 7609(f) fails as a matter of law ............. 55

Conclusion ........................................................... 65
Certificate of compliance ........................................ 66
Certificate of service ............................................. 67
Statutory addendum .............................................. 68

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Ass'n of Am. Med. Colleges v. United States,*
217 F.3d 770 (9th Cir. 2000) ...................................................... 54

*Bennett v. Spear,*
520 U.S. 154 (1997) ...................................................................... 54

*Borucki v. Ryan,*
827 F.2d 836 (1st Cir. 1987)........................................................ 45

*Boyd v. United States,*
116 U.S. 616 (1886) .............................................................. 34, 36

*In re Cao,*
619 F.3d 410 (5th Cir. 2010) ....................................................... 25

*Carpenter v. United States,*
138 S. Ct. 2206 (2018) ................................16, 18, 20-26, 30-31, 35

*Carpenter v. United States,*
484 U.S. 19 (1987) ....................................................................... 36

*Matter of Does,*
541 F. Supp. 213 (N.D.N.Y. 1982)............................................... 63

*Matter of Does,*
671 F.2d 977 (6th Cir. 1982) ............................................55-56, 60

*Matter of Does,*
688 F.2d 144 (2d Cir. 1982)..............................................40-41, 53

*Donaldson v. United States,*
400 U.S. 517 (1971) .............................................................. 33, 44

*Florida v. Jardines,*
569 U.S. 1 (2013) ...................................................................35-36

*Gonzalez-Droz v. Gonzalez-Colon,*
660 F.3d 1 (1st Cir. 2011)............................................................ 48

*Hahn v. Star Bank,*
190 F.3d 708 (6th Cir. 1999) ....................................................... 45

*Harper v. Rettig,*
46 F.4th 1 (1st Cir. 2022) ............................................................ 13

*John Does, All Unknown Emps. of Boundary Waters Rest.*
*v. United States,* 866 F.2d 1015 (8th Cir. 1989).....................41, 63

*Johnson v. Duxbury, Mass.,*
931 F.3d 102 (1st Cir. 2019)...................................................20, 31

**Cases (continued):** Page(s)

*Katz v. United States,*
389 U.S. 347 (1967) ..................................................... 29

*Lyman v. Baker,*
954 F.3d 351 (1st Cir. 2020) ................................... 18, 60

*Bernardo ex rel. M & K Eng'g, Inc. v. Johnson,*
814 F.3d 481 (1st Cir. 2016) ......................................... 62

*Mathews v. Eldridge,*
424 U.S. 319 (1976) ............................................. 46-47, 50

*McCabe v. Life-Line Ambulance Serv., Inc.,*
77 F.3d 540 (1st Cir. 1996) ........................................... 37

*In re Montreal, Me. & Atl. Ry., Ltd.,*
888 F.3d 1 (1st Cir. 2018) ............................................. 52

*Neilson v. United States,*
674 F. Supp. 2d 248 (D.D.C. 2009) ............................... 54

*Payne v. Taslimi,*
998 F.3d 648 (4th Cir. 2021) ........................................ 46

*Perrier-Bilbo v. United States,*
954 F.3d 413 (1st Cir. 2020) .................................... 43-47

*Phillips v. Commissioner,*
283 U.S. 589 (1931) ...................................................... 51

*Presley v. United States,*
895 F.3d 1284 (11th Cir. 2018) ........................... 22-23, 37

*Ruckelshaus v. Monsanto Co.,*
467 U.S. 986 (1984) ...................................................... 36

*Matter of Search of Multiple Email Accts. Pursuant to*
*18 U.S.C. § 2703 for Investigation of Violation of*
*18 U.S.C. § 1956,*
585 F. Supp. 3d 1, 18 (D.D.C. 2022) .......................... 29

*Smith v. Maryland,*
442 U.S. 735 (1979) ............................................ 19-22, 35

*Standing Akimbo, LLC v. United States,*
955 F.3d 1146 (10th Cir. 2020) ............................... 22, 38

*Stauffer v. IRS,*
939 F.3d 1 (1st Cir. 2019) ....................................... 58, 61

*Sugarloaf Funding, LLC v. U.S. Dep't of the Treas.,*
584 F.3d 340 (1st Cir. 2009) ..................................... 3, 6-7

**Cases (continued):** Page(s)

*In re Tax Liabilities of Does*,
No. 2:10-MC-00130-MCE,
2011 WL 6302284 (E.D. Cal. Dec. 15, 2011) ............................... 57

*In re Tax Liabilities of Does*, No. 20-mc-32, 2021 WL
4556392 (D. Minn. Sept. 3, 2021) ................................................. 58

*Taylor Lohmeyer L. Firm PLLC v. United States*,
385 F. Supp. 3d 548 (W.D. Tex. 2019),
*aff'd on other grounds*, 957 F.3d 505 (5th Cir. 2020) ............. 41, 58

*Taylor v. City of Saginaw*,
922 F.3d 328 (6th Cir. 2019) ......................................................... 36

*Terry v. Ohio*,
392 U.S. 1 (1968) ............................................................................ 36

*Tiffany Fine Arts, Inc. v. United States*,
469 U.S. 310 (1985) ............................................................. 4, 49, 56

*U.S. DOJ v. Ricco Jonas*,
24 F.4th 718 (1st Cir. 2022) ........................... 22, 24, 27, 29, 31, 33

*United States v. Ackerman*,
831 F.3d 1292 (10th Cir. 2016) .................................................... 36

*United States v. Allee*,
888 F.2d 208 (1st Cir. 1989) ......................................................... 37

*United States v. Arthur Young & Co.*,
465 U.S. 805 (1984) ................................................................... 3, 38

*United States v. Bisceglia*,
420 U.S. 141 (1975) ................................................................. 38, 49

*United States v. Brigham Young University*,
679 F.2d 1345 (10th Cir. 1982), *vacated and
remanded*, 459 U.S. 1095 (1983) ............................................. 41-42

*United States v. Clarke*,
573 U.S. 248 (2014) .............................................................. 3-4, 6-7

*United States v. Coinbase, Inc.*,
No. 17-CV-01431-JSC,
2017 WL 3035164 (N.D. Cal. July 18, 2017) .................... 10, 41, 61

*United States v. Coinbase, Inc.*,
No. 17-CV-01431-JSC,
2017 WL 5890052 (N.D. Cal. Nov. 28, 2017).................... 10-11, 14,
16-17, 24-25, 37, 41-43, 48-50, 52-53, 58, 61-62

**Cases (continued):**                                                    **Page(s)**

*United States v. Dorais,*
   241 F.3d 1124 (9th Cir. 2001) .................................................32-33
*United States v. First Nat'l Bank of Mitchell,*
   691 F.2d 386 (8th Cir. 1982) ......................................................38
*United States v. Gertner,*
   65 F.3d 963 (1st Cir. 1995).........................................................38
*United States v. Gratkowski,*
   964 F.3d 307 (5th Cir. 2020) ......... 7-8, 16, 19, 22-25, 27, 29-30, 33
*United States v. Hood,*
   920 F. 3d 87 (1st Cir. 2019).........................................................22
*United States v. John G. Mutschler & Assocs., Inc.,*
   734 F.2d 363 (8th Cir. 1984) ......................................................63
*United States v. Jones,*
   565 U.S. 400 (2012) ....................................................................35
*United States v. Miller,*
   425 U.S. 435 (1976) ................... 15-16, 20-23, 25-29, 31, 33-35, 44
*United States v. Payward Ventures, Inc.,*
   No. 23-mc-80029-JCS,
   2023 WL 4303653 (N.D. Cal. June 30, 2023),
   *on appeal*, No. 23-16138 (9th Cir.).........................................58-59
*United States v. Pittsburgh Trade Exch. Inc.,*
   644 F.2d 302 (3d Cir. 1981)....................................................40, 47
*United States v. Powell,*
   379 U.S. 48 (1964) .................................6, 14, 16, 19, 37-40, 43, 49
*United States v. Reis,*
   765 F.2d 1094 (11th Cir. 1985) ...................................................38
*United States v. Samuels, Kramer & Co.,*
   712 F.2d 1342 (9th Cir. 1983) ...........................................40-41, 49
*United States v. Tiffany Fine Arts, Inc.,*
   718 F.2d 7 (2d Cir. 1983), *aff'd,*
   469 U.S. 310 (1985) ....................................................................55
*United States v. Warshak,*
   631 F.3d 266 (6th Cir. 2010) .............................................32-33, 36
*United States v. William,*
   603 F.3d 66 (1st Cir. 2010).........................................................19

**Cases (continued):**                                      **Page(s)**

*Vazquez-Rivera v. Figueroa,*
   759 F.3d 44 (1st Cir. 2014) ....................................................52

*Vega-Rodriguez v. Puerto Rico Tel. Co.,*
   110 F.3d 174 (1st Cir. 1997) ..........................................44-45

*Walls v. City of Petersburg,*
   895 F.2d 188 (4th Cir. 1990) ...............................................46

*White v. Hewlett Packard Enter. Co.,*
   985 F.3d 61 (1st Cir. 2021) ............................................30, 40

*Zietzke v. United States,*
   426 F. Supp. 3d 758 (W.D. Wash. 2019) ...................8, 30

*Zietzke v. United States,*
   No. 19-CV-03761-HSG(SK),
   2020 WL 264394 (N.D. Cal. Jan. 17, 2020) ...........30-31

**Statutes:**

Administrative Procedure Act (5 U.S.C.):
   § 551 ...........................................................................13, 53
   § 551(1)(B) ..........................................................................53
   § 551(13) ..............................................................................53
   § 702 .....................................................................13, 52-53
   § 702(2) ................................................................................54
   § 704 .....................................................................13, 52-53

Bank Secrecy Act (12 U.S.C.):
   § 1829b ...................................................................................7
   §§ 1951-1959 .........................................................................7

Bank Secrecy Act (31 U.S.C.)
   §§ 5311-5314 .........................................................................7
   §§ 5316-5332 .........................................................................7

Internal Revenue Code (26 U.S.C.):
   § 6103 ...................................................................................40
   § 6201(a) .................................................................................3
   § 6213(a) ...............................................................................51

**Statutes (continued):** **Page(s)**

Internal Revenue Code (26 U.S.C.) (cont.):
§ 7402(b) ............................................................... 5
§ 7421 ................................................................ 13
§ 7422 ................................................................ 51
§ 7601 ................................................................ 38
§ 7602 ................................................................ 38
§ 7602(a) ......................................................... 4, 12
§ 7604(a) ............................................................. 5
§ 7609 ........................................... 4, 17, 51, 54, 63
§ 7609(a)(1) ..................................................... 4, 47
§ 7609(b)(2) ........................................................ 54
§ 7609(b)(2)(A) ..................................................... 4
§ 7609(c)(3) ........................................................ 47
§ 7609(f) ............. 2, 5, 10, 12-14, 17, 40-42, 47-49, 51-56, 58, 61-62
§ 7609(f)(1) ................................................ 5, 55-57
§ 7609(f)(2) ............................................ 5, 55, 59-60
§ 7609(f)(3) ............................................ 5, 55, 60-63
§ 7609(h) .......................................................... 5, 9
§ 7609(h)(2) ...................................... 5, 48-49, 54

28 U.S.C.:
§ 1291 ................................................................. 2
§ 1331 ................................................................. 2
§ 2107(b) ......................................................... 1-2

Pub. L. No. 116-25, 133 Stat. 981,
§ 1204(a) (July 1, 2019) .................................... 5

Tax Reform Act of 1976 .................................. 61

**Constitutional Provisions:**

United States Constitution:
Amendment IV .......... 12-13, 15, 17-21, 23, 29, 32, 34, 37-40, 43-45
Amendment V ....................................... 12, 17, 44
Amendment XIV ..................................... 44-45

**Regulations and Regulatory Materials:**                             **Page(s)**

Treasury Regulations (31 C.F.R.):
§ 1010.100(ff)(5) ................................................................ 7
§ 1010.100(ff)(5)(i)(A)...................................................... 7

IRS Notice 2014-21,
"IRS Virtual Currency Guidance,"
2014-16 I.R.B. 938 (April 14, 2014) ............................... 8

IRS Notice 2023-34 (Aug. 21, 2023) ................................... 8

**Other Authorities:**

*Coinbase Money Transmission and e-Money Regulatory
Compliance*, available at https://support.coinbase.com/
customer/en/portal/articles/2689172-coinbase-
regulatory-compliance (last checked Dec. 21, 2023) ...................... 7

Fed. R. App. P. 4(a)(1)(B)(i) .............................................. 1-2

Fed. R. Civ. P. 12(b)(6)....................................................... 18

H.R. Rep. 94-658 (1976) ...................................... 55, 59, 62

H.R. Rep. 116-39, pt. I (2019) ............................................ 41

# GLOSSARY

| Acronym | Description |
| --- | --- |
| AP | Americans for Prosperity Foundation, *amicus curiae* |
| APA | Administrative Procedure Act, 5 U.S.C. §§ 551 et seq. |
| BSA | Bank Secrecy Act, 12 U.S.C. §§ 1829b, 1951-1959 & 31 U.S.C. §§ 5311-5314, 5316-5332 |
| CC | Coin Center, *amicus curiae* |
| DeFi | DeFi Education Fund, *amicus curiae* |
| I.R.C. | Internal Revenue Code (26 U.S.C.) |
| IRS | Internal Revenue Service |
| NTU | National Taxpayers Union, *amicus curiae* |
| Paradigm | Paradigm Operations LP, *amicus curiae* |
| Taxpayer | James Harper, appellant |

## REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

Counsel for the appellee suggest that oral argument may be beneficial to the Court's understanding of the legal issues presented in this case.

# JURISDICTIONAL STATEMENT

Appellant James Harper (taxpayer) filed suit in the District Court seeking injunctive and declaratory relief and money damages. (JA6-31.)[1] On March 23, 2021, the District Court (Hon. Joseph A. DiClerico, Jr.) entered a final judgment dismissing taxpayer's claims seeking injunctive and declaratory relief for lack of jurisdiction, as well as his damages claims. (Doc. 18.) Taxpayer appealed, solely as to the dismissal of his claims for injunctive and declaratory relief. (Doc. 20.) 28 U.S.C. § 2107(b); Fed. R. App. P. 4(a)(1)(B)(i). On appeal, this Court reversed and vacated the District Court's judgment as to those claims and remanded to the District Court "to consider, in the first instance, whether appellant has stated a claim on which relief can be granted." (Doc. 23 at 16; Doc. 24.)  As a consequence, the Government no longer

---

[1] "Doc." references are to the District Court record.  "JA" references are to the appendix submitted with taxpayer's brief.  "Br." references are to the opening brief.  We refer to the amicus briefs as follows:  "Paradigm-Br." for the brief filed by Paradigm Operations LP; "CC-Br." for the brief filed by Coin Center;  "NTU-Br." for the brief filed by the National Taxpayers Union Foundation; "DeFi-Br." for the brief filed by DeFi Education Fund; and "AP-Br." for the brief filed by the Americans for Prosperity Foundation.

disputes that the District Court has jurisdiction over the claims for injunctive and declaratory relief pursuant to 28 U.S.C. § 1331.

On remand, on May 26, 2023, the District Court (Hon. Joseph N. Laplante) granted the Government's motion to dismiss.  (JA73-108.)  The court entered a separate judgment on May 30, 2023.  (JA109.)  Within 60 days, taxpayer timely filed a notice of appeal on July 10, 2023.  (JA110.)  28 U.S.C. § 2107(b); Fed. R. App. P. 4(a)(1)(B)(i).  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the District Court correctly dismissed taxpayer's complaint for failure to state a claim.

## STATEMENT OF THE CASE

The IRS obtained information about taxpayer's bitcoin transactions at Coinbase, a virtual currency exchange, pursuant to an administrative summons issued to Coinbase and partially enforced by a California district court.  In 2019, the IRS informed taxpayer that it had information that he may not have properly reported his virtual currency transactions.  Taxpayer sued for alleged violations of the Fourth and Fifth Amendments and Section 7609(f) of the Internal

Revenue Code (26 U.S.C) ("Code" or "I.R.C.").  After the District Court

dismissed the amended complaint, this Court concluded that the Tax

Court had jurisdiction over taxpayer's claims for injunctive and

declaratory relief, vacated and reversed as to those claims, and

remanded for further proceedings.

On remand, the District Court dismissed taxpayer's claims for

declaratory and injunctive relief for failure to state a claim.  Taxpayer

now appeals.

### A.    The IRS administrative summons process

"Congress has 'authorized and required' the IRS 'to make

inquiries, determinations, and assessments of all taxes' the Internal

Revenue Code imposes."  *United States v. Clarke*, 573 U.S. 248, 249-50

(2014) (quoting I.R.C. § 6201(a)).  Section 7602 grants the IRS

expansive information-gathering authority to enable effective tax

investigations.  *Clarke*, 573 U.S. at 250; *see also United States v. Arthur

Young & Co.*, 465 U.S. 805, 813-15 (1984); *Sugarloaf Funding, LLC v.

U.S. Dep't of the Treas.*, 584 F.3d 340, 345 (1st Cir. 2009)  It authorizes

the IRS, "[f]or the purpose of ascertaining the correctness of any return,

making a return where none has been made, [or] determining the

liability of any person for any internal revenue tax, . . . [t]o examine any books, papers, records, or other data which may be relevant or material to such inquiry" and to summon any person to appear and produce such documents and to give relevant testimony. I.R.C. § 7602(a). "[S]uch an investigatory tool . . . is a crucial backstop in a tax system based on self-reporting." *Clarke*, 573 U.S. at 254 (citation omitted).

Summonses directed to third parties—*e.g.*, to banks seeking account records relating to taxpayers—are subject to special procedures prescribed by I.R.C. § 7609. Congress required the IRS to provide notice of a third-party summons seeking the production of documents or testimony to "any person . . . identified in the summons." I.R.C. § 7609(a)(1). Any person entitled to notice of a third-party summons may challenge the summons through a petition to quash. I.R.C. § 7609(b)(2)(A).

Where "the IRS *does not know* the identity of the taxpayer under investigation, advance notice to the taxpayer is, of course, not possible." *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 316-17 (1985) (emphasis in original). Before issuing a so-called "John Doe" summons, the Government must petition a federal district court for authorization.

I.R.C. § 7609(f), (h).  The district court must determine whether the Government has established that: (1) "the summons relates to the investigation of a particular person or ascertainable group or class of persons"; (2) "there is a reasonable basis for believing that such person or group . . . may fail or may have failed to comply" with internal revenue laws; and (3) "the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources."  I.R.C. § 7609(f).[2]  That determination is made in an *ex parte* proceeding and based "solely on the petition and supporting affidavits."  I.R.C. § 7609(h)(2).

If the person to whom a summons (including a John Doe summons) is issued fails to comply, the Government may seek judicial enforcement under I.R.C. §§ 7402(b) and 7604(a).  To obtain

---

[2] In 2019, after the Coinbase summons at issue was enforced, Section 7609(f) was amended to add a requirement that a John Doe summons must be "narrowly tailored to information that pertains to the failure (or potential failure) of the person or group or class of persons referred to in paragraph (2) to comply with one or more provisions of the internal revenue law which have been identified for purposes of such paragraph."  *See* Pub. L. No. 116-25, 133 Stat. 981, 988, § 1204(a) (July 1, 2019).  The new statutory language does not apply in this case.

enforcement, the Government must meet the standards set forth in
*United States v. Powell*, 379 U.S. 48, 57-58 (1964).  The Government
"need not meet any standard of probable cause to obtain enforcement of
[its] summons," *Powell*, 379 U.S. at 57, because "[t]he purpose of a
summons is not to accuse, much less to adjudicate, but only to inquire,"
*Clarke*, 573 U.S. at 254 (cleaned up).  Analogizing to other agencies'
investigatory powers, *Powell* concluded that the IRS, like a grand jury,
"can investigate merely on suspicion that the law is being violated, or
even just because it wants assurance that it is not."  379 U.S. at 57.

Accordingly, under *Powell,* the Government must demonstrate
that the investigation is being conducted for a legitimate purpose, the
information sought may be relevant to that investigation and is not
already in the Government's possession, and the administrative steps
required by the Code have been followed.  *Id.* at 57-58.  This showing is
"minimal" and can be satisfied by an affidavit of the investigating
agent.  *Sugarloaf Funding*, 584 F.3d at 345; *see Clarke*, 573 U.S. at 254.
"Once the IRS has made this showing, the burden shifts to the
[summonee] to disprove one or more of the *Powell* requirements, or to
show that enforcement would be an 'abuse of process.'"  *Sugarloaf*

*Funding*, 584 F.3d at 346 (citation omitted). The burden of rebutting the Government's showing is a "heavy" one. *Id.* "Enforcement proceedings are designed to be summary in nature" and the court's role is simply "to ensure that the IRS is using its broad authority in good faith and in compliance with the law." *Id.* at 345 (quotations and citations omitted). *See Clarke*, 572 U.S. at 254 (same).

## B. Taxpayer's virtual currency activities

Taxpayer alleges that he opened an account with Coinbase, a virtual currency exchange. (JA10 ¶18.) Coinbase is a regulated financial institution under the Bank Secrecy Act ("BSA") of 1970.[3] *See United States v. Gratkowski*, 964 F.3d 307, 312 (5th Cir. 2020). In 2014,

---

[3] 12 U.S.C. §§ 1829b, 1951-1959 & 31 U.S.C. §§ 5311-5314, 5316-5332. The BSA's implementing regulations treat virtual currency exchanges as "money services business[es]," which accept and transmit "currency, funds, or other value that substitutes for currency" from one person "to another location or person by any means." 31 C.F.R. § 1010.100(ff)(5), (5)(i)(A).

Coinbase informs customers that it "is required to comply" with the BSA, "which requires Coinbase to verify customer identities, maintain records of currency transactions for up to 5 years, and report certain transactions." *Coinbase Money Transmission and e-Money Regulatory Compliance*, available at https://support.coinbase.com/customer/en/portal/articles/2689172-coinbase-regulatory-compliance (last checked Dec. 21, 2023). (*See* JA148 ¶43.)

the IRS issued Notice 2014-21, "IRS Virtual Currency Guidance," 2014-16 I.R.B. 938, 2014 WL 1224474 (April 14, 2014), *modified on other grounds*, IRS Notice 2023-34 (Aug. 21, 2023)*,* to provide guidance on taxation of virtual currency transactions.  It states that any virtual currency which can be converted into traditional currency is property for tax purposes, and a taxpayer can have a taxable gain or loss on the sale or exchange of a virtual currency.  *Id.* (FAQ Q&As 1, 6, 7).  The Notice identified bitcoin as one example of a convertible virtual currency.  *Id.  See also Gratkowski*, 964 F.3d at 309 (explaining bitcoin and the role virtual currency exchanges play in handling bitcoin transactions); *Zietzke v. United States*, 426 F. Supp. 3d 758, 761 (W.D. Wash. 2019) (same).

Taxpayer alleges that, in 2013 and 2014, he was paid for certain work in bitcoin and deposited the bitcoin income into his Coinbase account.  (JA13 ¶29, 32.)  He alleges that, starting in 2015, he stopped accumulating new bitcoin, began liquidating his Coinbase holdings and

transferring his remaining holdings to a hardware wallet,[4] and held no bitcoin at Coinbase by early 2016.  (JA13-14 ¶¶32, 34-36.)[5]

## C.    The Coinbase John Doe summons

In 2016, the IRS began an investigation into the reporting gap between the number of virtual currency users Coinbase claimed to have and the number of U.S. bitcoin users reporting gains or losses to the IRS during 2013 through 2015.  (JA112-30.)  It filed an *ex parte* petition in a district court pursuant to I.R.C. § 7609(h), requesting leave to serve a John Doe administrative summons on Coinbase.  (JA14 ¶38.)  The initial summons sought "information regarding United States persons who at any time during the period January 1, 2013 through December 31, 2015 conducted transactions in a convertible virtual currency as defined in IRS Notice 2014-21" and nine categories of documents.

---

[4] A hardware wallet is a "secure offline" version of a virtual currency wallet that "can be used securely and interactively."  Virtual Currency Storage, Internal Revenue Manual 5.1.18.20.1 (July 17, 2019).

[5] The amended complaint made allegations about two other virtual currency exchanges.  (JA17 ¶56.)  Subsequently, taxpayer dropped the claims as to one exchange (JA20 ¶¶71-74; JA24-25 ¶100, 106), and the Government represented that the IRS received information only from Coinbase (Doc. 30-11 at 5 (Q&A2)).  Thus, taxpayer's claims relate solely to the judicially issued and enforced Coinbase summons.  (*See* JA78-79 n.15.)

(JA149 ¶48; JA159, JA171-72.)  *United States v. Coinbase, Inc.*, No. 17-CV-01431-JSC, 2017 WL 5890052, at *1 (N.D. Cal. Nov. 28, 2017).  The district court entered an order finding that the IRS satisfied the requirements in Section 7609(f) and permitting the IRS to serve the initial summons on Coinbase.  (*Id.*; JA174-75.)

After Coinbase failed to comply with the initial summons, the Government petitioned to enforce it.  *Id.* at *1.  The Government narrowed the summons based on information about Coinbase's business practices.  *Coinbase*, 2017 WL 5890052, at *3, *5.  The narrowed summons applied to 14,355 account holders.  *Id.* at *4.  The district court granted a motion from "John Doe 4," a Coinbase user, to intervene in the enforcement proceeding.  *United States v. Coinbase, Inc.*, No. 17-CV-01431-JSC, 2017 WL 3035164, at *7 (N.D. Cal. July 18, 2017).  Taxpayer did not seek to intervene in the enforcement proceeding but did serve as co-counsel on an amicus brief filed on behalf of the Competitive Enterprise Institute.  (Br. 9; JA16 ¶51; Doc. 30-10.)

The *Coinbase* district court issued an order partially enforcing the summons, after further narrowing the scope of information the IRS could obtain.  *Coinbase*, 2017 WL 5890052, at *1, *6-7.  The order

directed that, with respect to accounts with at least the equivalent of $20,000 in one transaction type (buy, sell, send, or receive) in any one year from 2013 to 2015, Coinbase must produce six categories of information:  the taxpayer's ID number, name, birth date, and address, "records of account activity including transaction logs or other records identifying the date, amount, and type of transaction (purchase/sale/exchange), the post transaction balance, and the names of counterparties to the transaction," and "all periodic statements of account or invoices (or the equivalent)."  *Id.* at *8-9.  No party appealed.

The IRS received information about taxpayer in response to the Coinbase summons.  Later, in a letter dated August 9, 2019, titled "Reporting Virtual Currency Transactions," the IRS informed taxpayer that it "ha[s] information that you have or had one or more accounts containing virtual currency but may not have properly reported your transactions involving virtual currency, which include cryptocurrency and non-crypto virtual currencies."  (JA64; JA19 ¶¶67-68.)

The letter informed taxpayer of the requirements for reporting virtual currency transactions.  (JA65.)  It also informed him that if he believed he had not accurately reported such transactions, he should

file amended or delinquent income tax returns and that if he had not "accurately report[ed his] virtual currency transactions," he "may be subject to future civil and criminal enforcement activity." (JA64.)

## D. *Harper I*: District Court proceedings and initial appeal

Taxpayer filed suit challenging the IRS's receipt and possession of his information from Coinbase. (JA1, 6-31.) Counts I and II asserted that the IRS and unnamed agents violated his Fourth Amendment and Fifth Amendment procedural due process rights. (JA22-28.) With respect to those counts, taxpayer asserted that the summons statutory scheme, I.R.C. § 7602(a), *et seq.*, was unconstitutional as applied to him. (JA25 ¶107; JA28 ¶130.) In Count III, taxpayer alleged that the IRS violated the John Doe procedures in Section 7609(f). (JA29-31 ¶¶136-48.) Taxpayer requested declaratory and injunctive relief, including an order directing the IRS to expunge his financial information from its records and prohibiting the IRS and unnamed IRS agents from seizing financial records from virtual currency exchanges in the future. (JA25-26, 29, 31.) He also sought money damages. (JA8.)

The District Court granted the Government's motion to dismiss. (Doc. 17.) It dismissed the claims for declaratory and injunctive relief

for lack of subject matter jurisdiction, finding them prohibited by the Anti-Injunction Act, I.R.C. § 7421. (Doc. 17 at 8-15.) The court also dismissed taxpayer's claims for damages. On appeal, taxpayer challenged only the District Court's dismissal of his claims for declaratory and injunctive relief. *See Harper v. Rettig*, 46 F.4th 1, 5 (1st Cir. 2022). This Court reversed, holding that the Anti-Injunction Act does not bar these claims, and remanded to the District Court "to consider, in the first instance, whether [taxpayer] has stated a claim on which relief can be granted." *Id.* at 9.

**E.    *Harper II*: District Court proceedings on remand**

On remand, the Government filed a renewed motion to dismiss. (Docs. 30, 30-1; *see* JA4 (Nov. 29, 2022 entry).) In response, taxpayer, among other things, asserted that his claim for violation of Section 7609(f) arose under Sections 702 and 704 of the Administrative Procedure Act ("APA") (5 U.S.C. §§ 551 et seq.). (Doc. 32 at 6, 11-12.) On May 26, 2023, the District Court issued an order granting the motion. (JA73-108.)

The court held that taxpayer failed to state a claim that the IRS violated his Fourth Amendment rights when it obtained Coinbase's

-14-

records pertaining to his account through the judicially enforced summons because taxpayer had neither a reasonable expectation of privacy nor a property interest in the records. (JA80-92.) Even if taxpayer had a protected interest in the records, the District Court held, the Government's compliance with *Powell* in the summons enforcement proceeding satisfied the Fourth Amendment's reasonableness requirement. (JA89-92.) Similarly, the District Court dismissed taxpayer's due process claim because taxpayer failed to identify a protected liberty or property interest and because the IRS used constitutionally adequate process in obtaining the records. (JA93-97.)

Finally, the District Court held that taxpayer failed to state a claim that the IRS violated Section 7609(f). (JA97-103; *see* JA29-31.) Assuming, *arguendo*, that taxpayer could bring a claim under the APA for violation of Section 7609(f) (JA98-101), it held that the *Coinbase* court's determination that the IRS had satisfied the Section 7609(f) requirements was not subject to collateral attack. (JA101-03.) Further, the court held, taxpayer failed to state a claim that the IRS violated any of the Section 7609(f) requirements. (JA103-07.)

## SUMMARY OF ARGUMENT

The Government used the mechanisms provided in the IRS summons statutory scheme to obtain information from Coinbase for a class of unknown taxpayers: It first obtained permission from a district court to serve a John Doe summons on Coinbase and, when Coinbase failed to comply, obtained a separate district court order partially enforcing the summons. After Coinbase produced responsive documents, the IRS alerted taxpayer that it had information indicating that he may not have properly reported his virtual currency transactions on his tax returns and may face additional taxes and/or future civil or criminal enforcement. Taxpayer sued, seeking an order directing the IRS to expunge from its records the financial information on which the IRS's potential enforcement was based. The District Court correctly dismissed his claims for injunctive and declaratory relief for failure to state a claim.

1.      Taxpayer's claim that the IRS violated his Fourth Amendment rights lacks any merit. Under the third-party doctrine, as established in *United States v. Miller*, 425 U.S. 435, 443 (1976), a person lacks a reasonable expectation of privacy in information

voluntarily provided to a third party, including bank records pertaining to him. Taxpayer seeks to rely on a narrow exception to the third-party doctrine established in *Carpenter v. United States*, 138 S. Ct. 2206 (2018) for cell-site location information. But as the Fifth Circuit held in *United States v. Gratkowski*, 964 F.3d 307 (5th Cir. 2020), information in Coinbase's records about users' bitcoin transactions is subject to the third-party doctrine, because it is "more akin to" the bank records at issue in *Miller* than to the cell-site location information at issue in *Carpenter*. Accordingly, the District Court correctly applied the third-party doctrine to conclude that taxpayer lacked a reasonable expectation of privacy in the Coinbase records at issue here.

And, contrary to taxpayer's claims, Coinbase's privacy policies permit sharing his information with the Government, including in response to the IRS's summons and the *Coinbase* order partially enforcing it. Even if taxpayer had a protected interest, the Supreme Court has long held that the probable cause standard does not apply to issuance or enforcement of IRS administrative summonses and that compliance with the *Powell* standards—found by a district court here—satisfies the Fourth Amendment's reasonableness requirement.

2.     Taxpayer's Fifth Amendment claim also fails.  Taxpayer lacks a protected interest in the information held by Coinbase for the same reasons that he lacks a Fourth Amendment privacy and property interest.  He also failed to identify any procedures that the IRS violated in serving and enforcing the Coinbase summons.  Taxpayer was not entitled to additional pre-deprivation procedural safeguards beyond the Section 7609(f) procedures.

3.     Finally, taxpayer failed to state a claim for violation of Section 7609(f).  Section 7609 does not provide an express or implied cause of action, as taxpayer now concedes.  Taxpayer attempts to bring a claim under the APA, but his challenge is directed at the district court's Section 7609(f) determination in the *Coinbase* summons litigation, and not at any "agency action" by the IRS.  Moreover, Section 7609 impliedly forbids relief under the APA.  Taxpayer's claim that the IRS violated Section 7609(f) procedures fails as a matter of law in any event, as the District Court correctly held.

# ARGUMENT

## The District Court correctly dismissed taxpayer's suit

## Standard of review

This Court reviews *de novo* a dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Lyman v. Baker*, 954 F.3d 351, 359 (1st Cir. 2020).

### A.  Taxpayer failed to state a claim for violation of the Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  "[T]he basic purpose" of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials."  *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (quotation and citation omitted).  It protects against trespassory searches (*i.e.*, information obtained by physical intrusion on a constitutionally protected area) and violations of a reasonable expectation of privacy.  *Id.*  Even if government action constitutes a search or seizure, the Government does not violate Fourth Amendment

rights if its action was reasonable. *See United States v. William*, 603 F.3d 66, 68 (1st Cir. 2010).

As explained below, taxpayer's Fourth Amendment claim fails both because, consistent with the Fifth Circuit's holding in *Gratkowski*, 964 F.3d at 312-13, he lacked a reasonable expectation of privacy in his bitcoin transactions at Coinbase, and because he lacked a property interest Coinbase's own business records. In the alternative, taxpayer's claim fails because the Government's actions were reasonable based on its compliance with *Powell*.

### 1. The third-party doctrine applies to preclude any privacy right

**(a)** The District Court correctly held that taxpayer had no constitutionally protected privacy interest in Coinbase's records of his transactions. To determine whether government action constitutes a search or seizure on a privacy theory, courts must assess whether the action invades "a justifiable, a reasonable, or a legitimate expectation of privacy." *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (citations omitted). Courts consider whether an individual alleging a Fourth Amendment violation "exhibited an actual (subjective) expectation of privacy," and, if so, whether that "subjective expectation of privacy is

one that society is prepared to recognize as reasonable." *Id.* (citations
omitted); *see also Carpenter*, 138 S. Ct. at 2213. However, "a person has
no legitimate expectation of privacy in information he voluntarily turns
over to third parties." *Smith*, 442 U.S. at 743-44. This principle, known
as the third-party doctrine, applies "even if the information is revealed
on the assumption that it will be used only for a limited purpose and
the confidence placed in the third party will not be betrayed." *United
States v. Miller*, 425 U.S. 435, 443 (1976) (citations omitted).

Thus, in *Miller*, the Supreme Court held that a person lacks a
reasonable expectation of privacy in bank records pertaining to him.
The government had subpoenaed bank records for Miller, whom it was
investigating for tax evasion. 425 U.S. at 437-38. The Court
recognized, first, that the bank records "[were] not the respondent's
'private papers'" but were instead "the business records of the banks."
*Id.* at 440; *see also Johnson v. Duxbury, Mass.*, 931 F.3d 102, 106 (1st
Cir. 2019). It further found that Congress assumed that individuals
lacked "any legitimate expectation of privacy concerning the
information kept in bank records" when it enacted the BSA, "the
expressed purpose of which is to require records to be maintained

because they have a high degree of usefulness in criminal tax, and regulatory investigations and proceedings." *Miller*, 425 U.S. at 442-43 (quotation and citation omitted). Thus, the "depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government." *Id.* at 443. *See also Smith*, 442 U.S. at 741-44 (determining that use of a pen register is not a Fourth Amendment search because "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties").

**(b)** Contrary to taxpayer's assertions (Br. 14, 29-33), the Supreme Court's *Carpenter* decision solely created a narrow exception to the third-party doctrine and did not otherwise limit the doctrine's scope. In *Carpenter*, the Supreme Court declined to apply the third-party doctrine to obtaining cell-site location information from mobile phone records providing a comprehensive record of a person's location over a period of over three months. 138 S. Ct. at 2217. The Court stated that its decision was a "narrow one" limited to the cell-site location information context and that it expressed no view "on matters not before" the Court. *Id.* at 2220; *see also id.* (relying on the "unique nature of cell phone location information").

As this Court has recognized, "*Carpenter* did not disturb the third-party doctrine." *U.S. DOJ v. Ricco Jonas*, 24 F.4th 718, 738 (1st Cir. 2022). Indeed, the Supreme Court expressly stated that its decision did "not disturb the application of *Smith* and *Miller*." *Carpenter*, 138 S. Ct. at 2220; *see also Presley v. United States*, 895 F.3d 1284, 1291 (11th Cir. 2018) (*Carpenter* "reaffirmed the vitality of *Miller*'s holding."). Rather, the Court simply declined to "extend *Smith* and *Miller* to cover the[] novel circumstances" presented there, and stated that it would be a "rare" case in which a warrant would be required to obtain records held by a third party. *Carpenter*, 138 S. Ct. at 2217, 2222. Consistent with that expressly narrow holding, this Court and other appellate courts have declined to extend *Carpenter* beyond the "unusual concern" posed by cell-site location information there. [6] *United States v. Hood*, 920 F. 3d 87, 92 (1st Cir. 2019) (no reasonable expectation of privacy in Internet Protocol address or subscriber information held by online service providers); *see also Gratkowski*, 964 F.3d at 310-13; *Standing*

---

[6] Contrary to DeFi's assertion (DeFi-Br. 6; *see generally id.* at 6-14), *Carpenter* represents an exception to the third-party doctrine, and not the rule. As *Carpenter* made clear, "the Government will be able to use subpoenas to acquire records [without probable cause] in the overwhelming majority of investigations." 138 S. Ct. at 2222.

*Akimbo, LLC v. United States*, 955 F.3d 1146, 1164-65 (10th Cir. 2020);

*Presley*, 895 F.3d at 1291.

**(c)** Under the third-party doctrine, taxpayer had no reasonable expectation of privacy in Coinbase's records. (JA82-87.) Taxpayer (Br. 29-33) does not argue that Coinbase, as a virtual currency exchange, is meaningfully different from a traditional bank for purposes of the third-party doctrine. As the Fifth Circuit explained in rejecting arguments similar to those raised here, the "main difference between Coinbase and traditional banks . . . is that Coinbase deals with virtual currency while traditional banks deal with physical currency." *Gratkowski*, 964 F.3d at 312. "[B]oth are subject to the Bank Secrecy Act as regulated financial institutions. . . . [and] [b]oth keep records of customer identities and currency transactions." *Id.*

As the District Court correctly determined (JA83), an account-holder's records at Coinbase are "more akin to" the bank records in *Miller* than to the cell-site location information in *Carpenter*. Thus, in *Gratkowski*, the Fifth Circuit held that a criminal defendant had no Fourth Amendment protected interest in Coinbase records. *Gratkowski*, 964 F.3d at 312. It found that Coinbase records "provide[d]

only information about a person's virtual currency transactions" and did not provide agents with the "intimate window into a person's life" that formed the basis of *Carpenter*. *Id*. It also found that "transacting [b]itcoin through Coinbase or other virtual currency exchange institutions requires an 'affirmative act on [the] part of the user,'" unlike the collection of cell-site location information in *Carpenter*. *Id*. (quoting *Carpenter*, 138 S. Ct. 2220). Thus, "the nature of the information and the voluntariness of the exposure weigh heavily against finding a privacy interest in Coinbase records." *Id*. at 312. The Fifth Circuit's analysis in *Gratkowski* accords well with this Court's conclusion that *Carpenter* "reiterated that two primary rationales underlie the third-party doctrine: the nature of the information sought and the voluntariness of the exposure of that information to third parties." *Ricco Jonas*, 24 F.4th at 738.

Taxpayer likewise lacks a protected interest in the Coinbase records. (*See* JA83-86.) The *Coinbase* enforcement order directs the exchange to produce the same identifying information—taxpayer's name, date of birth, address, and tax ID number—that a traditional bank would collect from a customer when opening an account.

*Coinbase*, 2017 WL 5890052, *8; *see* JA84-85. Coinbase also was required to produce records about taxpayer's virtual currency transactions and account statements. *Coinbase*, 2017 WL 5890052, at *8-9. Information regarding these transactions is precisely the sort of commercial information that does not implicate privacy interests, *Miller*, 425 U.S. at 442, and account statements are routine business records.

As the District Court concluded (JA84), and contrary to taxpayer's assertion (Br. 31), such information does not implicate the location surveillance concerns that animated the Supreme Court in *Carpenter* and does not "reveal similarly intimate details about a user's life" (*id.*) as the cell-site location information in *Carpenter* did. *Gratkowski*, 964 F.3d at 312. This court should ignore taxpayer's conclusory, generalized assertions otherwise. (Br. 31-32.) *See In re Cao*, 619 F.3d 410, 430, 434 (5th Cir. 2010) ("a plaintiff seeking an injunction in an as-applied challenge generally has the burden to allege enough facts for the Court to decide the constitutional claim") (citations omitted).

Indeed, contrary to taxpayer's (Br. 32) and several amici's assertions (CC-Br. 12, 14, 15-16; DeFi-Br. 19; Paradigm-Br. 11-13), the

claim that obtaining Coinbase's records of certain customers' transactions may reveal information about the customers' personal life or habits does not justify denying the IRS access to the records. Bank account records, too, can reveal information about a taxpayer's personal or business affairs, such as payments for monthly subscriptions, medical bills, child support payments, or donations to a charity or church. Yet the IRS may obtain bank records of transactions even where they reveal such information. Amici do not suggest otherwise. Taxpayer's and amici's arguments, if accepted, would stretch the reach of *Carpenter* well beyond the "narrow" (138 S. Ct. at 2220) circumstances of the daily surveillance of an individual through the "detailed log of a person's movements over several years" (*id.* at 2222) provided by cell-site location information.

Further, as the District Court (JA84-85) explained, taxpayer voluntarily conveyed his information to Coinbase and therefore had no "legitimate expectation of privacy" in it. *Miller*, 425 U.S. at 442. Taxpayer chose to open an account at Coinbase, which required him to provide the same personal identifying information as when opening a bank account. (JA84-85.) By electing to buy, sell, and store bitcoin at

Coinbase, users like taxpayer "'sacrifice some privacy' and thus lack a protectable 'privacy interest in the records of [their] [b]itcoin transactions on Coinbase' or other virtual currency exchanges." (JA85 (quoting *Gratkowski*, 964 F.3d at 312-13).) At all relevant times, taxpayer could have engaged in transactions without using a virtual currency exchange. *Gratkowski*, 964 F.3d at 312-13. Indeed, by early 2016, taxpayer had moved all of his bitcoin from Coinbase to a hardware wallet and no longer used Coinbase. (JA13-14 ¶¶34-36.)

Based on the above, the District Court correctly concluded (JA84) that Coinbase's account records, "both qualitatively and quantitatively," are "closely analogous to the bank records in *Miller*." Taxpayer seeks to distinguish (Br. 31-32) *Miller* and *Gratkowski* on the sole basis that both cases addressed a subpoena to obtain information about a single individual. (*See also* DeFi-Br. 15.) He does not explain how the number of persons to which a summons relates has any bearing on the third-party doctrine, given its "primary rationales" of the nature of the information sought and the voluntariness of the exposure of that information to third parties. *Ricco Jonas*, 24 F.4th at 738.

Taxpayer (Br. 30-32) seeks to undermine the District Court's determination by arguing that cryptocurrency transactions are "confidential by nature" (Br. 30) because no personal information is revealed to the public on the blockchain regarding any transaction. But *Miller* did not hinge on whether information was made available to the public, but, instead, whether it was voluntarily shared with a third party—there, a bank. 425 U.S. at 443. The information obtained in the Coinbase records—taxpayer's identifying information; records of account activity, balances, and counterparties; and account statements—is not "qualitatively different" (Br. 30) from the deposit slips, monthly statements, and checks identifying counterparties at issue in *Miller*. 425 U.S. at 442.

Taxpayer (Br. 14-15, 31) and several amici (CC-Br. 12-14; DeFi-Br. 6, 17-18; Paradigm-Br. 14-19) further contend that the nature of cryptocurrency raises a unique privacy interest because of the alleged possibility that the IRS could use Coinbase transaction information to identify him on the public blockchain. As explained above (pp. 19-21), taxpayer has no reasonable expectation of privacy in Coinbase's own records of his transactions at the exchange because the records do not

belong to him.  And the "nature of the information" obtained in the Coinbase summons is not meaningfully different from the bank records at issue in *Miller* simply because the IRS could theoretically use it in combination with publicly available information in the blockchain to gain a fuller picture of a taxpayer's income or compliance with the tax laws.  *Ricco Jonas*, 24 F.4th at 738.  Taxpayer and amici point to no authority limiting the IRS's right to obtain records from a financial institution through an administrative summons on that ground or limiting the IRS's ability to use public information or other tools to determine a taxpayer's compliance with tax laws.

It is a core tenet of Fourth Amendment jurisprudence that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."  *Katz v. United States*, 389 U.S. 347, 351 (1967).  The bitcoin public ledger is by its very nature available to the public.  Taxpayer has no reasonable expectation of privacy in his information held in the bitcoin public ledger.  *See Gratkowski*, 964 F.3d at 311-12; *Matter of Search of Multiple Email Accts. Pursuant to 18 U.S.C. § 2703 for Investigation of Violation of 18 U.S.C. § 1956*, 585 F. Supp. 3d 1, 18 (D.D.C. 2022).

Taxpayer likewise cannot get around the third-party doctrine's application here by baldly asserting (Br. 29-31) that Coinbase was an "intermediary" (Br. 31) with respect to his transactions. Taxpayer waived the argument by not raising it below. (Doc. 32.) *White v. Hewlett Packard Enter. Co.*, 985 F.3d 61, 68 n.6 (1st Cir. 2021). His theory also is inconsistent with Coinbase's privacy policy (JA33-34), which informs customers that "[w]hen buying or selling bitcoin, you are buying or selling from Coinbase directly. Coinbase does not act as an intermediary or marketplace between other buyers and sellers of bitcoin." (JA35 ¶3.5.) Here, taxpayer solely alleges that he purchased bitcoin from Coinbase, liquidated some of the bitcoin in his Coinbase account, and transferred the remaining amount to a hard wallet. (JA13 ¶¶29, 32, 34-35.)

As the District Court observed, "no court has adopted [taxpayer's] broad reading of *Carpenter* in the context of virtual currency exchange records," and the Fifth Circuit and two district courts have rejected it. *See Gratkowski*, 964 F.3d at 311-12; *Zietzke v. United States*, 426 F. Supp. 3d 758 (W.D. Wash. 2019) (user lacked legitimate expectation of privacy in virtual currency exchange records); *Zietzke v. United States*,

No. 19-CV-03761-HSG(SK), 2020 WL 264394 (N.D. Cal. Jan. 17, 2020) (applying third-party doctrine and holding that *Carpenter* was not applicable), *report and recommendation adopted*, 2020 WL 6585882 (N.D. Cal. Nov. 10, 2020).  This Court should likewise apply the third-party doctrine to the Coinbase records in this case.

### 2. Taxpayer's contract with Coinbase did not create a reasonable expectation of privacy

Taxpayer asserts that Coinbase's privacy policy constituted an agreement to keep his information private, thereby somehow creating a reasonable expectation of privacy.  (Br. 28, 32.)  An agreement to keep information confidential may be relevant to whether a reasonable expectation of privacy exists.  *Duxbury*, 931 F.3d at 108.  But Coinbase's policy does not alter the conclusion that taxpayer lacks a privacy interest in Coinbase's records or the information contained in them.  (JA85-86; *see* JA33-43.)  There is no reasonable expectation of privacy in information shared with a third party even when the information was shared "on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed."  *Miller*, 425 U.S. at 443; *see Ricco Jonas*, 24 F.4th at 737.

Moreover, as the District Court found (JA85-86), Coinbase's privacy policy is not as robust as taxpayer claims (Br. 28, 32; *see also* Br. 1, 3-4, 21). Coinbase warned taxpayer that it may share his "personal information" (JA39)—*i.e.*, "information that can be associated with a specific person and can be used to identify that person" (*id.*)— with "[l]aw enforcement, government officials, or other third parties" when "compelled to do so by a subpoena, court order, or similar legal procedure" (JA41). Here, Coinbase was compelled to share information with government officials by a court order—precisely as its privacy policy warned. Even in the absence of a court order, Coinbase's privacy policy states that it was free to share taxpayer's "personal information" with the IRS on its own initiative, or upon a request from the IRS, if it believed "in good faith" that disclosure was necessary to report suspected illegal behavior. (JA41.)

Taxpayer relies (Br. 28, 29, 31) on inapposite criminal cases here. *See United States v. Dorais*, 241 F.3d 1124 (9th Cir. 2001); *United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010). Neither case involves financial information provided to a third party. *Dorais* addressed Fourth Amendment interests in relation to physical intrusions on

property, which did not occur here. 241 F.3d at 1129-30. And nothing in the record suggests that the Coinbase records included "confidential communications" akin to the content of emails, letters, or phone calls held protected in *Warshak* and, in fact, the Sixth Circuit expressly distinguished such information from the financial information at issue in *Miller*. 631 F.3d at 287-88.

### 3. Taxpayer's property rights theory fails

The District Court (JA87-89) also correctly rejected taxpayer's claim that he has a property interest in the Coinbase records (Br. 24). (*See also* Br.1, 5, 14, 17, 18-27.)

**(a)** As explained above (pp. 23-28), Coinbase's account records are "closely analogous to the bank records in *Miller*." (JA84.) *See Gratkowski*, 964 F.3d at 312. A bank customer can "assert neither ownership nor possession" over bank records, which "are not [his] 'private papers,'" but, instead, are "the business records of the banks." *Miller*, 425 U.S. at 440. *See Ricco Jonas*, 24 F.4th at 737 (same); *see also Donaldson v. United States*, 400 U.S. 517, 530 (1971) (taxpayer had "no proprietary interest of any kind" in his former employer's "routine business records"). The same holds here.

Taxpayer's reliance (Br. 14, 19, 20, 25) on *Boyd v. United States*, 116 U.S. 616 (1886), is misplaced. *Boyd* held unconstitutional a statute requiring the respondent to produce a private paper or record, namely, a business invoice. 116 U.S. at 638. But bank records are not "private" papers over which the respondent could assert ownership or possession. *Miller*, 425 U.S. at 440 (distinguishing *Boyd*).

Contrary to taxpayer's position (Br. 20-21), the fact that he engaged in "digital" (Br. 20) (*i.e.*, cryptocurrency) transactions does not change the fact that Coinbase's records of those transactions belong to Coinbase. Taxpayer's related assertion (Br. 20-21) that he has a property interest in the "underlying information" contained in Coinbase's records also fails. A bank customer's "underlying information" is retained in the bank's own records, and the Supreme Court has nonetheless held that a customer has no property interest in the bank's records for Fourth Amendment purposes. *Miller*, 425 U.S. at 440-41.

**(b)** Taxpayer's chief theory (Br. 21-23; *see* AP-Br. 19-20)—that his "arrangement" with Coinbase was a "classic bailment" in which he transferred his "papers" to Coinbase for safekeeping and did not thereby

"surrender any portion of his property rights" (Br. 21)—fails at the outset because the records at issue belong to Coinbase and not taxpayer. Taxpayer's theory rests on Justice Gorsuch's lone dissent in *Carpenter*, 138 S. Ct. at 2268-69, in which he explained that he would have resolved that case by applying a "bailment" theory under a "traditional" property analysis, requiring a warrant before the government may obtain an individual's property.

But far from adopting the bailment theory, the majority in *Carpenter* instead confirmed the continuing vitality of *Miller* and *Smith*. *Carpenter*, 138 S. Ct. at 2220. As we have explained (pp. 23-28), account and transaction information held by a digital currency exchange is the kind of third-party information covered by the third-party doctrine in *Miller* and *Smith*.

**(c)** Taxpayer points only to inapposite precedent in support of his position. His reliance (Br. 20, 25, 26) on cases addressing physical intrusions onto a person's property—which did not occur here—do not show that he had a property interest in the information in Coinbase's records, much less that such an interest was violated. *See United States v. Jones*, 565 U.S. 400 (2012); *Florida v. Jardines*, 569 U.S. 1

(2013); *Terry v. Ohio*, 392 U.S. 1, 16 (1968); *Boyd*, 116 U.S. at 630;

*Taylor v. City of Saginaw*, 922 F.3d 328, 333-34 (6th Cir. 2019).

Further, Coinbase's records (and the information contained in them) are more similar to the business records of any other federally regulated financial institution than they are to the confidential email communications at issue in *United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016), and *Warshak*, 631 F.3d 266, or the corporate trade secrets at issue in *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1000-04 (1984) (Fifth Amendment takings case). Coinbase is a financial institution governed by the BSA—just like a bank—and its records likewise fall within the third-party doctrine.

Finally, taxpayer seeks to rely on *Carpenter v. United States*, 484 U.S. 19 (1987), but it actually undermines his position. That case held that a reporter's information was the Wall Street Journal's "property" for purposes of federal mail and wire fraud statutes because (*inter alia*) "[c]onfidential information acquired or compiled by a corporation in the course and conduct of its business is a species of property to which the corporation has the exclusive right and benefit." 484 U.S. at 26 (quotation and citation omitted). But Coinbase, and not taxpayer, is the

stand-in for the Wall Street Journal here, for Coinbase, and not taxpayer, "acquired or compiled" the information in its records "in the course and conduct of its business."

### 4. Alternatively, because the Government satisfied *Powell* in the *Coinbase* summons enforcement proceeding, there was no Fourth Amendment violation

Even if taxpayer had a protected interest in Coinbase's records, the IRS summons still satisfied the Fourth Amendment because it was reasonable. (JA89-92.) Outside the context of a criminal investigation, reasonableness "depends on balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *McCabe v. Life-Line Ambulance Serv., Inc.*, 77 F.3d 540, 546-47 (1st Cir. 1996) (cleaned up).

Here, the Coinbase court partially enforced the summons under *Powell* with respect to certain information. *Coinbase*, 2017 WL 5890052, at *1, *6-7. "[W]hen it comes to the IRS's issuance of a summons, compliance with the *Powell* factors satisfies the Fourth Amendment's reasonableness requirement." *Presley*, 895 F.3d at 1293; *United States v. Allee*, 888 F.2d 208, 213 n.3 (1st Cir. 1989) ("The

Fourth Amendment is not violated as long as the IRS has complied with the requirements of *United States v. Powell*."). *Accord*, *e.g.*, *Standing Akimbo*, 955 F.3d at 1166; *United States v. Reis*, 765 F.2d 1094, 1096 (11th Cir. 1985); *United States v. First Nat'l Bank of Mitchell*, 691 F.2d 386, 388 (8th Cir. 1982).

Contrary to taxpayer's argument (Br. 32-35), the broad investigatory authority provided in I.R.C. §§ 7601 and 7602 (to investigate and audit persons who may be liable for taxes and to examine records and issue summonses) "is not limited to situations in which there is probable cause, in the traditional sense, to believe that a violation of the tax laws exists." *United States v. Bisceglia*, 420 U.S. 141, 146 (1975); *see also Arthur Young*, 465 U.S. at 813 n.10 (declining to adopt a "probable cause" standard); *Powell*, 379 U.S. at 57 ("[T]he Commissioner need not meet any standard of probable cause to obtain enforcement of his summons."). This is so because "[t]he purpose of the statutes is not to accuse, but to inquire." *Bisceglia*, 420 U.S. at 146. The IRS "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Powell*, 379 U.S. at 57. Under this binding precedent, the Coinbase summons,

as partially enforced by a federal district court, did not violate the Fourth Amendment.

Taxpayer seeks to evade the clear effect of these cases, but his attempts fail. First, he errs in asserting (Br. 33-34) that *Powell* does not apply here because it addressed the IRS's statutory authority under Section 7602, and not expressly under the Fourth Amendment. But the Supreme Court said in *Powell* that no "probable cause" was required for enforcement of a summons, 379 U.S. at 57, and it has repeated the rule in its later cases. The Court can be presumed to understand what "probable cause" means, even in a case not directly addressing the Fourth Amendment. And the amici who challenge the third-party doctrine's application in the cryptocurrency context all fail to engage with the rule in *Powell* that "the Commissioner need not meet any standard of probable cause to obtain enforcement of his summons" and that Fourth Amendment reasonableness concerns are satisfied so long as the IRS meets the four requirements set forth in *Powell*. 379 U.S. at 57-58.[7] *See* CC-Br. 14-23; DeFi-Br. 6-26; Paradigm-Br. 14-28.

---

[7] Of the five amici, only Coin Center (CC-Br. 23-24) mentions *Powell*, solely to hypothesize that allowing access to the information

(continued…)

Second, taxpayer asserts in passing (Br. 35-36) that his Fourth Amendment rights were violated because the Coinbase summons did not satisfy the *Powell* requirements. Taxpayer waived the argument by not raising it below. (Doc. 32 at 7, 24-25). *See White*, 985 F.3d at 68 n.6. Taxpayer's *Powell* argument lacks merit in any event. He contends that the IRS failed the fourth *Powell* requirement— compliance with the Code's administrative requirements—because (he says) the IRS did not comply with Section 7609(f). By its terms, Section 7609(f) relates only to the issuance of a John Doe summons, not its enforcement. And the pre-issuance procedures in Section 7609(f) do not "expand beyond the *Powell* criteria the substantive grounds on which a record-keeping taxpayer can resist *enforcement* of a summons." *United States v. Samuels, Kramer & Co.*, 712 F.2d 1342, 1346 (9th Cir. 1983) (emphasis in original); *see also Matter of Does*, 688 F.2d 144, 149 (2d Cir. 1982) (same); *United States v. Pittsburgh Trade Exch. Inc.*, 644 F.2d 302, 306 (3d Cir. 1981) ("There is no indication that Congress

---

requested in the Coinbase summons could lead to sharing of that information throughout the government. But, as the National Taxpayer Union acknowledges (NTU-Br. 5 n.3), Section 6103 of the Code prohibits the unauthorized disclosure of tax returns or return information, providing robust protection of taxpayer confidentiality.

intended a broader substantive protection of unknown than of known taxpayers.").

Thus, as the District Court held (JA101-03), the *Coinbase* court's determination in the *ex parte* proceeding that the IRS complied with Section 7609(f) requirements is not subject to collateral attack. *John Does, All Unknown Emps. of Boundary Waters Rest. v. United States*, 866 F.2d 1015, 1018 (8th Cir. 1989); *Samuels*, 712 F.2d at 1346; *Matter of Does*, 688 F.2d at 145-46, 148-49; *Taylor Lohmeyer L. Firm PLLC v. United States*, 385 F. Supp. 3d 548, 552 (W.D. Tex. 2019), *aff'd on other grounds*, 957 F.3d 505 (5th Cir. 2020). *See also* H.R. Rep. 116-39, Part I, at 41 (2019) (cited Br. 48) (stating that a John Doe summons recipient "is not entitled to judicial review of the *ex parte* ruling that permitted issuance of the summons"). Accordingly, the *Coinbase* court correctly held that issuance of the initial summons under Section 7609(f) could not be challenged in the enforcement proceeding. 2017 WL 3035164, at *5.

Moreover, as the District Court correctly recognized (JA 102 n.29), *United States v. Brigham Young University*, 679 F.2d 1345 (10th Cir. 1982), *vacated and remanded*, 459 U.S. 1095 (1983), which taxpayer

cites (Br. 39) is distinguishable. *BYU* (which was later vacated by the Supreme Court) held that a summons recipient could challenge a Section 7609(f) determination in an enforcement proceeding relating to the same summons in order to try to show that the IRS engaged in an abuse of process. 679 F.2d at 1348. But neither *BYU* nor any other case has suggested that a taxpayer may bring a freestanding challenge to a court's Section 7609(f) determination in a different district court long after the summons was enforced.

The issuance and enforcement of the Coinbase summons illustrate that the statutory scheme worked as intended here. In the initial summons, the IRS sought a range of information about Coinbase's U.S. customers who engaged in transactions of any amount in a convertible digital currency over a three-year period and satisfied the *Coinbase* district court that the summons complied with Section 7609(f). *Coinbase*, 2017 WL 5890052, at *1. Coinbase's refusal to comply forced the Government to seek enforcement. During the enforcement proceeding, the Government narrowed the summons based on information it learned about Coinbase's business practices, lowering the number of affected users to 14,355 Coinbase customers with "$20,000 in

any one transaction type (buy, sell, send, or receive) in any one year"
during 2013-2015.  *Coinbase*, 2017 WL 5890052, at *2, *5.  Applying
*Powell*, the *Coinbase* district court further limited the range of
information the IRS could obtain to information the court found
relevant to the IRS's legitimate investigation, *i.e.*, identifying
information, transaction information, and periodic account statements.
*Id.* at *7, *8-9.  The *Coinbase* proceedings were consistent with
statutory requirements and *Powell*, and neither taxpayer nor amici
have shown otherwise.

Consequently, even if taxpayer had a privacy or property interest
in the Coinbase records of his account, the IRS's compliance with *Powell*
satisfied reasonableness requirements under the Fourth Amendment.

## B. Taxpayer failed to state a claim of violation of the Fifth Amendment's Due Process Clause

To state a procedural due process claim, a plaintiff must
(1) identify a protected liberty or property interest, and (2) allege that
the defendants deprived him of that interest without constitutionally
adequate process.  *Perrier-Bilbo v. United States*, 954 F.3d 413, 433 (1st
Cir. 2020).  Here, taxpayer failed to identify either a protected interest
or that the IRS deprived him of his alleged interest without due process.

**(a)**    Taxpayer has neither a property nor liberty interest in the financial information contained in Coinbase's records.  As explained above (pp. 33-37), taxpayer has no property interest in the financial information at Coinbase.  *See also Miller*, 425 U.S. at 440; *Donaldson*, 400 U.S. at 531.  Taxpayer (Br. 51) offers no additional arguments regarding a property interest beyond what he offered in his Fourth Amendment argument.

Taxpayer likewise has no liberty interest under the Fifth Amendment in the privacy of his financial information.  This Court looks to the Supreme Court's interpretation of "liberty" under the Fourteenth Amendment context for guidance.  *Perrier-Bilbo*, 954 F.3d at 433 (citation omitted).  The liberty interest includes "autonomy in making certain kinds of significant personal decisions" and "the confidentiality of personal matters."  *Vega-Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 182-83 (1st Cir. 1997).  Taxpayer addresses only confidentiality.  (*See* Br. 51-55.)

As the District Court explained, taxpayer's position fails for several reasons.  (JA93-94.)  First, taxpayer did not have a reasonable expectation of privacy in financial information he did not own or

possess. (*See* pp. 19-33, *supra*.) Insofar as a general constitutional right to privacy may not be synonymous with the reasonable expectation of privacy test under the Fourth Amendment, *see Borucki v. Ryan*, 827 F.2d 836, 841-42 & n.8 (1st Cir. 1987), this Court has held that "the right of confidentiality . . . [does] not '"extend[] beyond prohibiting profligate disclosure,"' which did not occur here. *Vega-Rodriguez*, 110 F.3d at 183.

Second, an interest in avoiding disclosure of account records maintained by third-party financial institutions "does not fit" into the categories of personal matters traditionally protected by the Fourteenth Amendment, *i.e.*, marriage, procreation, contraception, family relationships, and child rearing and education. (JA 94 n.26. (collecting cases)); *see also Perrier-Bilbo*, 954 F.3d at 434. *Cf. Hahn v. Star Bank*, 190 F.3d 708, 714-15 (6th Cir. 1999) (borrowers' asserted interest in nondisclosure of their loan file was "far afield" from fundamental rights "implicit in the concept of ordered liberty," and thus constitutional right to privacy was not implicated by bank's disclosure of file pursuant to subpoena) (quotation and citation omitted).

Third, taxpayer failed to identify any authority showing a liberty
interest in maintaining the privacy of financial records created and held
by a third-party financial institution.  (Doc. 39 at 21.)  The two cases on
which taxpayer relies—*Payne v. Taslimi*, 998 F.3d 648 (4th Cir. 2021),
and *Walls v. City of Petersburg*, 895 F.2d 188 (4th Cir. 1990)—both
involved disclosures originally requested by government, not requests
for information already disclosed to others.  And as the District Court
found (JA93-94), both cases reaffirmed that the constitutional right to
privacy protects "only information with respect to which the individual
has a reasonable expectation of privacy," which taxpayer does not have
(*supra*, pp. 19-33).  *See Payne*, 998 F.3d at 656; *Walls*, 895 F.2d at 193.

**(b)** Because taxpayer lacked a property or liberty interest in the
Coinbase records, this Court need not determine "whether any
deprivation occurred without constitutionally adequate process."
*Perrier-Bilbo*, 954 F.3d at 434.  But even if a protected interest were at
stake, the District Court correctly held that the summons procedure
used here adequately protected it.  (JA94-97.)  The fundamental
requirement of due process is the opportunity to be heard "at a
meaningful time and in a meaningful manner."  *Mathews v. Eldridge*,

424 U.S. 319, 333 (1976) (quotation and citation omitted).  Generally,

"some form of hearing is required before an individual is finally

deprived of a property interest."  *Id.*; *accord Perrier-Bilbo*, 954 F.3d at

433.  In determining whether an administrative system affords a

meaningful opportunity to be heard, "due process is flexible and calls for

such procedural protections as the particular situation demands."

*Mathews*, 424 U.S. at 334 (quotation and citation omitted).

Taxpayer fails to identify any procedures that the IRS failed to

follow.  Count II of the amended complaint points to Section 7609(a),

which requires that the IRS give notice to "any person . . . identified in

the summons."  I.R.C. § 7609(a)(1).  (*See* JA28 ¶127.)  As an unnamed

person in the John Doe summons issued to Coinbase, taxpayer was not

entitled to notice under Section 7609(a).  I.R.C. § 7609(c)(3); *see also*

*Pittsburgh Trade Exchange*, 644 F.2d at 305 (John Doe summonses,

unlike other summonses subject to Section 7609(a), "required separate

treatment because the target taxpayer was unknown and thus could not

be notified in advance").

Count II makes no claim about a violation of Section 7609(f).

(JA26-29.)  In any event, the face of the complaint shows that the IRS

followed all required statutory procedures with respect to the Coinbase summons. (JA29-31.) The IRS sought an *ex parte* order permitting it to serve the summons, as required by Sections 7609(f) and (h)(2), and the District Court determined that the IRS satisfied the Section 7609(f) requirements. (JA14 ¶38.) *Coinbase*, 2017 WL 5890052, at *1. When Coinbase declined to comply, the IRS properly petitioned to enforce the summons. (JA15 ¶46.) I.R.C. § 7604(a). The matter was fully litigated, and the District Court issued an order partially enforcing the summons. (JA16 ¶52.) *Coinbase*, 2017 WL 5890052, at *8. Nothing more was required. Taxpayer's disagreement with the merits of the *Coinbase* court's determinations does not state a due process violation. (Br. 54-55; *see* JA16-17; Br. 40-50.)

The District Court correctly held (JA95) that taxpayer's due process rights were not violated by the lack of notice to him "before [the IRS] seized his records" (Br. 54). Due process "does not invariably require a hearing before the [government] can interfere with a protected property interest." *Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 14 (1st Cir. 2011). Prior notice in the John Doe summons context is "not possible" because a taxpayer's identity is unknown to the IRS when it

issues the summons. *Tiffany*, 469 U.S. at 317. As taxpayer recognizes (Br. 7), Congress provided additional safeguards in Section 7609(f) to protect taxpayers whose identities are unknown to the IRS and, in Section 7609(h)(2), entrusted district courts to enforce them. *See Tiffany*, 469 U.S. at 317; *United States v. Gertner*, 65 F.3d 963, 972 (1st Cir. 1995). Thus, Section 7609(f) "provide[s] some guarantee that the information that the IRS seeks through a summons is relevant to a legitimate investigation, albeit that of an unknown taxpayer." *Tiffany*, 469 U.S. at 321; *see also Samuels*, 712 F.2d at 1346 (same). Judicial preapproval under Section 7609(f) "permits the district court to act as a surrogate for the proceeding and to exert a restraining influence on the IRS." *Gertner*, 65 F.3d at 972 (cleaned up). (*See* JA95-96.) The *Coinbase* proceedings exemplify that process.

Here, after the initial summons was issued, Coinbase's refusal to comply forced the IRS to satisfy the "additional procedural hurdles" (JA96) of meeting the *Powell* requirements in the enforcement proceeding. *See Bisceglia*, 420 U.S. at 146 (summons enforcement procedures provide "[s]ubstantial protection" in the John Doe context). Contrary to taxpayer's assertion (Br. 51), taxpayer had opportunities to

protect his interests in the *Coinbase* enforcement proceeding.

Specifically, taxpayer participated in the proceeding by filing an amicus

brief, and (like another "John Doe"), could have moved to intervene in

the enforcement proceeding. (JA96; *see* JA16 ¶51; Doc. 30-10 (Ex. 8).)

Taxpayer's decision not to file such a motion (Br. 9; Doc. 32 at 4) shows

that he abandoned the opportunity.[8]

The District Court also correctly held that the IRS's interest in

swift enforcement of summonses and in identifying non-compliant

taxpayers "outweigh[s] any benefit that might accrue from additional

procedural protections." (JA96.) *See Mathews*, 424 U.S. at 335. It is

difficult to imagine what additional pre-deprivation procedural

safeguards could be provided to taxpayers whose identities are

unknown to the IRS, as taxpayer demands here (Br. 54). And taxpayer

does not argue that post-deprivation procedures are inadequate. (Br.

50-55.) It is well-settled in the tax context that post-deprivation process

---

[8] Contrary to taxpayer's assertions (Br. 9 n.3), the Government expressly argued below that his due process claim should be dismissed, in part, because "he had actual notice of the Coinbase summons but did not attempt to intervene." (Doc. 30-1 at 23; *see also* Doc. 34 at 8 & n.6.)

is sufficient to satisfy due process. *Phillips v. Commissioner*, 283 U.S. 589, 596-97 (1931).[9]

Finally, the District Court correctly rejected taxpayer's argument that the IRS should have issued the John Doe summons solely to obtain Coinbase users' identities and then issued a second summons to taxpayer or Coinbase to obtain financial information. (JA96-97.) Notably, taxpayer cites nothing requiring such a bifurcated procedure. (*See also*, *infra*, p. 64.)

### C. Taxpayer failed to state a claim for violation of Section 7609(f)

### 1. Taxpayer lacked statutory standing and could not use the APA to challenge an alleged violation of Section 7609(f)

Taxpayer conceded below that Section 7609 does not provide an express cause of action (Doc. 32 at 11), but argued that Section 7609(f) provides an implied cause of action because he falls within the group of persons Congress intended Section 7609(f) to benefit. The District Court rejected this argument (JA98-100), and taxpayer waived the issue

---

[9] Potential post-deprivation process includes raising a challenge before assessment in Tax Court (I.R.C. § 6213(a)), or after assessment and payment in a refund suit (I.R.C. § 7422), if the IRS were to determine additional tax is owed.

by not addressing it in his opening brief. *See Vazquez-Rivera v. Figueroa*, 759 F.3d 44, 46-47 (1st Cir. 2014).

Taxpayer also argued that the APA permitted him to challenge alleged violations of Section 7609(f). The District Court correctly held that, even if taxpayer could otherwise assert his claim in Count III under the APA, the *Coinbase* court's order permitting the IRS to issue the initial summons is not subject to later collateral attack. (JA101-03.) (*See* pp. 41-42, *supra*.) Accordingly, the District Court correctly concluded that taxpayer has "no additional procedural avenue" under the APA to argue that the *Coinbase* district court's findings under Section 7609(f) were incorrect. (JA102-03.)

This Court could also affirm by reaching an issue that the District Court declined to address and rejecting taxpayer's conclusory and meritless claim (Br. 37) that the APA permits him to enforce statutory rights under Section 7609(f) in the first place. *In re Montreal, Me. & Atl. Ry., Ltd.*, 888 F.3d 1, 8 n.4 (1st Cir. 2018). The right of review under Section 702 of the APA is limited to "agency action," and Section 704 provides that only "[a]gency action made reviewable by statute and

final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. §§ 702, 704.

Taxpayer's APA claim is not a challenge to "agency action," "final" or otherwise.[10] 5 U.S.C. §§ 702, 704. The term "'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Here, taxpayer does not challenge the IRS's initial petition to issue the Coinbase summons. He *does* challenge the *Coinbase* court's determination that the IRS satisfied the Section 7609(f) requirements, but that *judicial* decision is not an "agency action." 5 U.S.C. § 551(1)(B) (term "agency" does not include courts). And taxpayer does not attempt to show how issuance of the initial summons pursuant to the *Coinbase* order was "final agency action" under 5 U.S.C. § 704. (Br. 36-40.) To be final agency action, an action "must mark the 'consummation' of the agency's decisionmaking process" and "must be one by which 'rights or obligations have been determined,' or from which 'legal consequences

---

[10] Taxpayer incorrectly asserts (Br. 37 n.9) that the Government did not contest below that issuance of the initial summons was "final agency action." 5 U.S.C. § 704. Because the Government argued that "agency action" was not at issue, it necessarily also argued that "final agency action" was not at issue. (Doc. 34 at 2.)

will flow.' " *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). The issuance of the initial summons was investigative in nature, and "[a]n investigation, even one conducted with an eye to enforcement, is quintessentially non-final as a form of agency action." *Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 781 (9th Cir. 2000).

Taxpayer (Br. 36-40) also ignores the restrictions of 5 U.S.C. § 702(2), which provides that "[n]othing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief." And as taxpayer recognizes (Br. 38 n.10), Section 7609 allows suit in certain contexts, but not by John Doe taxpayers. I.R.C. § 7609(b)(2). In addition, Section 7609(h)(2) provides that the determination whether Section 7609(f) has been satisfied "shall be made *ex parte* and shall be made solely on the petition and supporting affidavits." Together, these provisions show that Section 7609 impliedly forbids any claim under the APA that the IRS violated Section 7609(f). *See, e.g., Neilson v. United States*, 674 F. Supp. 2d 248, 253 (D.D.C. 2009).

### 2. Taxpayer's claim that the IRS violated Section 7609(f) fails as a matter of law

In all events, taxpayer failed to state a claim that the IRS violated the John Doe procedures in Section 7609(f). (*See* JA103-07.) In order to issue a John Doe summons, the IRS must establish, in an *ex parte* court proceeding, that: (1) the summons relates to the investigation of a particular person or ascertainable group or class of persons; (2) there is a reasonable basis for believing that such persons may fail or may have failed to comply with any provision of any internal revenue law; and (3) the information sought to be obtained, and the identity of the subject persons, is not readily available from other sources.

Section 7609(f) sets out "modest" standards the IRS must meet before issuing a John Doe summons. *United States v. Tiffany Fine Arts, Inc.*, 718 F.2d 7, 12 (2d Cir. 1983), *aff'd*, 469 U.S. 310 (1985). In enacting Section 7609(f), "Congress did not intend to impose stringent restrictions on the Service's investigatory function, but merely sought to prevent the indiscriminate exercise of the John Doe summons power." *Matter of Does*, 671 F.2d 977, 979 (6th Cir. 1982). *See* H. R. Rep. No. 94-658, at 311 (1976) (Congress did "not intend to impose an undue burden on the [IRS] in connection with obtaining a court authorization

to serve this type of summons"). "What §7609(f) does is to provide some guarantee that the information that the IRS seeks through a summons is relevant to a legitimate investigation, albeit that of an unknown taxpayer." *Tiffany*, 469 U.S. at 321. Accordingly, the IRS is not required "to produce conclusive evidence of an actual tax violation as a prerequisite to obtaining a John Doe summons." *Matter of Does*, 671 F.2d at 980. "On the contrary," Section 7609(f) simply "prevent[s] the [IRS] from exercising its summons power in an arbitrary or quixotic manner." *Id.*

The IRS used the correct procedure to issue and enforce the Coinbase summons, and established all three of the statutory requirements.

**(a)** The District Court correctly held that the Coinbase summons (as initially issued or as narrowed and enforced) relates to the investigation of an "ascertainable group or class of persons" under Section 7609(f)(1) as a matter of law. (JA104-05.) Indeed, taxpayer (Br. 41-43) does not dispute the District Court's holding that the plain meaning of the term "ascertainable" means "something that can be determined with certainty" (JA104), and not a "relatively small,

similarly situated group," as he argued below. Taxpayer (Br. 41-43) also does not dispute that Section 7609(f)(1) contains no language imposing a size limitation on the class or group of persons to which a John Doe summons relates. (JA104.)

Nonetheless, taxpayer contends (Br. 41-42) that the group or class of persons being investigated—*i.e.*, "United States persons who, at any time during the period January 1, 2013, through December 31, 2015, conducted transactions in a convertible virtual currency as defined in IRS Notice 2014-21" (JA123; *see also* JA159)—is "so amorphous and numerous" that it "reads the 'ascertainable' limitation out of the statute." But the characteristics of the John Doe class are specific and well-defined, regardless of how many people the description includes. *See*, *e.g.*, *In re Tax Liabilities of Does*, No. 2:10-MC-00130-MCE, 2011 WL 6302284, at *2 (E.D. Cal. Dec. 15, 2011) (granting *ex parte* petition to serve John Doe summons addressing class of California residents over six-year period "involved in real property transfers from parents to their children or grandparents to their grandchildren for little or no consideration," which "squarely particularize[d] the individuals sought from the general public" for purposes of § 7609(f)(1)); *see also United*

*States v. Payward Ventures, Inc.*, No. 23-mc-80029-JCS, 2023 WL 4303653 (N.D. Cal. June 30, 2023) (partially enforcing John Doe summons relating to tens of thousands of users of virtual currency exchange Kraken over a four-year period), *on appeal*, No. 23-16138 (9th Cir.); *In re Tax Liabilities of Does*, No. 20-mc-32, 2021 WL 4556392, at *2 (D. Minn. Sept. 3, 2021) (granting petition to serve John Doe summons relating to a group of taxpayers who used a company's services over a seven-year period); *Taylor Lohmeyer*, 385 F. Supp. 3d at 553 (enforcing summons seeking identities and international activities of law firm clients over 22-year period). Taxpayer does not argue, and nothing in the record suggests, that Coinbase could not ascertain which of its customers fit within the summons class. (Br. 41-43.) Indeed, Coinbase *did* ascertain the members of the class. *Coinbase*, 2017 WL 5890052, at *2.

The District Court also correctly rejected taxpayer's reliance on legislative history. (JA104; *see* Doc. 32 at 8-9.) Because the term "ascertainable" is unambiguous, consulting legislative history was unnecessary. *Stauffer v. IRS*, 939 F.3d 1, 7-8 (1st Cir. 2019). Legislative history does not help taxpayer in any event. He claims (Br.

42-43) that one of two examples Congress used to illustrate how § 7609(f) works—a John Doe summons to obtain names of "corporate shareholders involved in a taxable reorganization which had been characterized by the corporation . . . as a nontaxable transaction"— shows that issuance of a John Doe summons is limited to "similar situations." H.R. Rep. 94-658, at 311. This reference to one example does not suggest that Congress intended to deviate from the plain meaning of "ascertainable" in § 7609(f)(1). The House Report referred to situations "where there are unusual (or possibly suspicious) circumstances" and did not comment on the size of the group or class of persons to which the summons related. *Id.*

**(b)** Section 7609(f)(2) requires that the IRS show "a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law." Under that plain text, the IRS was not required to show that each person in the ascertainable group failed to comply with the internal revenue laws, as taxpayer argues (Br. 44). (*See* JA105-06.) An inference that members of the John Doe group or class of persons "are likely to commit the same reporting errors as" similarly situated

persons is sufficient to meet Section 7609(f)(2). *Matter of Does*, 671 F.2d at 979 ("[The IRS's] prior experience with the tax returns of members of other barter exchanges is a sufficient basis for suspecting improper or erroneous reporting by members of the Columbus Exchange.") The District Court therefore correctly concluded that whether taxpayer actually had correctly reported his virtual currency transactions was irrelevant to whether the IRS satisfied Section 7609(f)(2). (JA105; JA30 ¶¶140, 144.)

Contrary to taxpayer's assertion (Br. 43-44), the District Court did not engage in factfinding. It held that the IRS's petition and supporting documentation in the *ex parte* proceeding was sufficient as a matter of law to establish a reasonable basis for believing that the John Doe class "may fail or may have failed to comply" with the tax laws. (JA106.) The court also was not required to credit taxpayer's conclusory legal assertion (JA30-31 ¶144; *see also* Br. 43) that the IRS failed to satisfy Section 7609(f)(2). (JA105.) *Lyman*, 954 F.3d at 359.

**(c)** The District Court also correctly rejected taxpayer's argument that Section 7609(f)(3) limits the IRS to seeking the identities of Coinbase customers. (JA106-07.) Indeed, the plain text of the statute

"flatly contradicts" (Doc. 39 at 34) that interpretation. Section

7609(f)(3) requires that "the *information sought to be obtained from the*

*examination of the records or testimony* (*and the identity* of the person

or persons with respect to whose liability the summons is issued) is not

readily available from other sources." (Emphases added.) Taxpayer (Br.

46-50) points to no statutory language or precedent supporting his

position.

There is no need to look to legislative history for support for his

novel interpretation of Section 7609(f)(3), as taxpayer does (Br. 47-48),

because that provision unambiguously indicates that the IRS may use a

John Doe summons to seek both the identity of a taxpayer and

information pertaining to him from the third party.[11] *Stauffer*, 939 F.3d

at 7-8. In any event, the legislative history of the Tax Reform Act of

1976, in which Congress adopted the Section 7609(f) requirements,

---

[11] Taxpayer suggests (Br. 48-49 & n.13) that the Government engaged in a "ploy" (Br. 49 n.13) to prevent an individual from intervening in the *Coinbase* enforcement proceeding by withdrawing the John Doe summons with respect to that person after the individual revealed his name. *See Coinbase*, 2017 WL 3035164, at *2. Once the individual's identity became known, by definition he was no longer a "John Doe." I.R.C. § 7609(f). It does not follow that the Government was only permitted to seek the identities of Coinbase customers in the John Doe class, as taxpayer contends (Br. 49 n.13).

reflects Congress's understanding that John Doe summonses may be used to request information in a third party's possession relating to both the identity and financial transactions of a taxpayer or taxpayers. H.R. Rep. 94-658, at 310. The House Report does not state any intent to preclude that historic use of the John Doe summons procedure.

Taxpayer (Br. 47-48) erroneously looks to the legislative history relating to Congress's 2019 amendment adding flush language to Section 7609(f), ignoring that the flush language does not apply to the Coinbase summons, which was enforced in 2017. In any event, Congress's reference in the flush language to "information sought to be obtained" in the summons pertaining to the "failure (or potential failure) to comply" with federal tax laws belies any interpretation that Congress understood John Doe summonses to be limited to obtaining only a taxpayer's identity, as taxpayer contends (Br. 47-48).

Congress also is presumed to have been aware of pre-2019 precedents enforcing John Doe summonses seeking information beyond taxpayer identities—including the *Coinbase* enforcement order—and to have adopted that interpretation by amending Section 7609(f) without changing Section 7609(f)(3). *See Bernardo ex rel. M & K Eng'g, Inc. v.*

*Johnson*, 814 F.3d 481, 488 (1st Cir. 2016); *see, e.g.*, *John Does, All Unknown Emps. of Boundary Waters Rest.*, 866 F.2d at 1016 (summons seeking identities of employees and records of sales, hours worked, and tip income); *United States v. John G. Mutschler & Assocs., Inc.*, 734 F.2d 363, 364-65 (8th Cir. 1984) (summons seeking list of clients and copies of information returns filed for those clients); *Matter of Does*, 541 F. Supp. 213, 214 (N.D.N.Y. 1982) (summons seeking identifying information of all investors or participants in tax shelter "and any books, records, or documents containing the [ ] information").

There is no support, statutory or otherwise, for taxpayer's theory that Section 7609(f)(3) precludes the issuance of a John Doe summons seeking both the taxpayer's identity and information "if taxpayers themselves are a ready source of the records." (Br. 46; *see also* Br. 49.) That is not the standard as set forth in the plain statutory text of Section 7609(f)(3). Taxpayer's theory also makes little sense. The determination whether information sought in a John Doe summons is "readily available from other sources" (I.R.C. § 7609(f)(3)) is made at the time the IRS seeks the *ex parte* determination in district court. Taxpayer fails to explain how the IRS could determine, at the time of its

petition, whether a taxpayer would be a "ready source of the records" (Br. 46) when that person is unknown to the IRS.

Further, nothing in Section 7609 requires the IRS to issue a series of summonses—a John Doe summons to Coinbase, followed by a summons to taxpayer, followed by a second summons to Coinbase to obtain any documents or information unavailable from taxpayer. (*See* Br. 49.) As the District Court observed in rejecting that claim, such a procedure is "entirely optional" for the IRS. (JA107.)

Finally, taxpayer complains that the District Court did not grant him leave to amend his complaint. (Br. 49.) But he identifies no facts that he could add that could remedy the legal insufficiency of his claims. Ultimately, taxpayer does not dispute the facts regarding the Coinbase summons—he simply believes that the summons should not have been issued or enforced. But that belief does not establish any legal claim.

# CONCLUSION

For the reasons discussed above, the order of the District Court should be affirmed.

Respectfully submitted,

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

/s/ Kathleen E. Lyon

| | |
|---|---|
| FRANCESCA UGOLINI | (202) 514-3361 |
| *Court of Appeals Bar. No.* | *1134848* |
| JENNIFER M. RUBIN | (202) 307-0524 |
| *Court of Appeals Bar No.* | *77022* |
| KATHLEEN E. LYON | (202) 307-6370 |
| *Court of Appeals Bar No.* | *1133434* |

  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*Of Counsel:*
JANE E. YOUNG
  *United States Attorney*

DECEMBER 21, 2023

## CERTIFICATE OF COMPLIANCE

**Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements**

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    [X]   this document contains 12,631 words, **or**

    [ ]   this brief uses a monospaced typeface and contains _____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [X]   this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14, **or**

    [ ]   this brief has been prepared in a monospaced typeface using _____ with _____.

(s)   /s/ Kathleen E. Lyon
Attorney for Appellees
Dated: December 21, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2023, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Sheng Tao Li Sheng.Li@NCLA.legal

Richard A. Samp Rich.Samp@NCLA.legal

/s/ Kathleen E. Lyon
KATHLEEN E. LYON
*Attorney*

# STATUTORY ADDENDUM

# TABLE OF CONTENTS

Administrative Procedure Act (5.U.S.C.):
    § 551 (excerpts) ........................................................................69
    § 702 (excerpts) ........................................................................69
    § 704..........................................................................................70

Internal Revenue Code of 1986 (26 U.S.C.):
    § 6201 (excerpts) ......................................................................70
    § 7402 (excerpts) ......................................................................71
    § 7601 (excerpts) ......................................................................71
    § 7602 (excerpts) ......................................................................71
    § 7604 (excerpts) ......................................................................72
    § 7609 (excerpts) ......................................................................73

## Administrative Procedure Act (5 U.S.C.):

## § 551.  Definitions

For the purpose of this subchapter--

(1) "agency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include--

\* \* \*

(B) the courts of the United States;

\* \* \*

(13) "agency action" includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act; \* \* \*

\* \* \*

## § 702.  Right of review

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for

compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

## § 704.  Actions reviewable

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

## Internal Revenue Code of 1986 (26 U.S.C.):

## § 6201.  Assessment authority

**(a) Authority of Secretary**.--The Secretary is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title, or accruing under any former internal revenue law, which have not been duly paid by stamp at the time and in the manner provided by law. * * *

* * *

## § 7402.  Jurisdiction of district courts

\* \* \*

**(b) To enforce summons**.--If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.

\* \* \*

## § 7601.  Canvass of districts for taxable persons and objects

**(a) General rule.**--The Secretary shall, to the extent he deems it practicable, cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax, and all persons owning or having the care and management of any objects with respect to which any tax is imposed.

\* \* \*

## § 7602.  Examination of books and witnesses

**(a) Authority to summon, etc.**--For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

**(b) Purpose may include inquiry into offense.**--The purposes for which the Secretary may take any action described in paragraph (1), (2), or (3) of subsection (a) include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws.

\* \* \*

## § 7604.  Enforcement of summons

**(a) Jurisdiction of district court.**--If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

\* \* \*

## § 7609.  Special procedures for third-party summonses

**(a) Notice.--**

> **(1) In general.**--If any summons to which this section applies requires the giving of testimony on or relating to, the production of any portion of records made or kept on or relating to, or the production of any computer software source code (as defined in 7612(d)(2)) with respect to, any person (other than the person summoned) who is identified in the summons, then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain an explanation of the right under subsection (b)(2) to bring a proceeding to quash the summons.

> \* \* \*

> **(3) Nature of summons.**--Any summons to which this subsection applies \* \* \* shall identify the taxpayer to whom the summons relates or the other person to whom the records pertain and shall provide such other information as will enable the person summoned to locate the records required under the summons.

**(b) Right to intervene; right to proceeding to quash.--**

> **(1) Intervention.**--Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604.

**(2) Proceeding to quash.--**

    **(A) In general.**--Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons not later than the 20th day after the day such notice is given in the manner provided in subsection (a)(2). In any such proceeding, the Secretary may seek to compel compliance with the summons.

    **(B) Requirement of notice to person summoned and to Secretary.**--If any person begins a proceeding under subparagraph (A) with respect to any summons, not later than the close of the 20-day period referred to in subparagraph (A) such person shall mail by registered or certified mail a copy of the petition to the person summoned and to such office as the Secretary may direct in the notice referred to in subsection (a)(1).

    **(C) Intervention; etc.**--Notwithstanding any other law or rule of law, the person summoned shall have the right to intervene in any proceeding under subparagraph (A). Such person shall be bound by the decision in such proceeding (whether or not the person intervenes in such proceeding).

**(c) Summons to which section applies.**--

    **(1) In general**.--Except as provided in paragraph (2), this section shall apply to any summons issued under paragraph (2) of section 7602(a) or under section 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7612.

    **(2) Exceptions.**--This section shall not apply to any summons--

(A) served on the person with respect to whose liability the summons is issued, or any officer or employee of such person;

\* \* \*

**(3) John Doe and certain other summonses.**--Subsection (a) shall not apply to any summons described in subsection (f) or (g).

**(4) Records.**--For purposes of this section, the term "records" includes books, papers, and other data.

\* \* \*

**(f) Additional requirement in the case of a John Doe summons.**--Any summons described in subsection (c)(1) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that--

(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,

(2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

(3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

The Secretary shall not issue any summons described in the preceding sentence unless the information sought to be obtained is narrowly tailored to information that pertains to the failure (or potential failure) of the person or group or class of persons

referred to in paragraph (2) to comply with one or more provisions of the internal revenue law which have been identified for purposes of such paragraph.

*   *   *

**(h) Jurisdiction of district court; etc.--**

**(1) Jurisdiction.**--The United States district court for the district within which the person to be summoned resides or is found shall have jurisdiction to hear and determine any proceeding brought under subsection (b)(2), (f), or (g). An order denying the petition shall be deemed a final order which may be appealed.

**(2) Special rule for proceedings under subsections (f) and (g).**--The determinations required to be made under subsections (f) and (g) shall be made ex parte and shall be made solely on the petition and supporting affidavits.

*   *   *